# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# NEWNAN DIVISION

| | |
|---|---|
| In re: | Case No. 25-10613-PMB |
| **SCV GRAPHIC PRODUCTIONS, INC.,** | Chapter 11 |
| Debtor. | |

## EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL

SCV Graphic Productions, Inc. d/b/a Dangling Carrot Creative (the "**Debtor**" or "**Dangling Carrot**") files this motion (the "**Motion**") for the entry and approval of an order, pursuant to Sections 105, 361, and 363 of the Bankruptcy Code and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure, authorizing the Debtor's use of cash collateral on an emergency basis to continue its operations in accordance with the proposed budget attached hereto as **Exhibit A** (the "**Budget**") and the Proposed Interim Order (as defined below) attached hereto as **Exhibit B**, respectfully showing the Court as follows:

### Status of the Case

1. On April 28, 2025 (the "**Petition Date**"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor has continued in possession of its properties and is operating and managing its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

### Jurisdiction, Venue, and Statutory Predicates

2. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This matter is core within the meaning of 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 105(a), 363, and 553 of the Bankruptcy Code.

**Background**

3.  Dangling Carrot is a graphic design and production company operating since 2007, with locations in Fayetteville, Georgia and Valencia, California. Historically, the company primarily operated in the entertainment industry, creating realistic graphics and architectural pieces to simulate real-world environments for film and television production sets. Recently, Dangling Carrot has tapped into a new market and is experiencing success designing and producing graphics and sculptures for amusement theme parks.

4.  Over the course of 18 years, Dangling Carrot steadily grew into an $8 million revenue per year business with high profit margins, consistently expanding revenues by 10–20% annually. Prior to the economic downturn a few years ago, the company had no record of underperformance and had firmly established itself as a reliable industry leader in the industry.

5.  However, in March 2023 the onset of what has become an extended pause in motion picture production—which began with a writer's strike and has yet to recover—has severely impacted the Debtor's operations and cash flow. The strike caused an immediate and dramatic reduction in revenue, cutting monthly income from approximately $600,000–$800,000 down to just $100,000 monthly.

6.  Meanwhile, Dangling Carrot has pivoted into the theme park business and has experienced success and has stabilized its cash flow; however, the company needs to formulate a restructuring plan to deal with its legacy debts and improve its balance sheet.

7.  Accordingly, the Debtor has determined that a chapter 11 filing is necessary to restructure its obligations and stabilize its financial position.

**PRE-PETITION FINANCING**

8.  The Debtor is the borrower under an SBA-backed loan agreement with Wells Fargo Bank, N.A. ("**Wells Fargo**") as lender. Wells Fargo filed a UCC-1 financing statement on April

11, 2017 asserting a security interest in all inventory chattel paper, accounts, equipment, and general intangibles and proceeds of the foregoing, and Wells Fargo filed a timely continuation statement related to same. As of the Petition Date, the Debtor estimates that the total outstanding amount of the debt owed to Wells Fargo under this loan is approximately $141,893.00.

9. The Debtor is the borrower under an EIDL loan issued by the United States Small Business Administration (the "**SBA**"). The SBA filed a UCC-1 financing statement on July 16, 2020 asserting a security interest in substantially all of the Debtor's assets. As of the Petition Date, the Debtor estimates that the total outstanding amount of the debt owed to the SBA under this loan is approximately $461,330.00.

10. The California Department of Tax and Fee Administration (the "**California DTFA**") has filed several liens asserting tax liens under California law totaling $98,888.31 based on certain sales and use taxes.

11. Two other undisclosed parties have filed UCC-1 financing statements dated May 12, 2021 and June 15, 2021 showing the secured party to be "Corporation Service Company, as Representative" asserting broad liens on most of the Debtor's assets. The Debtor is still in the process of determining the identity of this undisclosed lender and whether such lender's security interest is valid.

12. In addition, the Debtor is a borrower on numerous equipment financing loans, which were originally issued by Engs Commercial Finance Co. but have since been assigned to several different lenders. The Debtor does not believe any such lenders have a basis to assert an interest in Cash Collateral (defined below).

13. Certain revenue from the Debtor's business may constitute Cash Collateral, as that term is defined in 11 U.S.C. § 363 (the "**Cash Collateral**"). The Debtor believes that one or more

creditors, including Wells Fargo, the SBA, the California DTFA and other secured creditors (collectively, the "**Lenders**"), may assert an interest in the Debtor's Cash Collateral.

