## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

IN THE MATTER OF:                                    BANKRUPTCY NO. 25-10613-pmb

SCV GRAPHIC PRODUCTIONS, INC.

      Debtor,                                          CHAPTER 11


Mitsubishi HC Capital
America, Inc.,

      Movant,

v.                                                   **CONTESTED MATTER**

SCV Graphic Productions, Inc. (Debtor),
      Respondent(s).

## MOTION FOR RELIEF FROM AUTOMATIC STAY

Pursuant to Section 362 of the Bankruptcy Code, Mitsubishi HC Capital America, Inc. ("Movant") moves the Court for relief from the automatic stay as to two (2) super wide roll to roll printers. In support thereof, Movant states the following:

## PARTIES AND JURISDICTION

1.     On April 28, 2025 ("Petition Date"), the debtor, SCV Graphic Productions, Inc. ("Debtor"), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.     This is a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(G) and 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The relief requested herein is based upon Section 362(d)(1) of the Bankruptcy Code.

## BACKGROUND FACTS

4.      On or about December 27, 2019, the Debtor executed and delivered to Engs Commercial Finance Co. a commercial finance agreement ("Agreement 1") with respect to an EFI Vutek 5R+ Super Wide Roll to Roll Led Printer (new) with all accessories, attachments and components ("Printer 1").  A true and correct copy of Agreement 1 is attached hereto as Exhibit A.  A true and correct copy of recorded UCC-1 financing statement perfecting Movant's lien in Printer 1 is attached hereto as Exhibit B.

5.      On or about May 3, 2021, the Debtor executed and delivered to Engs Commercial Finance Co. a commercial finance agreement ("Agreement 2") with respect to an EFI Vutek 5R+ Super Wide Roll to Roll Led Printer (new) ("Printer 2").  A true and correct copy of Agreement 2 is attached hereto as Exhibit C.  A true and correct copy of recorded UCC-1 financing statement perfecting Movant's lien in Printer 2 is attached hereto as Exhibit D.

6.      On April 1, 2023, Engs Commercial Finance Co. merged into Movant, with Movant as the surviving entity.

7.      Pre-petition, the Debtor defaulted on Agreement 1 by failing to make payments as agreed.  As of the Petition Date, the Debtor was $10,747.40 past due on its obligations to Movant under Agreement 1.  *See* Proof of Claim No. 10, p. 4.

8.      Pre-petition, the Debtor defaulted on Agreement 2 by failing to make payments as agreed.  As of the Petition Date, the Debtor was $21,217.93 past due on its obligations to Movant under Agreement 2.  *See* Proof of Claim No. 11, p. 4.

9.      As may be evidenced by Proof of Claim No. 10, there was due and owing to Movant the sum of $179,924.55 under Agreement 1 as of the Petition Date.  *See* Proof of Claim No. 10, p. 4.

2

10.     As may be evidenced by Proof of Claim No. 11, there was due and owing to Movant the sum of $173,841.89 under Agreement 2 as of the Petition Date. *See* Proof of Claim No. 11, p. 4.

11.     Movant has not received any adequate protection or other payments in this bankruptcy proceeding.

12.     Printer 1 and Printer 2 (collectively, the "Printers") depreciate with the mere passage of time.

## RELIEF REQUESTED

13.     Movant requests that the Court enter an order providing it relief from the automatic stay so that it may pursue its *in rem* rights and remedies including, without limitation, the right to repossess and sell the Printers.

14.     11 U.S.C. § 362(d)(1) vests this Court with authority to grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." In the instant case, cause exists to grant Movant relief from the automatic stay as:

    (a)     The Debtor failed to make payments to Movant as agreed;

    (b)     The Debtor continues to enjoy the use and possession of the Printers, perhaps subjecting them to waste and/or depreciation, without compensating Movant therefor; and

    (c)     Movant is not adequately protected.

15.     In the unlikely event that this Court declines to grant stay relief, Movant requests that this Court enter an Order, pursuant to 11 U.S.C. §§ 361 and 362, conditioning the continued effectiveness of the stay upon the Debtor making adequate protection payments, maintaining insurance in compliance with Agreement 1 and Agreement 2, paying any taxes for the Printers as

#103980608v1

they become due and affording such other and further relief as is necessary to adequately protect Movant.

WHEREFORE, Movant respectfully requests that the Court enter an Order: (i) granting Movant relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1); (ii) waiving the fourteen-day stay imposed by Federal Rule of Bankruptcy Procedure 4001(a)(3); and (iii) granting such other and further relief as the Court deems just and proper.  In the unlikely event that this Court declines to grant Movant relief from stay, Movant requests the entry of an Order: (i) affording Movant adequate protection of Movant's interest in the Printers; and (ii) granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

Mitsubishi HC Capital America, Inc.

By Its Attorneys,
JONES WALKER LLP

*/s/ Stephen P. Drobny*
Stephen P. Drobny
Georgia Bar No. 430447
JONES WALKER LLP
Suite 1400
3455 Peachtree Rd NE
Atlanta, GA  30326
Telephone  (404) 870-7500
Telecopy  (404) 870-7501
Email  sdrobny@joneswalker.com

#103980608v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing Motion for Relief from Automatic

Stay has been served by ECF or first-class mail on this 2nd day of June, 2025 to the parties listed

below:

SCV Graphic Productions, Inc.
27520 Avenue Mentry
Valencia, CA 91355

Jonathan S. Adams on behalf of U.S. Trustee United States Trustee
jonathan.s.adams@usdoj.gov

Jonathan D Clements on behalf of Debtor SCV Graphic Productions, Inc.
jclements@kecklegal.com

Stephen P. Drobny on behalf of Creditor Mitsubishi HC Capital America, Inc.
sdrobny@joneswalker.com, nkatsaras@joneswalker.com;miamiservice@joneswalker.com

Benjamin R Keck on behalf of Debtor SCV Graphic Productions, Inc.
bkeck@kecklegal.com,
2411851420@filings.docketbird.com,9222034420@filings.docketbird.com

Lee Bynum Perkins on behalf of Creditor Paint Unlimited, Inc.
law@leeperkins.com

Kelly E. Waits on behalf of Creditor Banc of America Leasing & Capital LLC
kwaits@burr.com, ngolay@burr.com


/s/ Stephen P. Drobny
Stephen P. Drobny
Georgia Bar No. 430447
JONES WALKER LLP
Suite 1400
3455 Peachtree Rd NE
Atlanta, GA 30326
Telephone (404) 870-7500
Telecopy (404) 870-7501
Email sdrobny@joneswalker.com

#103980608v1

# EXHIBIT A



**COMMERCIAL FINANCE AGREEMENT**

Contract # 2818

This Commercial Finance Agreement, together with any Amendment(s), Exhibit(s), Schedule(s), and Addendum(s) hereto (collectively, this "CFA"), dated as of <u>December 27, 2019</u> is entered into by and between **Engs Commercial Finance Co.** ("Creditor"), a California corporation having its principal place of business at **One Pierce Place, Suite 1100 West, Itasca, Illinois 60143** and

**SCV GRAPHIC PRODUCTIONS, INC. d/b/a DANGLING CARROT CREATIVE** ("Borrower"), with a place of business located **27520 AVENUE MENTRY, VALENCIA, CA 91355** telephone number(s): **661-295-6610** and email address: **scott1@danglingcarrotcreative.com**

The use of the word "You," "Your" and "Your Company" in this CFA refers to each of the Borrower and Co-Borrowers, if any. If more than one Borrower is named in this CFA, the liability of each Borrower shall be joint and several and shall be subject to the terms of Section 19(B). "We," "Us" and "Our" refers to Creditor and its successors and assigns. "Term" shall mean the period starting on the Commencement Date (defined below) and continuing through loan expiration.

1. **Equipment Description** (include Quantity, Year, Make, Model and Serial No. (if available)). The Equipment described below and/or listed on an attached Schedule or invoice identified by Creditor for such purpose, including all additions, replacements, accessions, accessories, attachments, substitutions, exchanges, improvements, repairs, parts, replacement parts, manuals and reference books, supplements, upgrades, thereto and thereof, however designated together with any related software license(s), software, as may be modified, corrected, supplemented or enhanced from time to time, and the proceeds thereon, including any and all cash and non-cash proceeds from any source, including but not limited to insurance proceeds (hereinafter collectively referred to as "Collateral"):

| QUANTITY | COLLATERAL DESCRIPTION | SERIAL NUMBER |
|---|---|---|
| 1 | EFI VUTEK 5R+ SUPER WIDE ROLL TO ROLL LED PRINTER (New) WITH ALL ACCESSORIES, ATTACHMENTS, AND COMPONENTS | |

2. **Name and location of "Vendor":** You are solely responsible for the selection of the Vendor and/or manufacturer referenced below:

**ELECTRONICS FOR IMAGING, INC. d/b/a EFI**
6750 DUMBARTON CIRCLE, FREMONT, CA 94555-3616
650-357-3600

3. **Itemization of Purchase Price:** Creditor is directed to pay purchase price described below to Vendor, manufacturer and/or other suppliers as follows:

| | | |
|---|---|---|
| **SALE PRICE** (combined price of each unit as itemized on Your invoice(s) submitted for financing, may include: federal excise tax, accessories, attachments, fees, license, title or registration fees, premiums, protection plans or service contracts, services and/or additional charges which may be included below): | | $484,165.00 |
| CASH DOWN PAYMENT (if check is payable to Engs Commercial Finance Co., please note any payment in excess of $5,000.00 must be made via cashier's check or wire.): | $10,000.00 | |
| TOTAL NET TRADE-IN: | $0.00 | |
| **TOTAL DOWN PAYMENT** (due at the time of execution): | | $10,000.00 |
| **FEES, CHARGES AND PREMIUMS INCLUDED IN YOUR AMOUNT FINANCED** | | |
| SALES TAX: | $0.00 | |
| DOCUMENTATION FEE FINANCED: | $0.00 | |
| FLORIDA STAMP TAX: | $0.00 | |
| OTHER FEES FINANCED: | | |
| **TOTAL FEES\CHARGES FINANCED:** | $0.00 | |
| **TOTAL AMOUNT FINANCED:** | | $474,165.00 |
| MONTHLY INVOICE FEE (waived only for electronic payment): | | $0.00 |
| **ADVANCE PAYMENT(S), FEES, CHARGES, TAXES -- DUE AT SIGNING** | | |
| 0    ADVANCE PAYMENT(S) OF: | $0.00 | |
| **FEES\CHARGES - DUE AT SIGNING (NON-FINANCED):** | | |
| Doc Fee Non Financed | $495.00 | |
| TOTAL FEES, CHARGES, TAXES (NON-FINANCED): | $495.00 | |
| **TOTAL AMOUNT DUE AT SIGNING:** | | $495.00 |

4. **Payment Schedule, Term, Number and Amount of Installment Payments and Payment Due Date:**

| | | | |
|---|---|---|---|
| **72 MONTH TERM** ("TERM") | | | |
| INSTALLMENT PAYMENTS: | 72 @ $7,833.69 | | |

| INVOICE DUE DATE AND INSTALLMENT PAYMENT AMOUNT | | |
|---|---|---|
| INVOICE DUE DATE: | Due Date Determined Upon Acceptance date of Collateral | INVOICE AMOUNT: $7,833.69 |

5. **NO WARRANTIES:** YOU ACKNOWLEDGE THAT WE ARE NOT THE MANUFACTURER OF THE COLLATERAL NOR THE MANUFACTURER'S AGENT NOR A VENDOR THERETO. YOU ARE FINANCING THE COLLATERAL "AS IS" AND WITH ALL FAULTS. WE DO NOT MAKE, AND WE HEREBY DISCLAIM ANY WARRANTY OR REPRESENTATION WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO THE COLLATERAL, INCLUDING, WITHOUT LIMITATION AS TO THE DURABILITY, QUALITY, CONDITION OR SUITABILITY, THE MERCHANTABILITY OF THE COLLATERAL, OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. WE SHALL NOT BE LIABLE FOR ANY LOSS, DAMAGE OR EXPENSE OF ANY KIND CAUSED DIRECTLY OR INDIRECTLY BY THE COLLATERAL OR ITS USE, OPERATION, OR POSSESSION, OR BY ANY DAMAGE WHATSOEVER AND HOWEVER CAUSED. IF THE COLLATERAL IS

90011 \ 82518 (12/27/19 – 474165)
(CMT-00237) Equip - CFA-(Rev 09-19)

NOT PROPERLY INSTALLED, DOES NOT OPERATE AS REPRESENTED OR WARRANTED BY THE VENDOR OR MANUFACTURER, OR IS UNSATISFACTORY FOR ANY REASON, REGARDLESS OF CAUSE OR CONSEQUENCE, YOUR ONLY REMEDY, IF ANY, SHALL BE AGAINST THE VENDOR OR MANUFACTURER OF THE COLLATERAL AND NOT AGAINST US. NO DEFECT, DAMAGE OR UNFITNESS OF THE COLLATERAL FOR ANY PURPOSE SHALL RELIEVE YOUR OBLIGATION TO MAKE PAYMENTS OR RELIEVE YOU OF ANY OTHER OBLIGATION UNDER THIS CFA. TO THE EXTENT PERMITTED BY THE MANUFACTURER OR VENDOR AND PROVIDED NO DEFAULT HAS OCCURRED AND IS CONTINUING HEREUNDER, WE ASSIGN ALL MANUFACTURER'S AND VENDOR'S WARRANTIES TO YOU. No defect or unfitness of the Collateral, and no failure on the part of the manufacturer, Vendor or the shipper of the Collateral to deliver the Collateral or any part thereof to You shall relieve You of the obligation to pay any installment payment or any other obligation hereunder. We shall have no obligation in respect of the Collateral and shall have no obligation to install, erect, test, adjust or service the Collateral. You shall only look to persons other than Creditor such as the manufacturer or Vendor thereof should any item of Collateral for any reason and at any way, be defective.