### Relief Requested and Basis For Relief

14. By this Motion, the Debtor seeks interim and final authorization to use Cash Collateral. The Debtor proposes to use Cash Collateral for general operational and administrative expenses as set forth in the Budget. The expenses incurred by the Debtor and for which Cash Collateral will be used will all be incurred in the normal and ordinary course of operating its business. A proposed *Interim Order Authorizing Debtor to Use Cash Collateral and Granting Adequate Protection* (the "**Proposed Interim Order**") is attached hereto as **Exhibit B**.

15. Bankruptcy Code Section 363(c)(2) provides that debtors-in-possession may not use cash collateral unless an entity that has an interest in such cash collateral consents or the Court approves the use, conditioned on provision of adequate protection. Section 363(o) provides that at a hearing on the use of cash collateral, the entity asserting an interest in the cash collateral has the burden of proof on the issue of the validity, priority, or extent of such interest, and debtors-in-possession have the burden of proof on the issue of adequate protection. Rule 4001(b)(2) provides that the Court may not hold a final hearing on a motion to use cash collateral earlier than 14 days after service of the motion but may authorize the use of cash collateral prior to a final hearing as necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

16. The Debtor requests authority to use Cash Collateral for the purpose of avoiding immediate and irreparable harm to its estate. The authority to continue using Cash Collateral should continue until the Court rules on the Debtor's request following a final hearing.

17. The Debtor recognizes that the Lenders may be entitled to adequate protection of their interests in Cash Collateral (if any) within the meaning of 11 U.S.C. §§ 361 and 363. To the extent that any interest that the Lenders may have in the Cash Collateral is diminished, the Debtor

proposes to grant the Lenders replacement liens in post-petition collateral of the same kind, extent, and priority as the liens existing pre-petition (the "**Adequate Protection Liens**"), except that the Adequate Protection Liens will not extend to the proceeds of any avoidance actions received by the Debtor or the estate pursuant to chapter 5 of the Bankruptcy Code. Hence, the Lenders' interests in the Debtor's Cash Collateral (to the extent it has any) are adequately protected.

18. The Debtor further requests that the Court schedule a final hearing on Cash Collateral use, and following such hearing, enter a final order authorizing Cash Collateral use. At that hearing, the Court may consider any additional adequate protection requested by the Lenders and/or agreed upon by the Debtor.

19. If the Debtor is not allowed to use Cash Collateral, its business would be forced to shut down without an orderly process, which will diminish the value of its assets and cause significant imminent job losses. The Debtor requires the use of Cash Collateral to protect and preserve its going concern value.

20. Notwithstanding anything contained herein, the Debtor reserves the right to dispute the Lenders' claims, their secured status, and the extent to which their claims may be secured, if at all, and the extent of any adequate protection liens granted in any interim order or final order on this Cash Collateral Motion.

21. Section 363(c)(2) of the Bankruptcy Code authorizes a debtor to use cash collateral if either (a) each entity with an interest in the cash collateral consents, or (b) the Court, after notice and a hearing, authorizes such use. 11 U.S.C. § 363(c)(2).

22. Section 363(e) of the Bankruptcy Code conditions such use on the provision of "adequate protection" of the secured parties' interests. 11 U.S.C. § 363(e). The Bankruptcy Code does not explicitly define "adequate protection," but does provide a non-exclusive list of the means

by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditor's interest in such property.  11 U.S.C. § 361. What constitutes adequate protection must be evaluated on a case-by-case basis.  *In re Swedeland Dev. Group Inc.*, 16 F.3d 552, 564 (3rd Cir. 1994) (*citing In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. l987)); *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985).

23.	The Bankruptcy Code expressly provides that "granting a replacement lien is a means of adequate protection." 11 U.S.C. § 361(2).  Granting replacement liens provides ample adequate protection of the secured creditor's interest in cash collateral.  *See e.g. In re O'Connor*, 808 F.2d at 1393; *In re Dixie-Shamrock Oil & Gas. Inc.*, 39 B.R. 115, 118 (Bankr. M.D. Tenn. 1984).

24.	The Debtor's requested use of Cash Collateral as set forth in the Budget and the protections proposed to be afforded to the Lenders in the Proposed Interim Order, in light of the circumstances, are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection" and will serve to maintain the value of the Lenders' collateral.  For all of the reasons stated above, approval of the Cash Collateral Motion is proper.

## CONCLUSION

WHEREFORE, the Debtor prays that this Court (i) grant it authority to use Cash Collateral, (ii) grant the Adequate Protection Liens to the Lenders, (iii) set the Cash Collateral Motion for a final hearing, and (iv) grant such other relief as is just and proper.