6. **Loan:** You agree to finance the Collateral together with all affixed parts, attachments and accessories, pursuant to the Payment Schedule and Itemization of Purchase Price Sections reflected above and subject to the terms of this CFA. You have selected the Collateral, Vendor, and/or manufacturer based upon Your own judgment and disclaim any reliance upon any statements or representations made by Us. You agree to indemnify and hold Us harmless and to defend Us against any claim of liability by Vendor. We may, in Our sole discretion, accept a photocopy, electronically transmitted facsimile, electronic version or other reproduction of this CFA (a "Counterpart") as the binding and effective record of this CFA whether or not an ink-signed copy hereof is also received by Us from You; provided, however, that if We accept a Counterpart as the binding and effective record hereof, the Counterpart acknowledged in writing by Us shall constitute the record hereof. You represent to Us that the signature that appears on the Counterpart that is transmitted by You to Us in any manner described above is intended by You to authenticate the Counterpart notwithstanding that such signature is electronic, facsimile, electronic version or a reproduction and You further agree that such Counterpart received by Us, shall, when acknowledged in writing by Us, constitute an original document for the purposes of establishing the provisions thereof and shall be legally admissible under the best evidence rule and binding on and enforceable against You. If We accept a Counterpart as the binding and effective record hereof only such Counterpart acknowledged in writing by Us shall be deemed an original and to the extent that this CFA constitutes chattel paper, perfection of a security interest by possession may only be accomplished by possession of the Counterpart that bears Our ink-signed or stamped acknowledgement. This CFA may be executed in counterparts, each of which when so executed shall be deemed to be an original and all of which when taken together shall constitute one and the same agreement.

7. **Security Interest:** You hereby grant to Us a first priority security interest under the Uniform Commercial Code ("UCC") in the Collateral, whether now owned or hereafter acquired, whether used as equipment or inventory, and all replacements thereof and all receivables, rebates, discounts, credits, payments, refunds, proceeds, all accounts, general intangibles, contract rights, insurance proceeds, instruments, proceeds and products and chattel paper relating to the foregoing Collateral including, without limitation, the rights to all payments relating to or arising out of the sale, lease, rental or other disposition of the foregoing, all books and records at any time evidencing or related to the foregoing and all software or other intellectual property used in connection with the Collateral. Such security interest is granted to secure payment and performance by You of Your obligations hereunder. You further grant to Us a security interest in the Collateral (separate and distinct from and subordinate only to the security interest granted to Us above) to secure the payment and performance of all now existing or hereafter arising debts, liabilities and obligations of Yours of every kind and character, whether direct, indirect, absolute, contingent, primary, secondary, or otherwise to Us, whether under this CFA or any other agreement, and whether due directly or acquired by assignment, transfer, renewal, extension, refinancing or other means ("Liabilities"); provided, however, that such cross-collateralization shall only benefit Us and those of Our assignees who have been assigned both this CFA and such other debts, liabilities or obligations.

8. **Ordering Collateral, Delivery and Acceptance:** If You entered into any purchase or supply contract with any Vendor, manufacturer or supplier for the Collateral, You hereby assign to Us all Your rights under such purchase or supply contract, but none of Your obligations, except for the obligation to pay for the Collateral if it is accepted by You according to the terms of this CFA. The Collateral is to be delivered at Your expense to the location specified in Paragraph 11 of this CFA. The occurrence of the Commencement Date (as defined below) shall be conclusive evidence that You have inspected, tested and confirmed Your satisfaction with the Collateral, accepted the Collateral on an "AS-IS, WHERE-IS AND WITH ALL FAULTS" basis for all purposes hereunder, and directed Us to make payment for Your acquisition of the Collateral as provided herein.

9. **Borrower's Representations and Warranties:** You represent and warrant to Us that as of the date on which You execute this CFA and the Commencement Date: (i) if You are a partnership, corporation, limited liability company or other legal entity, the execution and delivery of this CFA and the performance of Your obligations hereunder and thereunder have been duly authorized by all necessary action on Your part and are not in contravention of, and will not result in a breach of, any of the terms of Your charter, by-laws, articles of incorporation or other organizational documents or any loan agreements or indentures of Yours, or any other contract, agreement or instrument to which You are a party or by which You are bound; (ii) the person signing this CFA on Your behalf is duly authorized, and this CFA has been duly authorized, executed and delivered; (iii) this CFA is Your legal, valid and binding agreement enforceable against You in accordance with its terms, and the execution, delivery and

performance of this CFA is not in contravention of or result in any breach of any loan agreements or indentures of Yours, or any other contract, agreement or instrument to which You are a party or by which You are bound; (iv) Your exact legal name as it appears on Your charter or other organizational documents, including as to formation and capitalization, and Your jurisdiction of incorporation or formation, and principal place of business or chief executive office are as set forth in the heading of this CFA; (v) You are duly organized, validly existing and in good standing under the laws of the state of Your incorporation or formation and are duly qualified and authorized to transact business in, and are in good standing under the laws of, each other state in which the Collateral is or will be located or otherwise necessary for the conduct of Your business; (vi) there has been no change in Your name, or the name under which You conduct business, within the one (1) year preceding the date hereof except as previously reported in writing to Us; (vii) You have not moved Your principal place of business or chief executive office, or have not changed the jurisdiction of Your organization, within the one (1) year preceding the date hereof except as previously reported in writing to Us; (viii) all information provided by You to Us in connection with this CFA is true and correct including the financial information which You have submitted or will submit in connection with this CFA; (ix) there are no suits, pending or threatened against You or any Guarantor of Your obligations (each, a "Guarantor") which, if decided adversely, might materially adversely affect Your or such Guarantor's financial condition, the value, utility or remaining useful life of the Collateral, the rights intended to be afforded to Us hereunder or under any guarantee or Your ability or any Guarantor's ability to perform its obligations under this CFA or any document delivered in connection herewith; and (x) none of You or any Guarantor, any of Your or any Guarantor's subsidiaries nor any director or officer of any of the foregoing is an individual or entity that is owned or controlled by persons that are Blocked Person(s). "Blocked Person" means any person or entity (A) that is now or at any time on a list of Specially Designated Nationals issued by the Office of Foreign Assets Controlled "OFAC") of the United States Department of the Treasury or any sectoral sanctions identifications list; (B) whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law, including any executive order of any branch or department of the United States government; or (C) otherwise designated by the United States or any regulator having jurisdiction or regulatory oversight over Us or our financing source, to be a person with whom We or they are not permitted to extend credit to or with regard to whom a buyer relationship may result in penalties against Us or limitations on a creditor's ability to enforce a transaction.

10. **Payments and Prepayment:** The "Commencement Date" of this CFA shall be the occurrence of: (i) the date indicated as the date of acceptance on the Acceptance Certificate executed by You and delivered to Us; or (ii) the date You authorize Us to commence this CFA as indicated on any written authorization; and (iii) at our election, the date We make a substantial payment for the Collateral. If You do not deliver to Us a properly executed Acceptance Certificate for the Collateral within thirty (30) days after it is delivered to You, We shall have the right to cancel this CFA and all Our obligations hereunder. As of the Commencement Date, the Collateral is subject to this CFA. If the Commencement Date is not the first or the fifteenth day of any calendar month (a "Payment Date"), the Term will be extended by the number of days between the Commencement Date and the Payment Date which first occurs after the Commencement Date, and your first payment will be increased by 1/30th of the monthly installment Payment multiplied by the number of days elapsed from the Commencement Date to the day immediately preceding the first Payment Date after the Commencement Date ("Interim Charge". All installment Payments are due and payable in arrears on or before the Payment Due Date (and on the same day of each subsequent month during the Term). Your receipt of an invoice is not a condition of Your obligation to pay Your installment Payments or other charges when due. If the installment Payment includes a cost of service and/or maintenance, You acknowledge that such inclusion is for Your convenience, You will not assert against Us any claim, defense, set-off or demand for compensation for any reason, including those which You might have under any service or maintenance contract relating to the Collateral. We reserve the right to adjust Your installment Payment, reflected above, by up to 10% to reflect changes in the final invoice of the Vendor, supplier or manufacturer, as applicable. Any such adjustment in the final invoice of the Vendor, supplier or manufacturer shall be reflected on a subsequent invoice to be sent to You within 30 days. **Borrower's obligation to repay all amounts payable by Borrower as set forth herein is absolute, unconditional and irrevocable, and all such amounts shall be paid by Borrower in accordance with the terms hereof without any abatement, reduction, setoff or defense of any kind.** Upon termination of any insurance policy(ies) financed, any premium, rebate or refund will be applied to Your account. At Our option: (i) toward outstanding charges, (ii) future installments, or (iii) by adjusting Your remaining Installment Payments to reflect such rebate. However, You will remain obligated to pay any deficiency charges relating to such policy(ies) after rebate or refund is applied. You may prepay Your obligations under this CFA in whole but not in part at any time upon prior written notice to Us by paying Us, in cash, the unpaid principal balance, plus $280, plus one percent (1%) of the unpaid principal balance for each 12-month period remaining on this CFA ("Prepayment"). A partial 12-month period remaining shall be deemed a full 12-month period remaining for purposes of calculating the Prepayment amount. TIME IS OF THE ESSENCE WITH RESPECT TO THE OBLIGATIONS OF BORROWER UNDER THIS AGREEMENT.

11. **Use and Location:** You agree that the Collateral will be used for its intended purpose, and that the loan contemplated hereby, and Your use of the Collateral will be solely for commercial and business purposes and not for personal, family or household purposes. The Collateral will be and shall remain personal property whether or not affixed to real estate, and, at Your expense, You shall keep the Collateral free from any and all liens and encumbrances other than any liens or encumbrances in favor of Us. You shall mark and identify the Collateral with all information and in such manner as We or Our assigns may request from time to time,

and replace promptly any such markings or identifications which are removed, defaced or destroyed. You shall give Us immediate notice of any attachment or other judicial process, liens or encumbrances affecting the Collateral. You shall keep and use the Collateral only at the Collateral Location indicated below. You may not move the Collateral without Our prior written consent. Borrower shall not part with possession or control of the Collateral or suffer or allow to pass out of its possession or control any item of Collateral.

Collateral Location (if different enter below):

500 SANDY CREEK ROAD BUILDING 2004 SUITE 104, FAYETTEVILLE, GA 30214

**12. Maintenance and Installation:** You are responsible for any installation costs and You agree to keep the Collateral, at Your cost, in good repair and working order and pay all costs relating to the use and operation of the Collateral. Except for upgrades that do not reduce the value or marketability of the Collateral and as required to comply with this Section, You shall not make any alterations, additions or improvements to the Collateral without Our prior written consent, except that You shall make all modifications and improvements thereto in accordance with any manufacturer's and/or Vendor's specifications and as otherwise required by law. All additions and improvements made to the Collateral shall immediately become the property of Creditor and be deemed part of the Collateral for all purposes, and shall not be removed if removal would impair the Collateral's economic value or functional utility. Any modifications shall be made in accordance with the recommendations and standards set by the manufacturer of the parts or devices included in such modification. You shall be solely responsible for, and shall indemnify, defend and hold Us harmless from and against, any and all claims resulting from the breach of this Section.