Dated: April 29, 2025		Respectfully Submitted,

**KECK LEGAL, LLC**

*/s/ Benjamin R. Keck*
2801 Buford Highway NE, Suite 115
Atlanta, GA 30329
Tel. (470) 826-6020

bkeck@kecklegal.com
*Proposed Counsel for the Debtor*

~ 7 ~

## **EXHIBIT A**

**Budget**

| Month: | May | June | July | August | September | October |
|---|---|---|---|---|---|---|
| **Beginning Cash:** | $ 30,000.00 | $ 27,300.00 | $ 24,800.00 | $ 21,550.00 | $ 14,600.00 | $ 6,350.00 |
| **Client sales (Atlanta/Los Angeles)** | $420,000.00 | $350,000.00 | $370,000.00 | $340,000.00 | $300,000.00 | $360,000.00 |
| **Total Inflows:** | $420,000.00 | $350,000.00 | $370,000.00 | $340,000.00 | $300,000.00 | $360,000.00 |
| **Expenditures:** | | | | | | |
| Payroll, Taxes, and Benefits | $190,000.00 | $155,000.00 | $165,000.00 | $150,000.00 | $130,000.00 | $150,000.00 |
| Subleased Equipment (Equipment Payments) | $ 23,500.00 | $ 23,500.00 | $ 23,500.00 | $ 23,500.00 | $ 23,500.00 | $ 23,500.00 |
| Sales & Use Tax - Misc. Tax | $ 32,000.00 | $ 32,000.00 | $ 34,000.00 | $ 32,000.00 | $ 24,000.00 | $ 31,000.00 |
| Subcontractors/Outside Services | $ 24,000.00 | $ 11,500.00 | $ 12,000.00 | $ 8,000.00 | $ 5,000.00 | $ 8,000.00 |
| Rent & Lease (Los Angeles/Atlanta total) | $ 64,000.00 | $ 64,000.00 | $ 64,000.00 | $ 64,000.00 | $ 64,000.00 | $ 64,000.00 |
| Insurance & Workers Comp | $ 15,500.00 | $ 12,000.00 | $ 12,000.00 | $ 12,000.00 | $ 11,500.00 | $ 12,500.00 |
| Meals / Client Engagement / Marketing | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 |
| Fuel / Travel | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 |
| Utilities - Electric/Gas/Water/Telephone | $ 8,800.00 | $ 7,000.00 | $ 10,500.00 | $ 11,000.00 | $ 9,500.00 | $ 9,500.00 |
| Office Supply / Operational Expenses | $ 600.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 |
| COGS - Materials/Ink Acquisition for jobs (Average) | $ 24,500.00 | $ 9,000.00 | $ 13,000.00 | $ 9,000.00 | $ 5,000.00 | $ 9,000.00 |
| Quickbooks | $ 250.00 | $ 250.00 | $ 250.00 | $ 250.00 | $ 250.00 | $ 250.00 |
| Attorney's / CPA Fees | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 |
| Equipment Maintenance / Service Contracts | $ 3,800.00 | $ 3,800.00 | $ 3,800.00 | $ 3,800.00 | $ 3,800.00 | $ 3,800.00 |
| Trash Survices. /Burtec | $ 500.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 |
| MPIPH Union Benefits Contributions | $ 9,500.00 | $ 8,000.00 | $ 9,500.00 | $ 8,200.00 | $ 6,500.00 | $ 8,500.00 |
| Misc Expenses | $ 3,500.00 | $ 3,500.00 | $ 3,500.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 |
| Vehicle finance payments | $ 6,500.00 | $ 6,500.00 | $ 6,500.00 | $ 6,500.00 | $ 6,500.00 | $ 6,500.00 |
| Facilities Maintenance | $ 750.00 | $ 750.00 | $ 750.00 | $ 750.00 | $ 750.00 | $ 750.00 |
| **Total Outflows:** | $422,700.00 | $352,500.00 | $373,250.00 | $346,950.00 | $308,250.00 | $345,250.00 |
| **Ending Cash:** | $ 27,300.00 | $ 24,800.00 | $ 21,550.00 | $ 14,600.00 | $ 6,350.00 | $ 21,100.00 |

<u>**EXHIBIT B**</u>

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION**

| | |
|---|---|
| **In re:** | **Case No. 25-10613-PMB** |
| **SCV GRAPHIC PRODUCTIONS, INC.,** | **Chapter 11** |
| **Debtor.** | |

**INTERIM ORDER AUTHORIZING DEBTOR TO USE
CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION**

This matter came before the Court on _____ \_\_\_\_, 2025, for hearing (the "**Preliminary Hearing**") on a motion of SCV Graphic Productions, Inc. d/b/a Dangling Carrot Creative (the "**Debtor**" or "**Dangling Carrot**") for authority to use cash collateral [Doc. \_\_\_] (the "**Cash Collateral Motion**").[1]  Upon consideration of the Cash Collateral Motion, representations of counsel at the Preliminary Hearing, and all other matters of record, the Court hereby finds:

---

[1]  All capitalized terms not defined herein shall have the meanings ascribed to them in the Cash Collateral Motion.