**13. Insurance and Indemnification:** You agree at all times, at Your own expense, to: (i) insure the Collateral against loss, theft or damage from every cause whatsoever in an amount not less than the Total Amount Financed reflected above and on such terms as specified in Our Verification of Insurance Form, (ii) maintain comprehensive general liability insurance insuring against liability for property damage, death and bodily injury resulting from Collateral, as specified in Our Verification of Insurance Form, (iii) name Us and/or Our assigns on the forgoing policy(ies) as sole Lender Loss Payee; and (iv) maintain such coverage from an insurance carrier or carriers acceptable to Us. All policies shall contain clauses naming Us and Our assignees "Lender Loss Payee" and requiring the insurer to furnish Us with at least thirty (30) days prior written notice of any material change, cancellation, or non-renewal of coverage and stating that coverage shall not be invalidated against Us or Our assigns because of any violation of any condition or warranty contained in any policy or application therefor by Borrower or by reason of any action or inaction of Borrower. You agree to inform Us immediately in writing of any notices from, or other communications with, any insurers that may in any way adversely affect the insurance policies being maintained pursuant hereto or of any insurance claims. No insurance shall be subject to any co-insurance clause. You agree to provide Us with certificates or other evidence of insurance acceptable to Us, before the Term begins, and annually during the Term, and whenever there is a change in carrier or other change in the insurance required hereby. If at any time You fail to keep the Collateral properly insured in accordance with Our requirements or fail to deliver to Us a valid and acceptable certificate of insurance reflecting such insurance as being in effect, it will be deemed as a default hereunder. Regardless of the existence of any applicable insurance, You agree to indemnify and hold Us, Our employees and affiliates harmless from all suits, claims, demands, losses, damages, judgments, obligations, actions, suits and all legal proceedings, and any and all costs and expenses in connection therewith, including, attorneys' fees, and liabilities arising out of, or in any manner connected with, or resulting directly or indirectly from the Collateral, including, without limitation, the manufacture, purchase, loan, financing, selection, ownership, delivery, rejection, non-delivery, transportation, possession, use, storage, operation, condition, maintenance, repair, return or other disposition of the Collateral or with this loan, including without limitation, claims for injury to or death of persons and for damage to property, whether arising under the doctrine of strict liability, by operation of law or otherwise, and to give Creditor prompt notice of any such claim or liability. If You fail to keep the Collateral properly insured, then, in addition to the other remedies available hereunder, We have the right, but not the obligation, to obtain such insurance for the Term at Your expense and if so obtained, We will add to Your Installment Payments due hereunder and You will pay to Us Our costs of obtaining such insurance and any customary fees or charges of Ours or Our designees associated with such insurance. You also agree to pay an administrative fee equal to 10% of Your Installment Payment for each 30-day period during the Term the Collateral is uninsured or remains improperly insured. You understand that this fee will not be utilized to obtain insurance on Your behalf and any insurance We purchase as permitted hereby will benefit Us and not You and may be more expensive than insurance you could purchase by compliance with the terms hereof. Nothing in this CFA nor Our actions hereunder, including without limitation Our assessment of administrative fees or other amounts permitted hereby, shall mean that We are selling insurance or providing insurance coverage. The fees and other amounts payable hereunder do not necessarily reflect actual costs or exposures and may result in additional profit to Us. You may, upon not less than thirty (30) days express written notice to Us and delivery to Us of satisfactory insurance certificates or other satisfactory evidence of insurance complying with the terms of this CFA, terminate any insurance or related charges pursuant to this Section. Your obligations under this Section shall survive termination or expiration of this CFA.

**14. Taxes and Fees:** You agree to pay when due or reimburse Us for all excise and other taxes, fees, fines, penalties and internal administrative costs relating to use or ownership of the Collateral or to this CFA, including but not limited to documentary stamp taxes, now or hereafter imposed, levied or assessed by any federal, state or

local government or agency. If any federal, state, county or local government or agency requires any taxes, charges or fees to be paid in advance, and We pay such taxes, charges or fees, We reserve the right to adjust the remaining payments, so that We may recover any payment of such taxes, charges or fees. Any such adjustment shall be reflected on Your subsequent invoice(s). You agree to comply with all registration, filing, licensing and tax laws applicable to the Collateral and will be responsible for any fees or penalties for failure to do so on a timely basis. Your obligations under this Section shall survive termination or expiration of this CFA.

**15. Default and Remedies:** Each of the following, and any other events or circumstances herein provided to be a Default, is a "Default" under this CFA: (i) failure to pay when due any amount due under this CFA or any other amount due and owing by You to Creditor; (ii) Your breach or failure to perform any other covenants and promises under this CFA or any other agreement entered into by You with Creditor; (iii) the death of any individual Borrower, or partner of Borrower if Borrower is a partnership, or any Guarantor; (iv) Your failure to pay indebtedness when due to other lenders; (v) any attempt by You to sell, rent or lease the Collateral or any interest therein to anyone other than Us or a Co-Borrower named herein (and any such attempt shall be void); (vi) allowing anyone other than You to operate the Collateral; (vii) You or any Guarantor makes an assignment for the benefit of creditors, or becomes insolvent; (viii) You or any Guarantor threatens to cease or ceases to do business as a going concern, seeks any arrangement or compromise with creditors, dissolves, or takes any actions regarding the cessation or winding up of Your business affairs or the business affairs of any Guarantor; (ix) any representation or warranty made by You herein or in any document or certificate furnished by You to Us either directly or indirectly is incorrect in any material respect at any time; (x) You or any Guarantor files for bankruptcy or enters into any reorganization proceeding; (xi) any proceeding in bankruptcy, receivership, liquidation or insolvency is commenced against You or Your property or any Guarantor or their property; (xii) any Guarantor fails to pay or perform any obligation to Us, or fails to observe or perform any term, condition, covenant, representation or warranty contained in any agreement made by such Guarantor in favor of Us; and/or (xiii) We believe, acting reasonably and in good faith, that the prospect of payment to Us under this CFA is impaired. Upon Default and at any time thereafter, at Our election, We may (a) accelerate the unpaid balance due hereunder, without protest, presentment, demand or notice (including but not limited to notice of intent to accelerate and notice of acceleration), all of which You waive, and require that You pay, as reasonable liquidated damages for loss of bargain, the "Accelerated Balance"; (b) require that You deliver to Us the Collateral; (c) repossess the Collateral or disable the Collateral without court order and You will not make any claims against Us for damages or trespass or any other reason; (d) sell the Collateral by public or private sale, retain the Collateral in full or partial satisfaction of Your obligations hereunder, or otherwise dispose of the Collateral in any manner We choose, free and clear of any of Your claims or rights; (e) sue to enforce Your performance hereof; (f) recover interest on the unpaid balance of Creditor's Loss plus any other amounts recoverable hereunder from the date it becomes payable until fully paid at the rate of the lesser of 12% per annum or the highest rate permitted by law; and/or (g) pursue any right or remedy available to Us at law, or in equity, including any rights or remedies under the UCC. The "Accelerated Balance" will be equal to the total of (x) all accrued and unpaid amounts then due and owing hereunder, and (y) the sum of the remaining Installment Payments scheduled to be paid hereunder discounted by the rate of 1.5% per annum, and (z) any recovery by Us in excess of unamortized Total Amount Financed (as defined above) constituting make-whole premium, compensation for loss of bargain and unamortized overhead and closing costs and other compensation and not a penalty as You expressly agree. In addition, You agree to pay Our reasonable attorneys' fees and actual costs including repossession, refurbishing the Collateral and collection costs, and all non-sufficient funds charges and similar charges, and You shall deliver the Collateral (at Your expense) to a location designated by Us. Each remedy shall be cumulative and in addition to any other remedy referred to above or otherwise available to Us at law or equity. No express or implied waiver of any default shall constitute a waiver of any of Our other rights. Our election to exercise any remedy available hereunder, at law or in equity, shall not prevent Us from exercising any other available remedy, whether concurrently or at a later time. Upon default and at any time thereafter, at Our election, We can accelerate, in accordance with applicable law, the entire unpaid balance due hereunder and require that You pay, as reasonable liquidated damages for loss of bargain, the "Accelerated Balance." The "Accelerated Balance will be equal to the total of (i) all accrued and unpaid amounts then due and owing hereunder, and (ii) the sum of the remaining Payments scheduled to be paid hereunder discounted by 1 ½ percent, and will be immediately due and payable, without protest, presentment demand or notice (including but not limited to notice of intent to accelerate and notice of acceleration), all of which You waive. We can also pursue any of the remedies available to Us under the UCC or any other law. In addition, You agree to pay Our reasonable attorneys' fees and actual costs including repossession, refurbishing the Collateral and collection costs, and all non-sufficient funds charges and similar charges, and You shall deliver the Collateral (at Your expense) to a location designated by Us.

**Louisiana Default Remedies under Chapter 9 of Louisiana Law.** This subsection shall apply to any of the Collateral (including any Collateral proceeds) that, at any time, is or may be located in the State of Louisiana, or otherwise be subject to the application of Louisiana law in any respect (the "Louisiana Collateral"). Upon the occurrence of any event of default, We shall have the following rights and remedies with respect to the Louisiana Collateral, which rights and remedies are in addition to, and not in lieu or limitation of, any other rights and remedies that may be available to Us under this CFA, under Chapter 9 of the Louisiana Commercial Laws, under the laws in effect in any state other than Louisiana, or at law or equity generally. For purposes of foreclosure under Louisiana executory process procedures, You confess judgment and acknowledge to be indebted unto and in favor of Us up to the full amount of Your Liabilities plus interest, costs, expenses, attorney's fees, and other fees and charges. To the extent permitted under applicable Louisiana law, You

95011 ___-518 (12/27/19 – 474165)
(CMT-00237) Equip - CFA-(Rev 09-19)

additionally waive (a) the benefit of appraisal as provided in Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedure and all other laws with regard to appraisal upon judicial sale; (b) any right to receive demand for payment from the court prior to the court issuing a writ of seizure and sale; (c) the notice of seizures as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; and (e) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above. Should any of the Louisiana Collateral be seized as an incident to an action, You agree that the court issuing any such order shall, if requested by Us, appoint Us or any person or entity named by Us at the time such seizure is requested, or at any time thereafter, as keeper of the Louisiana Collateral as provided under La. R.S. §9:5136, et seq. You agree to pay the reasonable fees and expenses of such keeper, which compensation to the keeper shall also be a part of the secured Liabilities under this CFA.

**16. Late Charge:** If You fail to pay any sum due under this CFA within ten (10) days after its due date ("Late Payment"), You agree to pay Us a late charge (as reasonable liquidated damages and not as a penalty) equal to, the greater of $50.00 or 10% of the Late Payment not to exceed the maximum amount permitted by applicable law ("Late Charge"). If any check or funds transfer request for any payment is returned to Us unpaid, You shall pay Us a service charge of $55 for each such returned check or request.

**17. Assignment and Inspection:** <u>YOU HAVE NO RIGHT TO SELL, TRANSFER, SUBLEASE, ASSIGN THIS CFA OR THE COLLATERAL, OR TO GRANT A SECURITY INTEREST IN OR OTHERWISE ENCUMBER THIS CFA OR THE COLLATERAL OR THIS CFA.</u> We may sell, transfer, assign, or encumber this CFA or the related Collateral without notice or consent. You agree that if We sell, transfer, assign, or encumber this CFA or the related Collateral, the assignee will have the rights and benefits that We assign to the assignee and will not have to perform any of Our obligations. You agree that the rights of the assignee will not be subject to any claim, defense or set-off that You may have against Us. We and Our agents and representatives shall have the right at any time during regular business hours to inspect the Collateral and for that purpose to have access to the location of the Collateral without any claims for trespass or damages.

**18. Risk of Loss:** You hereby assume and shall bear the entire risk of loss, theft, damage and destruction of the Collateral from any cause whatsoever commencing upon the earlier of the delivery of the Collateral to You or the date We advance any portion of the Amount Financed hereunder and no loss, theft, damage or destruction of the Collateral shall relieve You of the obligation to make scheduled Installment Payments or any other obligation under this CFA, and this CFA shall remain in full force and effect except as provided herein. You shall notify Us in writing within five (5) days of any item of Collateral becoming lost, stolen or damaged and of the circumstances and extent of such damage. If damage of any kind occurs to any item of Collateral, You, at Our option, shall at Your expense (a) place the item in good repair, condition or working order, or (b) if, in Our opinion, the Collateral cannot be repaired or is lost, stolen, destroyed, rendered permanently unfit for use for any reason, or in the event of condemnation or seizure of an item of Collateral, pay to Us an amount equal to the sum of the following: (1) all amounts payable by You hereunder due but unpaid as of such date, plus (2) the amount of all remaining unpaid Installment Payments hereunder not yet due as of such date, discounted from the respective dates payments would be due at the Discount Rate as defined below, "Discount Rate" means (i) the rate set forth for the United States Treasury Bond or Note having the closest term to (but not longer than) the original term of this loan, as set forth in the Wall Street Journal, two (2) business days prior to the Commencement Date, (ii) the rate set forth for the United States Treasury Bond or Note having the closest term to (but not longer than) the remaining term of this CFA, as set forth in the Wall Street Journal, two (2) business days prior to the date of calculation of this amount, or (iii) 1.5%, whichever is lowest. If a rate referred to in the preceding clauses "(i)" or "(ii)" is not published in the Wall Street Journal, such rate shall be taken from a reputable source selected by Us.

**19. Borrower's Covenants.** (A) You shall not sell, transfer or assign any material portion of Your assets; allow a controlling interest in Borrower to be sold, transferred or assigned to any person(s) or entity(ies) other than those who hold a controlling interest as of the date hereof, whether by merger, sale or otherwise; allow a Blocked Person to have an ownership interest in or control of Borrower; enter into any merger or reorganization in which You are not the surviving entity; or unless You shall have given Us not less than thirty (30) days' prior written notice change (i) Your name or business address from that set forth above, and, if an individual, Your state of residence, (ii) the state under whose laws You are organized as of the date hereof, or (iii) the type of organization under which You exist as of the date hereof.
(B) Authorized Signer Covenant. The signer(s) who execute this CFA and any other ancillary documents are duly authorized by Borrower and should any signer(s) later be found to be unable to bind Borrower, said signer(s) shall be personally liable for any obligations incurred under the CFA and any ancillary documents, in addition to the liability of the Borrower.
(C) Co-Borrower Covenants. If there is more than one Borrower executing this CFA, each undersigned Borrower shall be designated as Borrower hereunder and all documents executed in connection herewith. Each Borrower agrees: (i) all obligations shall be joint and several and each Borrower shall be individually responsible for fulfilling all obligations of Borrower hereunder; (ii) any Default by any Borrower shall be a Default by each other Borrower; (iii) the mutual understanding reached by each Borrower in this regard is consideration for each Borrower's execution hereto; (iv) each Borrower will receive the benefit of the financing made hereunder and We would not otherwise enter into or provide financing under any Agreement without each Borrower's execution; and (v) We shall be entitled to pursue all rights and remedies hereunder against each Borrower upon any Default by any Borrower. All representations, covenants, agreements and obligations imposed on each Borrower shall be binding on each other Borrower and the act of any Borrower shall bind all

other Borrowers and We shall be authorized to rely, without investigation, on the authority of any Borrower to give any notice, grant any consent and Our notice to one Borrower shall suffice as notice all Borrowers. Each Borrower's obligations shall not be affected by any action taken or not taken by Us against any other Borrower, Guarantor(s) or the Collateral for any reason whatsoever, including: (i) any action by any Borrower, (ii) any exercise or non-exercise of any right or remedy against any Borrower, (iii) any voluntary or involuntary bankruptcy, insolvency, reorganization or similar proceeding by any other Borrower.