~ 2 ~

A. The Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code on April 28, 2025 (the "**Petition Date**").  Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor remains in possession of its assets and has continued the operation and management of its business in this case.

B. This Court has jurisdiction over the Cash Collateral Motion pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2), involving matters under 11 U.S.C. §§ 361 and 363.  Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

C. The Debtor asserts that it is a borrower on certain loans with Wells Fargo Bank, N.A., and the United States Small Business Administration and also owes certain taxes to the California DTFA (collectively, the "**Lenders**"), which may assert security interests or liens on certain of the Debtor's personal property.

D. The revenue from the Debtor's business may constitute Cash Collateral as that term is defined in 11 U.S.C. Section 363 (the "**Cash Collateral**"). The Debtor believes that the Lenders may assert an interest in the Cash Collateral.

E. The Debtor asserts that it generates substantially all of its revenue from the operation of its business.

F. The Debtor asserts that it has provided actual notice of the Cash Collateral Motion and the relief requested therein to the Lenders, to each of the Debtor's Twenty Largest Unsecured Creditors, and the United States Trustee.

G. The Debtor alleges that an immediate need exists for the Debtor to obtain use of the Cash Collateral to fund critical operations of its business. A schedule of the Debtor's

~ 3 ~

revenues and cash requirements for the weeks following the Petition Date is set forth in the budget (the "**Budget**") attached to the Cash Collateral Motion as **Exhibit A**.

H. The Debtor alleges that in order to continue its operations and to preserve the value of its assets, it requires the use of the Cash Collateral in accordance with this Order.

I. Good cause has been shown for the entry of this Order and authorization for the Debtor to use cash collateral pending the final hearing on the Cash Collateral Motion pursuant to Bankruptcy Rule 4001(b) (the "**Final Hearing**"). Among other things, entry of this Order will minimize the disruption of its business, will increase the possibility for a successful reorganization, and is in the best interests of the Debtor, its creditors, and other parties-in-interest.

Accordingly, it is hereby

**ORDERED, ADJUDGED AND DECREED:**

1. The Cash Collateral Motion is GRANTED on an interim basis. Subject to the terms hereof, this Order is effective immediately.

2. The Debtor is authorized to use Cash Collateral as set forth herein from the date of the entry of this Order through and including the date of the final hearing on the Cash Collateral Motion (the "**Interim Period**"). The Interim Period may be extended by further order of the Court.

3. In order to provide adequate protection for the Debtor's use of the Cash Collateral authorized hereunder, the Lenders and any other secured creditor, to the extent they hold valid liens, security interests, or rights of setoff as of the Petition Date under applicable law, are hereby granted valid and properly-perfected liens (the "**Adequate Protection Liens**") on all property acquired by the Debtor after the Petition Date that is the same or similar nature, kind, or character as each party's respective pre-petition collateral, to the extent of any diminution in the value of the

Cash Collateral, except that no such replacement liens shall attach to the proceeds of any avoidance actions under Chapter 5 of the Bankruptcy Code.  The Adequate Protection Liens shall be deemed automatically valid and perfected upon entry of this Order.

4.   Nothing herein shall be construed as a finding or conclusion that the Lenders or any other party holds a valid security interest, lien, or any interest in any of the Debtor's assets, and all parties' rights with respect to such issues are reserved.

5.   This Order is entered without prejudice to the rights of either the Lenders or the Debtor to seek a modification of the terms hereof after notice and a hearing, and without prejudice to the right of Debtor to object to any claim.

6.   **The Court shall hold a final hearing on the Cash Collateral Motion on _____ at \_\_ a.m./p.m. in Courtroom \_\_\_, _____.** The instant Order shall remain valid until such hearing, or any continuation thereof, has been held and a ruling entered.

### ### END OF ORDER ###

**Prepared and presented by:**

**KECK LEGAL, LLC**

*/s/ Benjamin R. Keck*
Benjamin R. Keck, Ga. Bar No. 943504
2801 Buford Highway NE, Suite 115
Atlanta, GA 30329
Tel. (470) 826-6020
bkeck@kecklegal.com
*Proposed Counsel for the Debtor*

~ 5 ~

**Distribution List**

Benjamin R. Keck
KECK LEGAL, LLC
2801 Buford Highway NE, Suite 115
Atlanta, GA 30329

Office of the United States Trustee
Suite 362, Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, Georgia 30303