**20. Consent to Jurisdiction and Venue:** You hereby consent to the jurisdiction of any local, state, or federal court located within the State of Illinois and waive any objection based on improper venue or forum non conveniens to the conduct of any action or proceeding in any such court. You further waive formal service of process and consent that all service of process may be made by mail or messenger directed to You at the address above and that service so made shall be deemed to be completed upon the earlier of actual receipt, or three (3) days after service of process addressed to You to at Your address set forth above is deposited in the mail or one (1) day after service of process is delivered to a messenger or overnight courier service for delivery to You. You acknowledge that you have an option to consult with counsel of your choice regarding this CFA and that it shall not be construed against either of us by reason of draftsmanship.

**21. GOVERNING LAW:** THIS CFA SHALL BE CONSTRUED IN ALL RESPECTS IN ACCORDANCE WITH AND GOVERNED BY THE INTERNAL LAWS (AS OPPOSED TO THE CONFLICTS OF LAW PROVISIONS) OF THE STATE OF ILLINOIS, EXCEPT THAT QUESTIONS AS TO PERFECTION OF OUR SECURITY INTEREST AND THE EFFECT OF PERFECTION OR NON-PERFECTION SHALL BE GOVERNED BY THE LAW WHICH WOULD BE APPLICABLE EXCEPT FOR THIS SECTION.

**22. JURY WAIVER:** TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HERETO EACH WAIVE ANY RIGHT TO A TRIAL BY JURY ON ANY CLAIM, DEMAND, ACTION, CAUSE OF ACTION OR COUNTERCLAIM ARISING UNDER OR IN ANY WAY RELATED TO THIS CFA.

**23. Limitation of Remedies and Damages:** You agree that in the event there is any dispute relating to or arising in connection with this CFA, You shall not be entitled to indirect, special, punitive or consequential damages in connection with any action arising under or in any way related to this CFA.

**24. Notices:** The parties to this CFA agree that any notices shall be in writing and delivered personally or by U.S. mail, certified mail or overnight mail or by nationally-recognized courier service to Borrower's address as set forth above and to Creditor's address as set forth below the signature lines of this CFA, or at such other address designated by either party in writing.

**25. Miscellaneous:** You hereby acknowledge that You and any Guarantor have authorized the Vendor, Us or any of Our subsidiaries or affiliated companies, funding sources and Our successors, assignees and designees to investigate and share Your creditworthiness and credit capacity in connection with the establishment, maintenance and collection of Your account and to furnish information concerning Your account, including insurance information to credit reporting agencies, Our assignees and others who may lawfully receive such information. You agree, within forty-five (45) days after the end of each fiscal quarter other than the final fiscal quarter of each fiscal year, to deliver to Us a balance sheet and statement of income at the end of such quarter, each setting forth in comparative form the corresponding figures for the comparable period in the preceding fiscal year end, within one hundred and twenty (120) days after the end of each fiscal year, to deliver to Us a balance sheet as at the end of such year and statements of income and cash flows for such year, with accompanying notes to financial statements, each setting forth in comparative form the corresponding figures for the preceding year, in each case prepared in accordance with generally accepted accounting principles and practices consistently applied and certified by Your chief financial officer as fairly presenting Your financial position and results of operations, and, in the case of year-end financial statements, certified by an independent accounting firm acceptable to Us; and with reasonable promptness, furnish Us with such other information, financial or otherwise, relating to You or the Collateral as We shall reasonably request. You agree that no course of dealing or delay or failure to enforce Our rights under this CFA shall prevent Us from enforcing any of Our rights hereunder or under any addendums. If You fail to make any payment or take any action as and when required by law or by this CFA, We may do so in Your or Our name, without waiving any default, and You will reimburse Us on demand, together with interest at the lower of 18% or the highest amount permitted by law.* You agree that the terms and conditions reflected in this CFA or any attachments hereto are a complete and exclusive statement of this CFA. Notwithstanding the foregoing, to the extent there are errors or omissions in the information contained in this CFA and/or any attachment to this CFA, We may by written notice to You correct such errors or omissions. You agree that this CFA will be binding upon Your successors and assigns. You agree that Our waiver of any provision hereunder must be in writing and shall not constitute a waiver of any other matter. Any changes to the terms and conditions of this CFA must be in writing and agreed to and signed by Us. It is the express intent of the parties not to violate any applicable usury laws or to exceed the maximum amount of interest permitted to be charged or collected by applicable law, and any such excess payment will be applied to the payments in inverse order of maturity, and any remaining excess will be refunded to You. You authorize Us to contact You via Your home or business telephone number, e-mail, cell phone or fax number. Any provision or clause hereof or any remedy herein provided found to be invalid or unenforceable in any jurisdiction under any applicable law shall be inapplicable to the extent of such unenforceability or invalidity, but the remaining provisions hereof shall be given effect in accordance with the manifest intent hereof, and any such invalidity or unenforceability in any jurisdiction shall not render unenforceable or invalid such provision in any other jurisdiction. You will promptly execute and deliver to Us such further documents, take such further action and

provide such information as We may request in order to carry out more effectively the intent and purpose of this CFA, and/or comply with laws or regulations applicable to Us, You, and/or the transaction evidenced by this CFA, including information identifying the owners of Borrower and its affiliates and their respective ownership interests. At any time, We and any assignee of Ours is authorized to file one or more UCC financing statements without Your signature.

**26. Irrevocable Limited Power of Attorney:** You hereby irrevocably appoint Us and/or our successors and assigns Your true and lawful Attorney-in-Fact coupled with an interest with full authority and power to do and perform all and every act and thing whatsoever requisite and necessary to be done, as fully, to all intents and purposes as You might or could do if personally present, with full power of substitution and revocation, to complete, sign, execute, any instrument related to a loss settlement, any insurance check or apply insurance proceeds, Collateral registration or certificate of ownership, recording of liens, fixture filings, UCC financing statement(s), and to sell, record interest, transfer or otherwise dispose of the Collateral, whether in bulk or in parcels, whether or not the Collateral is present at such sale and with or without notice, at a public or private sale. We and/or Our assigns may apply the proceeds from any such sale or other disposition against any and all of Your obligations to Us and/or Our assigns. If Your signature on any financing statement or other instruments is required by law, You shall execute such supplemental instruments and financing statements We deem to be necessary and advisable and shall otherwise cooperate to defend Our interest in the Collateral by filing or otherwise. You also agree to pay Us on demand filing, registration and releasing fees described by the UCC or other law. Further, to

the extent insurance premium(s) is/are financed hereunder, and in the event of a default under the CFA, You irrevocably appoint Us as Attorney-in-Fact, with full authority to (a) cancel any insurance policy(ies) in accordance with the provisions herein, (b) receive all refunds, rebates or sums due under said policy(ies), and (c) execute and deliver on Your behalf all documents, forms and notices relating to the insurance policy(ies) hereunder.

**27. Electronic Payment:** By completing the information below, You hereby authorize and request Us to initiate scheduled or periodic electronic fund transfer debits (and credit entries and adjustments for any debit entries in error) and authorize the financial institution identified below to honor the debit and/or credit entries initiated by Us for indebtedness due and owing Us including but not limited to: Installment Payments and any other open charges such as progress pay interest charges, interim charges, late charges, fees, non-sufficient funds charges, insurance charges, or any charges related to title or taxes due and owing under this CFA, Progress Payment Agreement or any other agreement with Us.  This authority is to remain in force until such time as all amounts due are paid in full or until We and Your financial institution have received written notification from You terminating this authorization in such time end manner as to afford Us and Your financial institution a reasonable opportunity to act on it. You agree that Your bank account information may be disclosed, and authorization assigned pursuant to Section 17 herein.

| If the box is checked, You are required to make Your payments via Electronic Payment as a condition of this CFA. PLEASE PROVIDE US WITH YOUR BANK OR SAVINGS INSTITUTION'S INFORMATION REQUESTED BELOW OR ATTACH A VOIDED CHECK. | | |
|---|---|---|
| Name of Account Holder: | SCV Graphic Productions, inc. | ☒ Business Account ☐ Personal Account    ☐ Checking Account ☐ Savings Account |
| Bank Name and Branch: | Wells Fargo, Valencia, Ca. | Account Number: ████ 6300 |
| Address (city and state): | 24301 Magic Mountain Parkway, Valencia, Ca. 91355 | |
| Telephone Number: | 661-222-1280 | Routing Number: ████ 0247 |

**28. ELECTRONIC SIGNATURE:** Creditor and Borrower may elect to execute this CFA via electronic signature. If this CFA is executed via electronic signature, You and We agree that the electronic version of this CFA which has been authenticated by You and Us in accordance with applicable law and controlled by Us (or our assignee) shall (pursuant to the rules and regulations of DocuSign, Inc. and eOriginal, Inc.) constitute the original authoritative version of this CFA; provided that if the "Paper Out" process shall have occurred pursuant to the eOriginal Product Reference Guide, and there shall simultaneously exist both the "Paper Out" printed version and an electronic version of this CFA, then the "Paper Out" printed version of this CFA as identified in the eOriginal audit record and corresponding affidavit shall constitute the sole authoritative version. You also agree that by typing Your name in the boxes indicated below or any other electronic method of affixing Your signature, either in Your individual capacity or as an authorized representative of the Borrower, You are confirming that You are the person so indicated in the box below, and that You are providing Your electronic signature on this CFA. Your electronic signature shall evidence Your agreement to be bound by and authenticate this electronic record and attest to the statements contained in this CFA with the same effect as if You had manually signed this CFA. This CFA and any related electronic documents are electronic records that may be transferred, authenticated, stored and transmitted by electronic means. You agree to keep any security code or password secured and will not inappropriately disclose this information to others. You also confirm that all documentation related to this transaction delivered or executed using Your email address, login, security code and/or password are true and correct.

YOU ACKNOWLEDGE THAT YOU HAVE READ AND ACCEPT THE TERMS OF THIS CFA, AMENDMENT, EXHIBIT, RIDER, AND SCHEDULE.  FURTHER, YOU ACKNOWLEDGE THAT UPON YOUR RECEIPT OF THE COLLATERAL YOU WILL SIGN A SEPARATE DELIVERY AND ACCEPTANCE AT WHICH TIME WE MAY PAY THE VENDOR FOR SAID COLLATERAL AND ACCEPT THIS CFA.  THIS CFA SHALL NOT BE A VALID CONTRACT UNTIL ACCEPTED BY CREDITOR.  BORROWER(S) HEREBY WAIVES NOTICE BY CREDITOR OF ITS ACCEPTANCE OF THIS CFA.

BORROWER:     SCV GRAPHIC PRODUCTIONS, INC. dba DANGLING CARROT CREATIVE

| | |
|---|---|
| Signature: | X _____ |
| Name: | SCOTT A NINER |
| Title: | PRESIDENT |
| Cell Phone: | 661-510-7571 |
| Email Address: | scott1@danglingcarrotcreative.com |
| Billing Address: | 27520 avenue Mentry, Valencia, Ca. 91355 |

AGREED TO AND ACCEPTED:

ENGS COMMERCIAL FINANCE CO. ("CREDITOR")

By:        **Rose Reynolds**

Print Name:   ROSE REYNOLDS
Title:        **Sr. Vice President - Operations**     **(CS)**
              SR. VICE PRESIDENT - OPERATIONS

Address for Notice:
P.O. Box 128
Itasca, IL 60143-0128

# EXHIBIT B

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

Lien Solutions
Representation of filing

**A. NAME & PHONE OF CONTACT AT FILER** (optional)
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

**B. E-MAIL CONTACT AT FILER** (optional)
uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**    25877 - ENGS

Lien Solutions
P.O. Box 29071
Glendale, CA  91209-9071

This filing is Completed
File Number : 197753996662
File Date  : 12/27/2019

73118995

CALI

File with: Secretary of State, CA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor Information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| SCV GRAPHIC PRODUCTIONS, INC. | | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 27520 AVENUE MENTRY | VALENCIA | CA | 91355 | | USA |

2. **DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor Information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only <u>one</u> Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| ENGS COMMERCIAL FINANCE CO. | | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| P.O. BOX 128 | ITASCA | IL | 60143-0128 | | USA |

4. **COLLATERAL:** This financing statement covers the following collateral:
THE FOLLOWING DESCRIBED EQUIPMENT, INCLUDING ALL ADDITIONS, REPLACEMENTS, ACCESSIONS, ACCESSORIES, ATTACHMENTS, SUBSTITUTIONS, EXCHANGES, IMPROVEMENTS, PARTS, REPLACEMENT PARTS, MANUALS AND REFERENCE BOOKS, SUPPLEMENTS, UPGRADES, THERETO AND THEREOF, HOWEVER DESIGNATED TOGETHER WITH ANY RELATED SOFTWARE LICENSE(S), SOFTWARE, AS MAY BE MODIFIED, CORRECTED, SUPPLEMENTED OR ENHANCED FROM TIME TO TIME, AND THE PROCEEDS RELATING THERETO (INCLUDING BUT NOT LIMITED TO CASH, INSURANCE PAYMENTS AND PROCEEDS, ETC.):

1 (ONE) - EFI VUTEK 5R+ SUPER WIDE ROLL TO ROLL LED PRINTER

5. Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is ☐ held in a Trust (see UCC1Ad, Item 17 and Instructions)   ☐ being administered by a Decedent's Personal Representative

6a. Check <u>only</u> if applicable and check <u>only</u> one box:    6b. Check <u>only</u> if applicable and check <u>only</u> one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility   ☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):   ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
73118995    INDUSTRIAL    2518

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 01200-0071 Tel (800) 331-3282

# EXHIBIT C



**COMMERCIAL FINANCE AGREEMENT**

Contract # 3218

This Commercial Finance Agreement, together with any Amendment(s), Exhibit(s), Schedule(s), and Addendum(s) hereto (collectively, this "**CFA**"), dated as of **May 03, 2021** is entered into by and between **Engs Commercial Finance Co.** ("Creditor"), a California corporation having its principal place of business at **One Pierce Place, Suite 1100 West, Itasca, Illinois 60143** and

**SCV GRAPHIC PRODUCTIONS, INC. d/b/a DANGLING CARROT CREATIVE** ("**Borrower**"), with a place of business located **27520 AVENUE MENTRY, VALENCIA, CA 91355** telephone number(s): **661-295-6610** and email address: **scott1@danglingcarrotcreative.com**

The use of the word "**You**," "**Your**" and "**Your Company**" in this CFA refers to each of the Borrower and Co-Borrowers, if any. If more than one Borrower is named in this CFA, the liability of each Borrower shall be joint and several and shall be subject to the terms of Section 19(C). "**We**," "**Us**" and "**Our**" refers to Creditor and its successors and assigns. "**Term**" shall mean the period starting on the Commencement Date (defined below) and continuing through loan expiration.

**1. Equipment Description** (include Quantity, Year, Make, Model and Serial No. (if available). The Equipment described below and/or listed on an attached Schedule or Invoice identified by Creditor for such purpose, including all additions, replacements, accessions, accessories, attachments, substitutions, exchanges, improvements, repairs, parts, replacement parts, manuals and reference books, supplements, upgrades, thereto and thereof, however designated together with any related software license(s), software, as may be modified, corrected, supplemented or enhanced from time to time, and the proceeds thereon, including any and all cash and non-cash proceeds from any source, including but not limited to insurance proceeds (hereinafter collectively referred to as "**Collateral**"):

| QUANTITY | COLLATERAL DESCRIPTION | SERIAL NUMBER |
|---|---|---|
| 1 | EFI VUTEK 5R+ SUPER WIDE ROLL TO ROLL LED PRINTER (New) | |

**2. Name and location of "Vendor":** You are solely responsible for the selection of the Vendor and/or manufacturer referenced below:

ELECTRONICS FOR IMAGING, INC. d/b/a EFI
6750 DUMBARTON CIRCLE, FREMONT, CA 94555-3616
650-357-3500

**3. Itemization of Purchase Price:** Creditor is directed to pay purchase price described below to Vendor, manufacturer and/or other suppliers as follows:

| | | |
|---|---|---|
| **SALE PRICE** (combined price of each unit as itemized on Your invoice(s) submitted for financing, may include federal excise tax, accessories, attachments, fees, license, title or registration fees, premiums, protection plans or service contracts, services and/or additional charges which may be included below): | | $484,165.00 |
| **CASH DOWN PAYMENT** (if check is payable to Engs Commercial Finance Co., please note any payment in excess of $5,000.00 must be made via cashier's check or wire.): | $48,416.00 | |
| TOTAL NET TRADE-IN: | $0.00 | |
| TOTAL DOWN PAYMENT (due at the time of execution): | | $48,416.00 |
| **FEES, CHARGES AND PREMIUMS INCLUDED IN YOUR AMOUNT FINANCED** | | |
| SALES TAX: | $0.00 | |
| DOCUMENTATION FEE FINANCED: | $0.00 | |
| FLORIDA STAMP TAX: | $0.00 | |
| OTHER FEES FINANCED: | | |
| TOTAL FEES\CHARGES FINANCED: | $0.00 | |
| **TOTAL AMOUNT FINANCED:** | | $435,749.00 |
| MONTHLY INVOICE FEE (waived only for electronic payment): | | $0.00 |
| **ADVANCE PAYMENT(S), FEES, CHARGES, TAXES -- DUE AT SIGNING** | | |
| 2    ADVANCE PAYMENT(S) OF: | $8,338.00 | |
| FEES\CHARGES - DUE AT SIGNING (NON-FINANCED): | | |
| Doc Fee Non Financed | $495.00 | |
| TOTAL FEES, CHARGES, TAXES (NON-FINANCED) | $495.00 | |
| TOTAL AMOUNT DUE AT SIGNING: | | $17,171.00 |

**4. Payment Schedule, Term, Number and Amount of Installment Payments and Payment Due Date:**

| 60  MONTH TERM ("TERM") | |
|---|---|
| INSTALLMENT PAYMENTS: | 1 @ $8,338.00<br>1 @ $8,338.00<br>58 @ $8,338.00 |

| INVOICE DUE DATE AND INSTALLMENT PAYMENT AMOUNT | | | |
|---|---|---|---|
| INVOICE DUE DATE: | Due Date Determined Upon Acceptance date of Collateral | INVOICE AMOUNT: | $8,338.00 |

**5. NO WARRANTIES: YOU ACKNOWLEDGE THAT WE ARE NOT THE MANUFACTURER OF THE COLLATERAL NOR THE MANUFACTURER'S AGENT NOR A VENDOR THERETO. YOU ARE FINANCING THE COLLATERAL "AS IS" AND WITH ALL FAULTS. WE DO NOT MAKE, AND** **WE HEREBY DISCLAIM ANY WARRANTY OR REPRESENTATION WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO THE COLLATERAL, INCLUDING, WITHOUT LIMITATION AS TO THE DURABILITY, QUALITY, CONDITION OR SUITABILITY, THE**

MERCHANTABILITY OF THE COLLATERAL, OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. WE SHALL NOT BE LIABLE FOR ANY LOSS, DAMAGE OR EXPENSE OF ANY KIND CAUSED DIRECTLY OR INDIRECTLY BY THE COLLATERAL OR ITS USE, OPERATION, OR POSSESSION, OR BY ANY DAMAGE WHATSOEVER AND HOWEVER CAUSED. IF THE COLLATERAL IS NOT PROPERLY INSTALLED, DOES NOT OPERATE AS REPRESENTED OR WARRANTED BY THE VENDOR OR MANUFACTURER, OR IS UNSATISFACTORY FOR ANY REASON, REGARDLESS OF CAUSE OR CONSEQUENCE, YOUR ONLY REMEDY, IF ANY, SHALL BE AGAINST THE VENDOR OR MANUFACTURER OF THE COLLATERAL AND NOT AGAINST US. NO DEFECT, DAMAGE OR UNFITNESS OF THE COLLATERAL FOR ANY PURPOSE SHALL RELIEVE YOUR OBLIGATION TO MAKE PAYMENTS OR RELIEVE YOU OF ANY OTHER OBLIGATION UNDER THIS CFA. TO THE EXTENT PERMITTED BY THE MANUFACTURER OR VENDOR AND PROVIDED NO DEFAULT HAS OCCURRED AND IS CONTINUING HEREUNDER, WE ASSIGN ALL MANUFACTURER'S AND VENDOR'S WARRANTIES TO YOU. No defect or unfitness of the Collateral, and no failure on the part of the manufacturer, Vendor or the shipper of the Collateral to deliver the Collateral or any part thereof to You shall relieve You of the obligation to pay any installment payment or any other obligation hereunder. We shall have no obligation in respect of the Collateral and shall have no obligation to install, erect, test, adjust or service the Collateral. You shall only look to persons other than Creditor such as the manufacturer or Vendor thereof should any item of Collateral for any reason and in any way, be defective.
6. **Loan:** You agree to finance the Collateral together with all affixed parts, attachments and accessories, pursuant to the Payment Schedule and Itemization of Purchase Prices Sections reflected above and subject to the terms of this CFA. You have selected the Collateral, Vendor, and/or manufacturer based upon Your own judgment and disclaim any reliance upon any statements or representations made by Us. You agree to indemnify and hold Us harmless and to defend Us against any claim of liability by Vendor. We may, in Our sole discretion, accept a photocopy, electronically transmitted facsimile, electronic version or other reproduction of this CFA (a "Counterpart") as the binding and effective record of this CFA whether or not an ink-signed copy hereof is also received by Us from You; provided, however, that if We accept a Counterpart as the binding and effective record hereof, the Counterpart acknowledged in writing by Us shall constitute the record hereof. You represent to Us that the signature that appears on the Counterpart that is transmitted by You to Us in any manner described above is intended by You to authenticate the Counterpart notwithstanding that such signature is electronic, facsimile, electronic version or a reproduction and You further agree that such Counterpart received by Us, shall, when acknowledged in writing by Us, constitute an original document for the purposes of establishing the provisions thereof and shall be legally admissible under the best evidence rule and binding on and enforceable against You. If We accept a Counterpart as the binding and effective record hereof only such Counterpart acknowledged in writing by Us shall be deemed an original and to the extent that this CFA constitutes chattel paper, perfection of a security interest by possession may only be accomplished by possession of the Counterpart that bears Our ink-signed or stamped acknowledgement. This CFA may be executed in counterparts, each of which when so executed shall be deemed to be an original and all of which when taken together shall constitute one and the same agreement.
7. **Security Interest:** You hereby grant to Us a first priority security interest under the Uniform Commercial Code ("UCC") in the Collateral, whether now owned or hereafter acquired, whether used as equipment or inventory, and all replacements thereof and all receivables, rebates, discounts, credits, payments, refunds, proceeds, all accounts, general intangibles, contract rights, insurance proceeds, instruments, proceeds and products and chattel paper relating to the foregoing Collateral including, without limitation, the rights to all payments relating to or arising out of the sale, lease, rental or other disposition of the foregoing, all books and records at any time evidencing or related to the foregoing and all software or other intellectual property used in connection with the Collateral.  Such security interest is granted to secure payment and performance by You of Your obligations hereunder. You further grant to Us a security interest in the Collateral (separate and distinct from and subordinate only to the security interest granted to Us above) to secure the payment and performance of all now existing or hereafter arising debts, liabilities and obligations of Yours of every kind and character, whether direct, indirect, absolute, contingent, primary, secondary, or otherwise to Us, whether under this CFA or any other agreement, and whether due directly or acquired by assignment, transfer, renewal, extension, refinancing or other means ("Liabilities"); provided, however, that such cross-collateralization shall only benefit Us and those of Our assignees who have been assigned both this CFA and such other debts, liabilities or obligations.
8. **Ordering Collateral, Delivery and Acceptance:** If You entered into any purchase or supply contract with any Vendor, manufacturer or supplier for the Collateral, You hereby assign to Us all Your rights under such purchase or supply contract, but none of Your obligations, except for the obligation to pay for the Collateral if it is accepted by You according to the terms of this CFA. The Collateral is to be delivered at Your expense to the location specified in Paragraph 11 of this CFA. The occurrence of the Commencement Date (as

defined below) shall be conclusive evidence that You have inspected, tested and confirmed Your satisfaction with the Collateral, accepted the Collateral on an "AS-IS, WHERE-IS AND WITH ALL FAULTS" basis for all purposes hereunder, and directed Us to make payment for Your acquisition of the Collateral as provided herein.
9. **Borrower's Representations and Warranties:** You represent and warrant to Us that as of the date on which You execute this CFA and the Commencement Date:  (i) if You are a partnership, corporation, limited liability company or other legal entity, the execution and delivery of this CFA and the performance of Your obligations hereunder and thereunder have been duly authorized by all necessary action on Your part and are not in contravention of, and will not result in a breach of, any of the terms of Your charter, by-laws, articles of incorporation or other organizational documents or any loan agreements or indentures of Yours, or any other contract, agreement or instrument to which You are a party or by which You are bound; (ii) the person signing this CFA on Your behalf is duly authorized, and this CFA has been duly authorized, executed and delivered; (iii) this CFA is Your legal, valid and binding agreement enforceable against You in accordance with its terms, and the execution, delivery and performance of this CFA is not in contravention of or result in any breach of any loan agreements or indentures of Yours, or any other contract, agreement or instrument to which You are a party or by which You are bound; (iv) Your exact legal name as it appears on Your charter or other organizational documents, including as to punctuation and capitalization, and Your jurisdiction of incorporation or formation, and principal place of business or chief executive office are as set forth in the heading of this CFA; (v) You are duly organized, validly existing and in good standing under the laws of the state of Your incorporation or formation and are duly qualified and authorized to transact business in, and are in good standing under the laws of, each other state in which the Collateral is or will be located or otherwise necessary for the conduct of Your business; (vi) there has been no change in Your name, or the name under which You conduct business, within the one (1) year preceding the date hereof except as previously reported in writing to Us; (vii) You have not moved Your principal place of business or chief executive office, or have not changed the jurisdiction of Your organization, within the one (1) year preceding the date hereof except as previously reported in writing to Us; (viii) all information provided by You to Us in connection with this CFA is true and correct including the financial information which You have submitted or will submit in connection with this CFA; (ix) there are no suits pending or threatened against You or any Guarantor of Your obligations (each, a "Guarantor") which, if decided adversely, might materially adversely affect Your or such Guarantor's financial condition, the value, utility or remaining useful life of the Collateral, the rights intended to be afforded to Us hereunder or under any guarantee or Your ability or any Guarantor's ability to perform its obligations under this CFA or any document delivered in connection herewith; and (x) none of You or any Guarantor, any of Your or any Guarantor's subsidiaries nor any director or officer of any of the foregoing is an individual or entity that is owned or controlled by persons that are Blocked Person(s).  "Blocked Person" means any person or entity (A) that is now or at any time on a list of Specially Designated Nationals issued by the Office of Foreign Assets Controlled "OFAC") of the United States Department of the Treasury or any sectoral sanctions identifications list; (B) whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law, including any executive order of any branch or department of the United States government; or (C) otherwise designated by the United States or any regulator having jurisdiction or regulatory oversight over Us or our financing source, to be a person with whom We or they are not permitted to extend credit to or with regard to whom a buyer relationship may result in penalties against Us or limitations on a creditor's ability to enforce a transaction.
10. **Payments and Prepayment:** The "Commencement Date" of this CFA shall be at Our election the occurrence of:   (i) the date We make a substantial payment for the Equipment; or (II) the date indicated as the date of acceptance on the Acceptance Certificate executed by You and delivered to Us; or (iii) the date You authorize Us to commence this CFA as indicated on any written authorization.  If You do not deliver to Us a properly executed Acceptance Certificate for the Equipment within thirty (30) days after it is delivered to You, We shall have the right to cancel this CFA and all Our obligations hereunder. You agree that as of the Commencement Date, the Equipment is subject to this CFA. If the Commencement Date is not the first or the fifteenth day of any calendar month (a "Payment Date"), the CFA Term will be extended by the number of days between the Commencement Date and the Payment Date which first   occurs after the Commencement Date, and  Your first payment will be increased by 1/30th of the monthly Rental Payment multiplied by the number of days  elapsed from the CFA Commencement Date to the day immediately preceding the first Payment Date after the Commencement Date ("Interim Charge").  You acknowledge that the interest rate used to compute the Interim Charge is higher than the implicit interest rate used to calculate the Installment Payments during the Term.  All Installment Payments are due and payable in arrears on or before the Payment Due Date (and on the same day of each subsequent month during the Term). Your receipt of an invoice is not a condition of Your obligation to pay Your Installment Payments or other charges when due.  If the Installment Payment includes a

95011\ ▮▮321B (05/03/21 – 435749) #243217
(CMT-00237) Equip - CFA-(Rev 04.20)

cost of service and/or maintenance, You acknowledge that such inclusion is for Your convenience. You will not assert against Us any claim, defense, set-off or demand for compensation for any reason, including those which You might have under any service or maintenance contract relating to the Collateral. Creditor reserves the right to adjust the interest rate and Your Installment Payment based upon any increase in either swap rate or Creditor's cost of capital from the time of approval until the time of funding. We reserve the right to adjust Your Installment Payment, reflected above, by up to 10% to reflect changes in the final invoice of the Vendor, supplier or manufacturer, as applicable. Any such adjustment to the final invoice of the Vendor, supplier or manufacturer shall be reflected on a subsequent invoice to be sent to You within 30 days. **Borrower's obligation to repay all amounts payable by Borrower as set forth herein is absolute, unconditional and irrevocable, and all such amounts shall be paid by Borrower in accordance with the terms hereof without any abatement, reduction, setoff or defense of any kind.** Upon termination of any insurance policy(ies) financed, any premium, rebate or refund will be applied to Your account, at Our option: (i) toward outstanding charges, (ii) future installments, or (iii) by adjusting Your remaining Installment Payments to reflect such rebate. However, You will remain obligated to pay any deficiency charges relating to such policy(ies) after rebate or refund is applied. You may prepay Your obligations under this CFA in whole but not in part at any time upon prior written notice to Us by paying Us, in cash, the unpaid principal balance, plus $250, plus one percent (1%) of the unpaid principal balance for each 12-month period remaining on this CFA ("Prepayment"). A partial 12-month period remaining shall be deemed a full 12-month period remaining for purposes of calculating the Prepayment amount.  TIME IS OF THE ESSENCE WITH RESPECT TO THE OBLIGATIONS OF BORROWER UNDER THIS AGREEMENT.

**11. Use and Location:**  You agree that the Collateral will be used for its intended purpose, and that the loan contemplated hereby, and Your use of the Collateral will be solely for commercial and business purposes and not for personal, family or household purposes.  The Collateral will be and shall remain personal property whether or not affixed to real estate, and, at Your expense, You shall keep the Collateral free from any and all liens and encumbrances other than any liens or encumbrances in favor of Us. You shall mark and identify the Collateral with all information and in such manner as We or Our assigns may request from time to time and replace promptly any such markings or identifications which are removed, defaced, or destroyed. You shall give Us immediate notice of any attachment or other judicial process, liens or encumbrances affecting the Collateral.  You shall keep and use the Collateral only at the Collateral Location indicated below. You may not move the Collateral without Our prior written consent.  Borrower shall not part with possession or control of the Collateral or suffer or allow to pass out of its possession or control any item of Collateral.

**Collateral Location (if different enter below):**

_27520 AVENUE MENTRY, VALENCIA, CA 91355_

**12. Maintenance and Installation:**  You are responsible for any installation costs and You agree to keep the Collateral, at Your cost, in good repair and working order and pay all costs relating to the use and operation of the Collateral. Except for upgrades that do not reduce the value or marketability of the Collateral and as required to comply with this Section, You shall not make any alterations, additions or improvements to the Collateral without Our prior written consent, except that You shall make all modifications and improvements thereto in accordance with any manufacturer's and/or Vendor's specifications and as otherwise required by law. All additions and improvements made to the Collateral shall immediately become the property of Creditor and be deemed part of the Collateral for all purposes and shall not be removed if removal would impair the Collateral's economic value or functional utility.  Any modifications shall be made in accordance with the recommendations and standards set by the manufacturer of the parts or devices included in such modification. You shall be solely responsible for, and shall indemnify, defend, and hold Us harmless from and against, any and all claims resulting from the breach of this Section.

**13. Insurance and Indemnification:**  You agree at all times, at Your own expense, to: (i) insure the Collateral against loss, theft or damage from every cause whatsoever in an amount not less than the Total Amount Financed reflected above and on such terms as specified in Our Verification of Insurance Form, (ii) maintain comprehensive general liability insurance insuring against liability for property damage, death and bodily injury resulting from Collateral, as specified in Our Verification of Insurance Form, (iii) name Us and/or Our assigns on the forgoing policy(ies) as sole Lender Loss Payee; and (iv) maintain such coverage from an insurance carrier or carriers acceptable to Us.  All policies shall contain clauses naming Us and Our assignees "Lender Loss Payee" and requiring the insurer to furnish Us with at least thirty (30) days prior written notice of any material change, cancellation, or non-renewal of coverage and stating that coverage shall not be invalidated against Us or Our assigns because of any violation of any condition or warranty contained in any policy or application theretofor by Borrower or by reason of any action or inaction of

Borrower.  You agree to inform Us immediately in writing of any notices from, or other communications with, any insurers that may in any way adversely affect the insurance policies being maintained pursuant hereto or of any insurance claims. No insurance shall be subject to any co-insurance clause. You agree to provide Us with certificates or other evidence of insurance acceptable to Us, before the Term begins, and annually during the Term, and whenever there is a change in carrier or other change in the insurance required hereby. If at any time You fail to keep the Collateral properly insured in accordance with Our requirements or fail to deliver to Us a valid and acceptable certificate of insurance reflecting such insurance as being in effect, it will be deemed as a default hereunder.  Regardless of the existence of any applicable insurance, You agree to indemnify and hold Us, Our employees and affiliates harmless from all suits, claims, demands, losses, damages, judgments, obligations, actions, suits and all legal proceedings, and any and all costs and expenses in connection therewith, including, attorneys' fees, and liabilities arising out of, or in any manner connected with, or resulting directly or indirectly from the Collateral, including, without limitation, the manufacture, purchase, loan, financing, selection, ownership, delivery, rejection, non-delivery, transportation, possession, use, storage, operation, condition, maintenance, repair, return or other disposition of the Collateral or with this loan, including without limitation, claims for injury to or death of persons and for damage to property, whether arising under the doctrine of strict liability, by operation of law or otherwise, and to give Creditor prompt notice of any such claim or liability.  If You fail to keep the Collateral properly insured, then, in addition to the other remedies available hereunder, We have the right, but not the obligation, to obtain such insurance for the Term at Your expense and if so obtained, We will add to Your Installment Payments due hereunder and You will pay to Us Our costs of obtaining such insurance and any customary fees or charges of Ours or Our designees associated with such insurance. You also agree to pay an administrative fee equal to 10% of Your Installment Payment for each 30-day period during the Term the Collateral is uninsured or remains improperly insured. You understand that this fee will not be utilized to obtain insurance on Your behalf and any insurance We purchase as permitted hereby will benefit Us and not You and may be more expensive than insurance you could purchase by compliance with the terms hereof. Nothing in this CFA nor Our actions hereunder, including without limitation Our assessment of administrative fees or other amounts permitted hereby, shall mean that We are selling insurance or providing insurance coverage. The fees and other amounts payable hereunder do not necessarily reflect actual costs or exposures and may result in additional profit to Us. You may, upon not less than thirty (30) days express written notice to Us and delivery to Us of satisfactory insurance certificates or other satisfactory evidence of insurance complying with the terms of this CFA, terminate any insurance or related charges pursuant to this Section. Your obligations under this Section shall survive termination or expiration of this CFA.

**14. Taxes and Fees:**  You agree to pay when due or reimburse Us for all excise and other taxes, fees, fines, penalties and internal administrative costs relating to use or ownership of the Collateral or to this CFA, including but not limited to documentary stamp taxes, now or hereafter imposed, levied or assessed by any federal, state or local government or agency.  If any federal, state, county or local government or agency requires any taxes, charges or fees to be paid in advance, and We pay such taxes, charges or fees, We reserve the right to adjust the remaining payments, so that We may recover any payment of such taxes, charges or fees.  Any such adjustment shall be reflected on Your subsequent invoice(s). You agree to comply with all registration, filing, licensing and tax laws applicable to the Collateral and will be responsible for any fees or penalties for failure to do so on a timely basis.  Your obligations under this Section shall survive termination or expiration of this CFA.

**15. Default and Remedies:**  Each of the following, and any other events or circumstances herein provided to be a Default, is a "Default" under this CFA: (i) failure to pay when due any amount due under this CFA or any other amount due and owing by You to Creditor; (ii) Your breach or failure to perform any other covenants and promises under this CFA or any other agreement entered into by You with Creditor; (iii) the death of any individual Borrower, or partner of Borrower if Borrower is a partnership, or any Guarantor; (iv) Your failure to pay indebtedness when due to other lenders; (v) any attempt by You to sell, rent or lease the Collateral or any interest therein to anyone other than Us or a Co-Borrower named herein (and any such attempt shall be void); (vi) allowing anyone other than You to operate the Collateral; (vii) You or any Guarantor makes an assignment for the benefit of creditors, or becomes insolvent; (viii) You or any Guarantor threatens to cease or ceases to do business as a going concern, seeks any arrangement or compromise with creditors, dissolves, or takes any actions regarding the cessation or winding up of Your business affairs or the business affairs of any Guarantor; (ix) any representation or warranty made by You herein or in any document or certificate furnished by You to Us either directly or indirectly is incorrect in any material respect at any time; (x) You or any Guarantor files for bankruptcy or enters into any reorganization proceeding; (xi) any proceeding in bankruptcy, receivership, liquidation or insolvency is commenced against You or Your property or any Guarantor or their property; (xii) any Guarantor fails to pay or perform any obligation to Us, or fails to observe or perform any term, condition, covenant, representation or warranty contained in any agreement made by such Guarantor in favor of Us; and/or (xiii) We believe,

acting reasonably and in good faith, that the prospect of payment to Us under this CFA is impaired. Upon Default and at any time thereafter, at Our election, We may (a) accelerate the unpaid balance due hereunder, without protest, presentment, demand or notice (including but not limited to notice of intent to accelerate and notice of acceleration), all of which You waive, and require that You pay, as reasonable liquidated damages for loss of bargain, the "Accelerated Balance"; (b) require that You deliver to Us the Collateral; (c) repossess the Collateral or disable the Collateral without court order and You will not make any claims against Us for damages or trespass or any other reason; (d) sell the Collateral by public or private sale, retain the Collateral in full or partial satisfaction of Your obligations hereunder, or otherwise dispose of the Collateral in any manner We choose, free and clear of any of Your claims or rights; (e) sue to enforce Your performance hereof; (f) recover interest on the unpaid balance of Creditor's Loss plus any other amounts recoverable hereunder from the date it becomes payable until fully paid at the rate of the lesser of 12% per annum or the highest rate permitted by law; and/or (g) pursue any right or remedy available to Us at law, or in equity, including any rights or remedies under the UCC. The "Accelerated Balance" will be equal to the total of (x) all accrued and unpaid amounts then due and owing hereunder, and (y) the sum of the remaining Installment Payments scheduled to be paid hereunder discounted by the rate of 1.5% per annum, and (z) any recovery by Us in excess of unamortized Total Amount Financed (as defined above) constituting make-whole premium, compensation for loss of bargain and unamortized overhead and closing costs and other compensation and not a penalty as You expressly agree. In addition, You agree to pay Our reasonable attorneys' fees and actual costs including repossession, refurbishing the Collateral and collection costs, and all non-sufficient funds charges and similar charges, and You shall deliver the Collateral (at Your expense) to a location designated by Us. Each remedy shall be cumulative and in addition to any other remedy referred to above or otherwise available to Us at law or equity. No express or implied waiver of any default shall constitute a waiver of any of Our other rights. Our election to exercise any remedy available hereunder, at law or in equity, shall not prevent Us from exercising any other available remedy, whether concurrently or at a later time. Upon default and at any time thereafter, at Our election, We can accelerate, in accordance with applicable law, the entire unpaid balance due hereunder and require that You pay, as reasonable liquidated damages for loss of bargain, the "Accelerated Balance." The Accelerated Balance will be equal to the total of (i) all accrued and unpaid amounts then due and owing hereunder, and (ii) the sum of the remaining Payments scheduled to be paid hereunder discounted by 1 ½ percent, and will be immediately due and payable, without protest, presentment demand or notice (including but not limited to notice of intent to accelerate and notice of acceleration), all of which You waive. We can also pursue any of the remedies available to Us under the UCC or any other law. In addition, You agree to pay Our reasonable attorneys' fees and actual costs including repossession, refurbishing the Collateral and collection costs, and all non-sufficient funds charges and similar charges, and You shall deliver the Collateral (at Your expense) to a location designated by Us.

**Louisiana Default Remedies under Chapter 9 of Louisiana Law.** This subsection shall apply to any of the Collateral (including any Collateral proceeds) that, at any time, is or may be located in the State of Louisiana, or otherwise be subject to the application of Louisiana law in any respect (the "Louisiana Collateral"). Upon the occurrence of any event of default, We shall have the following rights and remedies with respect to the Louisiana Collateral, which rights and remedies are in addition to, and not in lieu or limitation of, any other rights and remedies that may be available to Us under this CFA, under Chapter 9 of the Louisiana Commercial Laws, under the laws in effect in any state other than Louisiana, or at law or equity generally. For purposes of foreclosure under Louisiana executory process procedures, You confess judgment and acknowledge to be indebted unto and in favor of Us up to the full amount of Your Liabilities plus interest, costs, expenses, attorney's fees, and other fees and charges. To the extent permitted under applicable Louisiana law, You additionally waive (a) the benefit of appraisal as provided in Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedure and all other laws with regard to appraisal upon judicial sale; (b) any right to receive demand for payment from the court prior to the court issuing a writ of seizure and sale; (c) the notice of seizures as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; and (d) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above. Should any of the Louisiana Collateral be seized as an incident to an action, You agree that the court issuing any such order shall, if requested by Us, appoint Us or any person or entity named by Us at the time such seizure is requested, or at any time thereafter, as keeper of the Louisiana Collateral as provided under La. R.S. §9:5136, et seq. You agree to pay the reasonable fees and expenses of such keeper, which compensation by the keeper shall also be a part of the secured Liabilities under this CFA.

**16. Late Charge:** If You fail to pay any sum due under this CFA within ten (10) days after its due date ("Late Payment"), You agree to pay Us a late charge (as reasonable liquidated damages and not as a penalty) equal to, the greater of $50.00 or 10% of the Late Payment not to exceed the maximum amount permitted by applicable law ("Late Charge"). If any check or funds transfer

request for any payment is returned to Us unpaid, You shall pay Us a service charge of $55 for each such returned check or request.

**17. Assignment and Inspection:** <u>YOU HAVE NO RIGHT TO SELL, TRANSFER, SUBLEASE, ASSIGN THIS CFA OR THE COLLATERAL OR TO GRANT A SECURITY INTEREST IN OR OTHERWISE ENCUMBER THE COLLATERAL OR THIS CFA.</u> We may sell, transfer, assign, or encumber this CFA or the related Collateral without notice or consent. You agree that if We sell, transfer, assign, or encumber this CFA or the related Collateral, the assignee will have the rights and benefits that We assign to the assignee and will not have to perform any of Our obligations. You agree that the rights of the assignee will not be subject to any claim, defense or set-off that You may have against Us. We and Our agents and representatives shall have the right at any time during regular business hours to inspect the Collateral and for that purpose to have access to the location of the Collateral without any claims for trespass or damages.

**18. Risk of Loss:** You hereby assume and shall bear the entire risk of loss, theft, damage and destruction of the Collateral from any cause whatsoever commencing upon the earlier of the delivery of the Collateral to You or the date We advance any portion of the Amount Financed hereunder and no loss, theft, damage or destruction of the Collateral shall relieve You of the obligation to make scheduled Installment Payments or any other obligation under this CFA, and this CFA shall remain in full force and effect except as provided herein. You shall notify Us in writing within five (5) days of any item of Collateral becoming lost, stolen or damaged and of the circumstances and extent of such damage. If damage of any kind occurs to any item of Collateral, You, at Our option, shall at Your expense (a) place the item in good repair, condition or working order, or (b) if, in Our opinion, the Collateral cannot be repaired or is lost, stolen, destroyed, rendered permanently unfit for use for any reason, or in the event of condemnation or seizure of an item of Collateral, pay to Us an amount equal to the sum of the following: (1) all amounts payable by You hereunder due but unpaid as of such date, plus (2) the amount of all remaining unpaid Installment Payments hereunder not yet due as of such date, discounted from the respective dates payments would be due at the Discount Rate as defined below. "Discount Rate" means (i) the rate set forth for the United States Treasury Bond or Note having the closest term to (but not longer than) the original term of this loan, as set forth in the Wall Street Journal, two (2) business days prior to the Commencement Date, (ii) the rate set forth for the United States Treasury Bond or Note having the closest term to (but not longer than) the remaining term of this CFA, as set forth in the Wall Street Journal, two (2) business days prior to the date of calculation of this amount, or (iii) 1.5%, whichever is lowest. If a rate referred to in the preceding clauses "(i)" or "(ii)" is not published in the Wall Street Journal, such rate shall be taken from a reputable source selected by Us.

**19. Borrower's Covenants.** (A) You shall not sell, transfer or assign any material portion of Your assets; allow a controlling interest in Borrower to be sold, transferred or assigned to any person(s) or entity(ies) other than those who hold a controlling interest as of the date hereof, whether by merger, sale or otherwise; allow a Blocked Person to have an ownership interest in or control of Borrower; enter into any merger or reorganization in which You are not the surviving entity; or unless You shall have given Us not less than thirty (30) days' prior written notice change (i) Your name or business address from that set forth above, and, if an individual, Your state of residence, (ii) the state under whose laws You are organized as of the date hereof, or (iii) the type of organization under which You exist as of the date hereof.

(B) Authorized Signer Covenant. The signer(s) who execute this CFA and any other ancillary documents are duly authorized by Borrower and should any signer(s) later be found to be unable to bind Borrower, said signer(s) shall be personally liable for any obligations incurred under the CFA and any ancillary documents, in addition to the liability of the Borrower.

(C) Co-Borrower Covenants. If there is more than one Borrower executing this CFA, each undersigned Borrower shall be designated as Borrower hereunder and all documents executed in connection herewith. Each Borrower agrees: (i) all obligations shall be joint and several and each Borrower shall be individually responsible for fulfilling all obligations of Borrower hereunder; (ii) any Default by any Borrower shall be a Default by each other Borrower; (iii) the mutual understanding reached by each Borrower in this regard is consideration for each Borrower's execution hereto; (iv) each Borrower will receive the benefit of the financing made hereunder and We would not otherwise enter into or provide financing under any Agreement without each Borrower's execution; and (v) We shall be entitled to pursue all rights and remedies hereunder against each Borrower upon any Default by any Borrower. All representations, covenants, agreements and obligations imposed on each Borrower shall be binding on each other Borrower and the act of any Borrower shall bind all other Borrowers and We shall be authorized to rely, without investigation, on the authority of any Borrower to give any notice, grant any consent and Our notice to one Borrower shall suffice as notice all Borrowers. Each Borrower's obligations shall not be affected by any action taken or not taken by Us against any other Borrower, Guarantor(s) or the Collateral for any reason whatsoever, including: (i) any action by any Borrower, (ii) any exercise or non-exercise of any right or remedy against any Borrower, (iii) any voluntary or involuntary bankruptcy, insolvency, reorganization or similar proceeding by any other Borrower.

**20. Consent to Jurisdiction and Venue:** You hereby consent to the jurisdiction of any local, state, or federal court located within the State of Illinois and waive any objection based on improper venue or forum non conveniens to the conduct of any action or proceeding in any such court. You further waive formal service of process and consent that all service of process may be made by mail or messenger directed to You at the address above and that service so made shall be deemed to be completed upon the earlier of actual receipt, or three (3) days after service of process addressed to You to at Your address set forth above is deposited in the mail or one (1) day after service of process is delivered to a messenger or overnight courier service for delivery to You. You acknowledge that you have an option to consult with counsel of your choice regarding this CFA and that it shall not be construed against either of us by reason of draftsmanship.

**21. Governing Law:** THIS CFA SHALL BE CONSTRUED IN ALL RESPECTS IN ACCORDANCE WITH AND GOVERNED BY THE INTERNAL LAWS (AS OPPOSED TO THE CONFLICTS OF LAW PROVISIONS) OF THE STATE OF ILLINOIS, EXCEPT THAT QUESTIONS AS TO PERFECTION OF OUR SECURITY INTEREST AND THE EFFECT OF PERFECTION OR NON-PERFECTION SHALL BE GOVERNED BY THE LAW WHICH WOULD BE APPLICABLE EXCEPT FOR THIS SECTION.

**22. Jury Waiver:** TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HERETO EACH WAIVE ANY RIGHT TO A TRIAL BY JURY ON ANY CLAIM, DEMAND, ACTION, CAUSE OF ACTION OR COUNTERCLAIM ARISING UNDER OR IN ANY WAY RELATED TO THIS CFA.

**23. Limitation of Remedies and Damages:** You agree that in the event there is any dispute relating to or arising in connection with this CFA, You shall not be entitled to indirect, special, punitive or consequential damages in connection with any action arising under or in any way related to this CFA.

**24. Notices:** The parties to this CFA agree that any notices shall be in writing and delivered personally or by U.S. mail, certified mail or overnight mail or by nationally-recognized courier service to Borrower's addresses as set forth above and to Creditor's address as set forth below the signature lines of this CFA, or at such other address designated by either party in writing.

**25. Miscellaneous:** You hereby acknowledge that You and any Guarantor have authorized the Vendor, Us or any of Our subsidiaries or affiliated companies, funding sources and Our successors, assignees and designees to investigate and share Your creditworthiness and credit capacity in connection with the establishment, maintenance and collection of Your account and to furnish information concerning Your account, including insurance information to credit reporting agencies, Our assignees and others who may lawfully receive such information. You agree, within forty-five (45) days after the end of each fiscal quarter other than the final fiscal quarter of each fiscal year, to deliver to Us a balance sheet and statement of income at the end of such quarter, each setting forth in comparative form the corresponding figures for the comparable period in the preceding fiscal year end, within one hundred and twenty (120) days after the end of each fiscal year, to deliver to Us a balance sheet as at the end of such year and statements of income and cash flows for such year, with accompanying notes to financial statements, each setting forth in comparative form the corresponding figures for the preceding year, in each case prepared in accordance with generally accepted accounting principles and practices consistently applied and certified by Your chief financial officer as fairly presenting Your financial position and results of operations, and, in the case of year-end financial statements, certified by an independent accounting firm acceptable to Us; and with reasonable promptness, furnish Us with such other information, financial or otherwise, relating to You or the Collateral as We shall reasonably request. You agree that no course of dealing or delay or failure to enforce Our rights under this CFA shall prevent Us from enforcing any of Our rights hereunder or under any addendums. If You fail to make any payment or take any action as and when required by law or by this CFA, We may do so in Your or Our name, without waiving any default, and You will reimburse Us on demand, together with interest at the lower of 18% or the highest amount permitted by law." You agree that the terms and conditions reflected in this CFA or any attachments hereto are a complete and exclusive statement of this CFA. Notwithstanding the foregoing, to the extent there are errors or omissions in the information contained in this CFA and/or any attachment to this CFA, We may by

written notice to You correct such errors or omissions. You agree that this CFA will be binding upon Your successors and assigns. You agree that Our waiver of any provision hereunder must be in writing and shall not constitute a waiver of any other matter. Any changes to the terms and conditions of this CFA must be in writing and agreed to and signed by Us. It is the express intent of the parties not to violate any applicable usury laws or to exceed the maximum amount of interest permitted to be charged or collected by applicable law, and any such excess payment will be applied to the payments in inverse order of maturity, and any remaining excess will be refunded to You. You authorize Us to contact You via Your home or business telephone number, e-mail, cell phone or fax number. Any provision or clause hereof or any remedy herein provided found to be invalid or unenforceable in any jurisdiction under any applicable law shall be inapplicable to the extent of such unenforceability or invalidity, but the remaining provisions hereof shall be given effect in accordance with the manifest intent hereof, and any such invalidity or unenforceability in any jurisdiction shall not render unenforceable or invalid such provision in any other jurisdiction. You will promptly execute and deliver to Us such further documents, take such further action and provide such information as We may request in order to carry out more effectively the intent and purpose of this CFA, and/or comply with laws or regulations applicable to Us, You, and/or the transaction evidenced by this CFA, including information identifying the owners of Borrower and its affiliates and their respective ownership interests. At any time, We and any assignee of Ours is authorized to file one or more UCC financing statements without Your signature.

**26. Irrevocable Limited Power of Attorney:** You hereby irrevocably appoint Us and/or our successors and assigns Your true and lawful Attorney-in-Fact coupled with an interest with full authority and power to do and perform all and every act and thing whatsoever requisite and necessary to be done, as fully, to all intents and purposes as You might or could do if personally present, with full power of substitution and revocation, to complete, sign, execute, any instrument related to a loss settlement, any insurance check or apply insurance proceeds, Collateral registration or certificate of ownership, recording of liens, fixture filings, UCC financing statement(s), and to sell, record interest, transfer or otherwise dispose of the Collateral, whether in bulk or in parcels, whether or not the Collateral is present at such sale and with or without notice, at a public or private sale. We and/or Our assigns may apply the proceeds from any such sale or other disposition against any and all of Your obligations to Us and/or Our assigns. If Your signature on any financing statement or other instruments is required by law, You shall execute such supplemental instruments and financing statements We deem to be necessary and advisable and shall otherwise cooperate to defend Our interest in the Collateral by filing or otherwise. You also agree to pay Us on demand filing, registration and releasing fees described by the UCC or other law. Further, to the extent insurance premium(s) is/are financed hereunder, and in the event of a default under this CFA, You irrevocably appoint Us as Attorney-in-Fact, with full authority to (a) cancel any insurance policy(ies) in accordance with the provisions herein, (b) receive all refunds, rebates or sums due under said policy(ies), and (c) execute and deliver on Your behalf all documents, forms and notices relating to the insurance policy(ies) hereunder.

**27. Electronic Payment:** By completing the information below, You hereby authorize and request Us to initiate scheduled or periodic electronic fund transfer debits (and credit entries and adjustments for any debit entries in error) and authorize the financial institution identified below to honor the debit and/or credit entries initiated by Us for indebtedness due and owing Us including but not limited to: Installment Payments and any other open charges such as progress pay interest charges, interim charges, late charges, fees, non-sufficient funds charges, insurance charges, or any charges related to title or taxes due and owing under this CFA, Progress Payment Agreement or any other agreement with Us. This authority is to remain in force until such time as all amounts due are paid in full or until We and Your financial institution have received written notification from You terminating this authorization in such time and manner as to afford Us and Your financial institution a reasonable opportunity to act on it. You agree that Your bank account information may be disclosed, and authorization assigned pursuant to Section 17 herein.

---

**If the box is checked, You are required to make Your payments via Electronic Payment as a condition of this CFA.**
**PLEASE PROVIDE US WITH YOUR BANK OR SAVINGS INSTITUTION'S INFORMATION REQUESTED BELOW OR ATTACH A VOIDED CHECK.**

| | | |
|---|---|---|
| | ☐ Business Account | ☐ Checking Account |
| Name of Account Holder: | ☐ Personal Account | ☐ Savings Account |
| Bank Name and Branch: | Account Number: | |
| Address (city & state): | | |
| Telephone Number: | Routing Number: | |

95011 \[ ]3218 (05/03/21 -- 435749) #243217
(CMT-00237) Equip - CFA-(Rev 04.20)

 I am a current customer of Creditor and have bank information currently on file.  By checking the box, You hereby authorize and request Creditor to utilize Your bank information on file to process Your payment electronically pursuant to Section 27 above.

**28. ELECTRONIC SIGNATURE:** Creditor and Borrower may elect to execute this CFA via electronic signature. If this CFA is executed via electronic signature, <u>You and We agree that the electronic version of this CFA which has been authenticated by You and Us in accordance with applicable law and controlled by Us (or our assignee) shall (pursuant to the rules and regulations of DocuSign, Inc. and eOriginal, Inc.) constitute the original authoritative version of this CFA; provided that if the "Paper Out" process shall have occurred pursuant to the eOriginal Product Reference Guide, and there shall simultaneously exist both the "Paper Out" printed version and an electronic version of this CFA, then the "Paper Out" printed version of this CFA as identified in the eOriginal audit record and corresponding affidavit shall constitute the sole authoritative version.</u> You also agree that by typing Your name in the boxes indicated below or any other electronic method of affixing Your signature, either in Your individual capacity or as an authorized representative of the Borrower, You are confirming that You are the person so indicated in the box below, and that You are providing Your electronic signature on this CFA.  Your electronic signature shall evidence Your agreement to be bound by and authenticate this electronic record and attest to the statements contained in this CFA with the same effect as if You had manually signed this CFA.  This CFA and any related electronic documents are electronic records that may be transferred, authenticated, stored and transmitted by electronic means.  You agree to keep any security code or password secured and will not inappropriately disclose this information to others.  You also confirm that all documentation related to this transaction delivered or executed using Your email address, login, security code and/or password are true and correct.

**YOU ACKNOWLEDGE THAT YOU HAVE READ AND ACCEPT THE TERMS OF THIS CFA, AMENDMENT, EXHIBIT, RIDER, AND SCHEDULE. FURTHER, YOU ACKNOWLEDGE THAT UPON YOUR RECEIPT OF THE COLLATERAL YOU WILL SIGN A SEPARATE DELIVERY AND ACCEPTANCE AT WHICH TIME WE MAY PAY THE VENDOR FOR SAID COLLATERAL AND ACCEPT THIS CFA.  THIS CFA SHALL NOT BE A VALID CONTRACT UNTIL ACCEPTED BY CREDITOR.  BORROWER(S) HEREBY WAIVES NOTICE BY CREDITOR OF ITS ACCEPTANCE OF THIS CFA.  PLEASE RETAIN A COPY OF THIS CFA FOR YOUR RECORDS.**

BORROWER:   SCV GRAPHIC PRODUCTIONS, INC. dba DANGLING CARROT CREATIVE

[PLEASE SIGN USING BLUE INK]                    (REQUIRED – PLEASE UPDATE INFO IS DIFFERENT THAN ABOVE)

| | |
|---|---|
| Signature:  X | Cell Phone:  661- 510-7571 |
| Name:  SCOTT A NINER | Email Address:  scott1@danglingcarrotcreative.com |
| Title:  PRESIDENT | Billing Address:  27520 Ave Mentry, Valencia, Ca. 91355 |

AGREED TO AND ACCEPTED BY:  ENGS COMMERCIAL FINANCE CO. ("CREDITOR")

By:

**Rose Reynolds**

**Sr. Vice President - Operations**          **(CS)**

Address for Notice:
P.O. Box 128
Itasca, IL 60143-0128

Checked in by:

# EXHIBIT D

U210043461633



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT (UCC 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| --- |
| **-FILED-** |
| File #: U210043461633 |
| Date Filed: 5/3/2021 |

B0391-4270 05/03/2021 2:51 PM Received by California Secretary of State

Submitter Information:

| | |
| --- | --- |
| Contact Name | WOLTERS KLUWER LIEN SOLUTIONS |
| Organization Name | LIEN SOLUTIONS |
| Phone Number | 800-331-3282 |
| Email Address | uccfilingreturn@wolterskluwer.com |
| Address | P.O. BOX 29071 GLENDALE, CA 912099071 |

Debtor Information:

| Debtor Name | Mailing Address |
| --- | --- |
| SCV GRAPHIC PRODUCTIONS, INC. | 27520 AVENUE MENTRY VALENCIA, CA 91355 |

Secured Party Information:

| Secured Party Name | Mailing Address |
| --- | --- |
| ENGS COMMERCIAL FINANCE CO. | P.O. BOX 128 ITASCA, IL 601430128 |

Indicate how documentation of Collateral is provided:
Entered as Text

Description
THE FOLLOWING DESCRIBED PERSONAL PROPERTY, INCLUDING ALL ADDITIONS, REPLACEMENTS, ACCESSIONS, ACCESSORIES, ATTACHMENTS, SUBSTITUTIONS, EXCHANGES, IMPROVEMENTS, PARTS, REPLACEMENT PARTS, MANUALS AND REFERENCE BOOKS, SUPPLEMENTS, UPGRADES, THERETO AND THEREOF, HOWEVER DESIGNATED TOGETHER WITH ANY RELATED SOFTWARE LICENSE(S), SOFTWARE, AS MAY BE MODIFIED, CORRECTED, SUPPLEMENTED OR ENHANCED FROM TIME TO TIME, AND THE PROCEEDS RELATING THERETO (INCLUDING BUT NOT LIMITED TO CASH, INSURANCE PAYMENTS AND PROCEEDS, ETC.): 1 - EFI - VUTEK 5R+ SUPER WIDE ROLL TO ROLL - LED PRINTER

Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:
Not Applicable

Select an alternate Financing Statement type:

Select an additional alternate Financing Statement type:

Select an alternative Debtor/Secured Party designation for this Financing Statement:

Optional Filer Reference Information:
80292288

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION**

IN THE MATTER OF:                                         BANKRUPTCY NO. 25-10613-pmb

SCV GRAPHIC PRODUCTIONS, INC.

      Debtor,                                                    CHAPTER 11

Mitsubishi HC Capital
America, Inc.,

      Movant,

v.                                                                    **CONTESTED MATTER**

SCV Graphic Productions, Inc. (Debtor),
      Respondent(s).

## NOTICE OF HEARING

      **PLEASE TAKE NOTICE** that MITSUBISHI HC CAPITAL AMERICA, INC. has filed a Motion for Relief from the Automatic Stay seeking (the "Motion") and related papers with the Court seeking an order providing it relief from the automatic stay so that it may pursue its *in rem* rights and remedies including, without limitation, the right to repossess and sell the Equipment.

      **PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the **Motion for Relief from Automatic Stay on June 18, 2025, at 10:00 AM, Lewis B. Morgan Federal Building & U.S. Courthouse, 18 Greenville Street, Newnan, GA 30263,** which may be attended in person or via the Court's Virtual Hearing Room.  You may join the Virtual Hearing Room through the "Dial-In and Virtual Bankruptcy Hearing Information" link at the top of the homepage of the Court's website, www.ganb.uscourts.gov, or the link on the judge's webpage, which can also be found on the Court's website. Please also review the "Hearing Information" tab on the judge's webpage for further information about the hearing. You should be prepared to appear at the hearing via video, but you may leave your camera in the off position until the Court instructs otherwise. Unrepresented persons who do not have video capability may use the telephone dial-in information on the judge's webpage.

      Your rights may be affected by the court's ruling on these pleadings.  You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one).  If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing.  You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so.  If you file

#103981507v1

a written response, you must attach a certificate stating when, how and on whom (including address) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is: Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, S.W., Atlanta, Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

*If a hearing on the Motion cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the Motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.*

Dated: June 2, 2025                     Respectfully submitted,


                                        Mitsubishi HC Capital America, Inc.

                                        By Its Attorneys,
                                        JONES WALKER LLP

                                        */s/ Stephen P. Drobny*
                                        Stephen P. Drobny
                                        Georgia Bar No. 430447
                                        JONES WALKER LLP
                                        Suite 1400
                                        3455 Peachtree Rd NE
                                        Atlanta, GA 30326
                                        Telephone (404) 870-7500
                                        Telecopy (404) 870-7501
                                        Email sdrobny@joneswalker.com


## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of June, 2025, I electronically filed the foregoing Motion for Relief from Stay and Notice of Hearing using the Bankruptcy Court's Electronic Case Filing Program, which sends a notice of this document and an accompanying link to this document to the following parties, who have appeared in this case under the Bankruptcy Court's Electronic Case Filing Program:

Jonathan S. Adams on behalf of U.S. Trustee United States Trustee
jonathan.s.adams@usdoj.gov

#103981507v1

Jonathan D Clements on behalf of Debtor SCV Graphic Productions, Inc.
jclements@kecklegal.com

Stephen P. Drobny on behalf of Creditor Mitsubishi HC Capital America, Inc.
sdrobny@joneswalker.com, nkatsaras@joneswalker.com;miamiservice@joneswalker.com

Benjamin R Keck on behalf of Debtor SCV Graphic Productions, Inc.
bkeck@kecklegal.com,
2411851420@filings.docketbird.com,9222034420@filings.docketbird.com

Lee Bynum Perkins on behalf of Creditor Paint Unlimited, Inc.
law@leeperkins.com

Kelly E. Waits on behalf of Creditor Banc of America Leasing & Capital LLC
kwaits@burr.com, ngolay@burr.com

     I further certify that on this day I caused a copy of this document to be served via first

class mail, with adequate postage prepaid, on the following parties at the address shown for each.

SCV Graphic Productions, Inc.
27520 Avenue Mentry
Valencia, CA 91355

                    */s/ Stephen P. Drobny*
                    Stephen P. Drobny
                    Georgia Bar No. 430447
                    JONES WALKER LLP
                    Suite 1400
                    3455 Peachtree Rd NE
                    Atlanta, GA  30326
                    Telephone  (404) 870-7500
                    Telecopy  (404) 870-7501
                    Email  sdrobny@joneswalker.com

#103981507v1