## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | |
|---|---|
| **In re:** | **CASE NO. 25-10613-PMB** |
| **SCV GRAPHIC PRODUCTIONS, INC.** | **CHAPTER 11** |
| **Debtor.** | |

### DEBTOR'S MOTION FOR AUTHORITY TO SELL CERTAIN
### EQUIPMENT PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE

SCV Graphic Productions, Inc., (the "**Debtor**") files this Motion for Authority to Sell Certain Equipment Pursuant to Section 363 of the Bankruptcy Code (the "**Motion**"). In support of the Motion, the Debtor respectfully shows the Court as follows:

#### BACKGROUND

1.      On April 28, 2025 ("**Petition Date**"), the Debtor filed a petition for relief under Chapter 11 of Title 11, United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"). Since the filing, the Debtor has continued in possession of its property and has operated and managed its affairs as a debtor-in-possession pursuant to the provisions of Sections 1184 and 1186(b) of the Bankruptcy Code, and no trustee, examiner, or committee has been appointed.

2.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtor consents to the entry of final orders or judgments by the Bankruptcy Court.

3.      The Debtor is a graphic design and production company operating since 2007, with locations in metropolitan Atlanta, Georgia and metropolitan Los Angeles, California. Historically, the company primarily operated in the entertainment industry, however more recently they have

tapped into a new market and is experiencing success designing and producing graphics and sculptures for retail operations and amusement theme parks.

4.    After analysis of the Debtor's operations, the Debtor has determined in its business judgment that a downsizing of its operations is appropriate and will result in significant cost savings for the Debtor's estate. In support of this the Debtor is winding down its Georgia operations.

5.    Accordingly, the Debtor seeks authority to sell certain equipment (the "**Equipment**"), as identified in the Proposed Asset Purchase Agreement attached as **Exhibit A**, which indicates the year, and model as applicable, of the assets being sold.

6.    The Debtor's representative and counsel have explored various options for selling the Equipment and have been in discussions several potential purchasers. The Debtor has determined that the most efficient way to sell the Equipment is in a "package deal" whereby the Debtor sells all of the Equipment located in its Georgia location.

7.    The Debtor has attached an offer letter (the "**Offer**") it received for the purchase of the Equipment hereto as **Exhibit B**. The Debtor requests the authority to sell the Equipment for an amount equal to or greater than the amount reflected in the Offer.

8.    The Debtor submits that the price reflected in the Offer (the "**Proposed Purchase Price**") reflects a fair market value based on an appraisal of the Equipment. Notwithstanding that appraisal, if the Debtor has an opportunity to sell any of the Equipment for more than the Proposed Purchase Price, it will make every effort to do so.

9.    Upon the sale of any of the Equipment, the Debtor proposes to hold the proceeds in escrow pending further order of the Court.  To the extent that the Equipment is subject to security interests or liens the proceeds will be used to satisfy those claims.

-2-

10.     Following any such sale(s), the Debtor will file a report of sale with the Court identifying the buyer and the amount received in exchange for any given Equipment.

### RELIEF REQUESTED AND BASIS FOR RELIEF

11.     By this Motion, the Debtor seeks entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit C**, pursuant to Section 363 of the Bankruptcy Code, authorizing the Debtor to sell each of the Equipment for not less than the Proposed Purchase Price and to hold those funds in escrow pending further order of this Court.

12.     Section 363(b) of the Bankruptcy Code provides that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).

13.     Courts have uniformly held that approval of a proposed sale of property pursuant to section 363 of the Bankruptcy Code is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the debtor. *See e.g., Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *In re Channel One Comm., Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990).

14.     A debtor's showing of sound business judgment need not be unduly exhaustive, rather a debtor is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). The business judgment rule shields a debtor's management from judicial second-guessing. *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a Debtor's management decisions.").

15.     Once the debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company.'" *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

16.     The Debtor has determined that the sale of the Equipment is in the best interests of its estate. The Debtor submits that eliminating the costs of maintenance and storage on this property will improve cash flow by reducing the Debtor's obligations on these assets, as well as generate additional working capital via receipt of the sale proceeds. Further, the Debtor submits that the Proposed Purchase Price proposed for these assets are within the range of reasonableness of the fair market value of the assets considering their respective conditions.

17.     Section 363(f) of the Bankruptcy Code authorizes a debtor-in-possession to sell property under Section 363(b) free and clear of any interest in such property if, among other things: (i) the price at which the property is to be sold is greater than the aggregate of the liens on such property; (ii) the interests are subject to a bona fide dispute; (iii) the entities asserting liens on the property consent to its sale; or (iv) the entities asserting liens on the Property could be compelled in a legal or equitable proceeding to accept a money satisfaction of their interests. 11 U.S.C. § 363(f).

18.     To the extent the Equipment is subject to security interests or liens, the Debtor seeks permission to sell such asset under section 363(f) of the Bankruptcy Code to one or more buyers for fair market value. The Debtor submits that the entities asserting liens on these assets either (a) will consent to their sale; or (b) could be compelled in a legal or equitable proceeding to accept a money satisfaction of their interests. Following any such sale(s), the Debtor will file a report of

-4-

sale with the Court identifying the buyer and the amount received in exchange for each asset. The Debtor proposes that, consistent with section 363(f) of the Bankruptcy Code, any lien or security interest on or in any such assets would attach to the sale proceeds received for any such assets.

19.    The purchaser of the Equipment should be entitled to the protections set forth in Section 363(m) of the Bankruptcy Code. Pursuant to Section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, Case No. 03-51524, 2007 WL 1428477, *2 (Bankr. D.N.J. May 11, 2007); *Abbotts Dairies of Penn.*, 788 F.2d at 147.

20.    The Sale has been proposed in good faith, free of any fraud or misconduct and for value and without knowledge of any adverse claim. *See Miami Ctr. L.P. v. Bank of N.Y.*, 838 B.R. 1547, 1554 (11th Cir. 1988). The Debtor submits that the effort to market and sell the Equipment as set forth herein will result in the highest and best offer for the Equipment. Accordingly, the Debtor would request that any order approving the sale include a provision that any purchaser is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code.

21.    Section 105(a) of the Bankruptcy Code further provides, in pertinent part, that a "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

22.    Distributions to secured creditors from the proceeds of the sale should be solely on account of such creditor's allowed secured claim, as determined under 11 U.S.C. § 506(a), and only to the extent of the value of such creditor's interest in the Equipment.

23.     The Debtor expressly reserves and does not waive its right to surcharge the Equipment and the proceeds thereof, to the extent it secures an allowed secured claim, for reasonable, necessary costs of preserving or disposing of the property to the extent of any benefit to the holders of such secured claims under 11 U.S.C. § 506(c).

24.     Federal Rule of Bankruptcy Procedure 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of fourteen (14) days after an entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). The Debtor requests that the Court waive that stay so that the Debtor may proceed as expeditiously as possible with the closing of the any sale(s) following court approval of this Motion.

CONCLUSION

**WHEREFORE**, the Debtor prays that this Court grant it (i) authority to sell the Equipment under section 363 of the Bankruptcy Code; and (ii) such other relief as is just and proper.


Dated: January 22, 2026                    Respectfully Submitted,

                                           **KECK LEGAL, LLC**

                                           */s/ Jonathan Clements*
                                           Benjamin R. Keck, Ga. Bar No. 943504
                                           Jonathan Clements, Ga. Bar No. 130051
                                           2801 Buford Highway NE, Suite 115
                                           Atlanta, GA 30329
                                           Tel. (470) 826-6020
                                           bkeck@kecklegal.com
                                           jclements@kecklegal.com
                                           ***Counsel for the Debtor***

## Exhibit A

**Proposed Asset Purchase Agreement**

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (this "**Agreement**"), dated as of January___, 2026, by and among 360 CREATIVE SOLUTIONS GROUP, LLC, a Georgia limited liability company(the "**Buyer**"), on the one hand, AND SCV GRAPHIC PRODUCTIONS, INC, a California corporation (the "**Seller**"), on the other hand. Buyer and Seller are referred to herein individually as a "**Party**" and collectively as the "**Parties**.".

## RECITALS

WHEREAS, on April 28, 2025 (the "**Petition Date**") Seller filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Northern District of Georgia, Newnan Division (the "**Bankruptcy Court**"), as *In re* SCV Graphic Productions, Inc*., et al.*, case number 25-10613-PMB (the "**Bankruptcy Case**"); and

WHEREAS, Buyer desires to purchase the Purchased Assets from Seller, and Seller desires to sell, assign, and transfer to Buyer the Purchased Assets, in a sale authorized by the Bankruptcy Court pursuant to, *inter alia*, sections 105, 363, and 365 of the Bankruptcy Code, all on the terms and subject to the conditions set forth in this Agreement subject to entry of an order by the Bankruptcy Court approving this Agreement and the transactions contemplated hereby (the "**Sale Order**").

NOW, THEREFORE, in consideration of the foregoing and the mutual representations, warranties, covenants, and agreements set forth herein, and intending to be legally bound hereby, Buyer and Seller hereby agree as follows.

## ARTICLE I

## PURCHASE AND SALE OF THE PURCHASED ASSETS

<u>Purchase and Sale of the Purchased Assets</u>. On the terms and subject to the conditions set forth herein and in the Sale Order, at the Closing, Seller shall sell, assign, and transfer to Buyer, and Buyer shall purchase, acquire, and accept from Seller, all of Seller's right, title and interest as of the Closing in and to the Purchased Assets (defined below), to the extent transferable, free and clear of all claims, liens, and encumbrances. The "**Purchased Assets**" include the following:

(a)    One (1) 2021 EFI VUTEK 5R+ with the Serial # 8820219; One (1) 2019 Kongsberg C64Sc with the Serial# 859706, One (1) Agfa Mira LED with the Serial # 10355386, One (1) Titan HS with the Serial# 10359290, and all Hotwire(s), Robotic Arm(s) and, 3D Printer(s) located at the Seller's current facility in Fayetteville, Georgia at 500 Sandy Creek Road, Building 2005, Fayetteville, GA 30214.

(b)    except for the Excluded Assets set forth in <u>Annex A</u> hereto, all other assets of Seller and all proceeds of the foregoing.

1.2    <u>Excluded Assets</u>. Notwithstanding the foregoing or any other provision of this Agreement to the contrary, the Purchased Assets shall not include the items specified by Seller

and agreed to by Buyer as set forth on <u>Annex A</u> hereto (the "**Excluded Assets**"). Seller is not conveying, assigning, or delivering to Buyer, and Buyer is not purchasing, acquiring, or accepting from Seller, any Excluded Assets.

   <u>No Assumption of Liabilities</u>. Buyer shall not be liable with respect to any claims, liens, or encumbrances on or related to any of the Purchased Assets.

## ARTICLE II

## CONSIDERATION; PAYMENT; CLOSING

   (a)   <u>Consideration</u>.  The aggregate consideration to be paid by Buyer for the purchase of the Purchased Assets (the "**Purchase Price**") shall be one hundred eighty thousand dollars and no cents (**$180,000.00**).

   2.2   <u>Deposit.</u> At the time of execution of this Agreement, Buyer shall make an earnest money deposit of ten thousand dollars and no cents (**$10,000.00**), which shall be paid to and held in trust by Seller's bankruptcy counsel, Keck Legal, LLC (the "**Escrow Agent**").

   <u>Closing Date Payment</u>. At the Closing, Buyer shall deliver, or cause to be delivered, to Seller an amount equal to the Purchase Price *less* the Deposit (the "**Closing Date Payment**"), which such payment shall be made in cash by wire transfer of immediately available funds to such bank account as shall be designated by Seller.

   <u>Closing</u>. The closing of the purchase and sale of the Purchased Assets, the delivery of the Closing Date Payment, and the consummation of the other transactions contemplated by this Agreement (the "**Closing**") will take place by telephone conference and electronic exchange of documents at a time and on a date mutually agreed upon by Seller and Buyer (the "**Closing Date**"), but in any event no later than the later of (a) _____, 2026 or (b) five business days from the date on which Bankruptcy Court enters the Sale Order (the "**Outside Date**"), subject to the conditions to closing set forth below.

   <u>Closing Deliveries by Seller</u>. At or prior to the Closing, Seller shall deliver to Buyer (a) a bill of sale duly executed by Seller; (b) titles to any Purchased Asset(s) for which a title is legally required; and (c) a copy of the Sale Order, as entered by the Bankruptcy Court.

   <u>Closing Deliveries by Buyer</u>. At the Closing, Buyer shall deliver to Seller the Closing Date Payment.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES OF SELLER

   Except as disclosed in any forms, statements or other documents filed with the Bankruptcy Court, Seller represents and warrants to Buyer as follows:

   <u>Organization and Qualification</u>. Seller (a) is an entity duly incorporated or organized, validly existing, and in good standing under the laws of the jurisdiction of its incorporation or

2

organization, as applicable, (b) has all requisite power and authority to own and operate its properties and to carry on its businesses as now conducted, subject to the provisions of the Bankruptcy Code, and (c) is qualified to do business and is in good standing in every jurisdiction in which its ownership of property or the conduct of its business as now conducted requires it to qualify.

Authorization of Agreement. Seller has all requisite power and authority to execute and deliver this Agreement, to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby in accordance with the provisions of the Bankruptcy Code, subject to approval by the Bankruptcy Court. All acts or proceedings required to be taken by Seller to authorize the execution and delivery of this Agreement and the performance of Seller's obligations hereunder have been properly taken and will be taken as authorized by the Bankruptcy Court in accordance with the Sale Order.

Title to Purchased Assets. Seller has sufficient right, title, and interest in the Purchased Assets to transfer the same pursuant to section 363 of the Bankruptcy Code, subject to liens, claims, and encumbrances to be addressed by the Sale Order

No Other Representations or Warranties. Except for the representations and warranties expressly contained in this Article, Buyer acknowledges and agrees that neither Seller nor any other person on behalf of Seller makes, and Buyer has not relied on, the accuracy or completeness of any express or implied representation or warranty with respect to Seller or the Purchased Assets.

## ARTICLE IV

## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller as follows as of the date hereof.

Organization and Qualification. Buyer (a) is an entity duly incorporated or organized, validly existing and in good standing under the laws of the jurisdiction of its incorporation or organization, as applicable, (b) has all requisite power and authority to own and operate its properties and to carry on its businesses as now conducted, and (c) is qualified to do business and is in good standing in every jurisdiction in which its ownership of property or the conduct of its business as now conducted requires it to qualify.

Authorization of Agreement. The execution, delivery, and performance of this Agreement by Buyer, and the consummation by Buyer of the transactions contemplated hereby, have been duly and validly authorized by all requisite corporate or similar organizational action, and no other corporate or similar organizational proceedings on its part are necessary to authorize the execution, delivery, or performance of this Agreement by Buyer. This Agreement has been duly and validly executed and delivered by Buyer, and, assuming this Agreement is a valid and binding obligation of Seller, this Agreement constitutes a valid and binding obligation of Buyer, enforceable against Buyer in accordance with its terms.

Funding. Buyer has, or will have prior to the Closing Date, sufficient funds in an aggregate amount necessary to pay the Closing Date Payment and to consummate all of the other transactions contemplated by this Agreement. In no event shall the receipt or availability of any funds or

3

financing by Buyer or any other financing or other transactions be a condition to Buyer's obligations hereunder.

No Other Representations or Warranties. Except for the representations and warranties expressly contained in this Article, Seller acknowledges and agrees that neither Buyer nor any other person on behalf of Buyer makes, and Seller has not relied on, the accuracy or completeness of any express or implied representation or warranty with respect to Buyer.

## ARTICLE V

## BANKRUPTCY COURT MATTERS

Bankruptcy Actions.

(a)    Buyer shall promptly take all actions as are reasonably requested by Seller to assist in obtaining the Bankruptcy Court's entry of the Sale Order as promptly as practicable, including furnishing affidavits, financial information, or other documents or information for filing with the Bankruptcy Court and making such employees and representatives of Buyer available to testify before the Bankruptcy Court for the purposes of, among other things providing necessary assurances of performance by Buyer under this Agreement and demonstrating that Buyer is a "good faith" purchaser under section 363(m) of the Bankruptcy Code.

(b)    Each of Seller and Buyer shall (i) appear formally or informally in the Bankruptcy Court if reasonably requested by the other Party or required by the Bankruptcy Court in connection with the transactions contemplated by this Agreement and (ii) keep the other Party reasonably apprised of the status of material matters related to the transactions contemplated by this Agreement.

(c)    Seller's obligations under this Agreement and in connection with the transactions contemplated hereby and thereby are subject to entry of and, to the extent entered, the Sale Order. Nothing in this Agreement shall require Seller to give testimony to or submit a motion to the Bankruptcy Court that is untruthful or to violate any duty of candor or other fiduciary duty to Seller's creditors or the Bankruptcy Court.

Sale Order. The Sale Order shall, among other things, (a) approve, pursuant to sections 105, 363, and 365 of the Bankruptcy Code, (i) the execution, delivery, and performance by Seller of this Agreement, (ii) the sale of the Purchased Assets to Buyer on the terms set forth herein and free and clear of all claims, liens, and encumbrances, and (iii) the performance by Seller of its obligations under this Agreement; and (b) find that Buyer is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code not a successor to Seller, and grant Buyer the protections of section 363(m) of the Bankruptcy Code.

## ARTICLE VI

## COVENANTS AND AGREEMENTS

Conduct of Seller. Until the earlier of the termination of this Agreement and the Closing, except (a) for any limitations on operations imposed by the Bankruptcy Court or the Bankruptcy Code,

4

(b) as required by applicable law, (c) as otherwise required by or reasonably necessary to carry out the terms of this Agreement, or (d) with the prior written consent of Buyer (which consent shall not be unreasonably withheld), Seller shall not:

> (a)    sell, assign, license, transfer, convey, lease, surrender, relinquish, or otherwise dispose of any of the Purchased Assets;

> (b)    subject any of the Purchased Assets to any new encumbrance; or

> (c)    agree or commit to do any of the foregoing.

Reasonable Best Efforts; Cooperation.

> (a)    Subject to the other terms of this Agreement provisions hereof, each Party shall use its reasonable best efforts to perform its obligations hereunder and to take, or cause to be taken, and do, or cause to be done, all things necessary, proper or advisable under applicable law to cause the transactions contemplated herein to be effected as soon as practicable, in accordance with the terms hereof and to cooperate with each other Party in connection with any step required to be taken as a part of its obligations hereunder.

> (b)    The obligations of Seller under this shall be subject to any approvals or authorizations required from the Bankruptcy Court pursuant to the Bankruptcy Code and Seller's obligations as a debtor-in-possession to comply with any order of the Bankruptcy Court and Seller's duty under the Bankruptcy Code to seek and obtain the highest or otherwise best price for the Purchased Assets and potentially consummate a transaction for the sale of the Purchased Assets with another party, which in Seller's business judgment would   maximize the value of its bankruptcy estate (an "**Alternative Transaction**").

Insurance Matters. Except as set forth below, Buyer acknowledges that, upon Closing, all insurance coverage provided in relation to the Purchased Assets that is maintained by Seller shall cease to provide any coverage with respect to the Purchased Assets and no further coverage shall be available to Buyer or the Purchased Assets under any such policies.

6.4    Employees and Offers of Employment.

> (a)    Buyer may, in its sole discretion, offer employment to certain employees of Seller, and Seller shall cooperate with Buyer in connection with such offers of employment.

> (b)    Nothing herein shall be construed to require Buyer to hire any employee of Seller, and the hiring of any employees shall not be a term or condition of this Agreement.

> (c)    Seller shall retain liability for, and Buyer shall not acquire or assume, any liability, claim, or litigation related to any employee or any employment, benefit, or related matters of Seller.

## ARTICLE VII

## CONDITIONS TO CLOSING

Conditions Precedent to the Obligations of Buyer and Seller. The respective obligations of each Party to this Agreement to consummate the transactions contemplated by this Agreement are subject to the satisfaction (or written waiver by each of Seller and Buyer) on or prior to the Closing Date, of each of the following conditions:

(a)    No court or other governmental body has issued, enacted, entered, promulgated, or enforced any law or order restraining, enjoining, or otherwise prohibiting the transactions contemplated by this Agreement; and

(b)    The Bankruptcy Court shall have entered the Sale Order. Buyer and Seller acknowledge that Seller has filed the Bankruptcy Case with the Bankruptcy Court and that the closing of the transactions contemplated herein shall be contingent upon the Bankruptcy Court's approval of this Agreement.

Conditions Precedent to the Obligations of Buyer. The obligations of Buyer to consummate the transactions contemplated by this Agreement are subject to the satisfaction (or written waiver by Buyer in its sole discretion), on or prior to the Closing Date, of each of the following conditions:

(a)    The representations and warranties made by Seller in Article III shall be true and correct as of the Closing Date, as though such representations and warranties had been made on and as of the Closing Date, except where the failure of such representations and warranties to be true and correct would not reasonably be expected to have a material adverse effect;

(b)    Seller shall have performed in all material respects all of the covenants and agreements required to be performed by Seller under this Agreement at or prior to the Closing; and

(c)    Seller shall have delivered, or caused to be delivered, to Buyer all of Seller deliverables set forth in Section 2.5.

Conditions Precedent to the Obligations of Seller. The obligations of Seller to consummate the transactions contemplated by this Agreement are subject to the satisfaction (or written waiver by Seller in its sole discretion), on or prior to the Closing Date, of each of the following conditions:

(a)    The representations and warranties made by Buyer in Article IV shall be true and correct in all material respects as of the Closing Date, except where the failure of such representations or warranties to be so true and correct would not reasonably be expected to have a material adverse effect on Buyer's ability to consummate the transactions contemplated hereby;

(b)    Buyer shall have performed in all material respects all of the covenants and agreements required to be performed by it under this Agreement at or prior to the Closing;

(c)    Buyer shall have delivered, or caused to be delivered, to Seller all of Buyer deliverables set forth in Section 2.6; and

(d)      Seller has not determined that its exercise of its fiduciary duties under the Bankruptcy Code require the Seller to pursue an Alternative Transaction.

Waiver of Conditions. Except in the case of fraud, upon the occurrence of the Closing, any condition set forth herein that was not satisfied as of the Closing will be deemed to have been waived for all purposes by the Party having the benefit of such condition as of and after the Closing.

## ARTICLE VIII

## TERMINATION

Termination of Agreement. This Agreement may be terminated only in accordance with this Section. This Agreement may be terminated at any time prior to the Closing:

(a)      by the mutual written consent of Seller and Buyer;

(b)      by written notice from Seller to Buyer, upon a breach of any covenant or agreement on the part of Buyer, or if any representation or warranty of Buyer will have become untrue;

(c)      by written notice from Buyer to Seller, upon a breach of any covenant or agreement on the part of Seller, or if any representation or warranty of Seller will have become untrue;

(d)      by written notice from Seller to Buyer, if all of the conditions to closing have been satisfied or waived and Buyer fails to complete the Closing by the Outside Date; or

(e)      by written notice from Seller to Buyer, if (i) Seller determines that proceeding with the transactions contemplated by this Agreement or failing to terminate this Agreement would be inconsistent with its fiduciary duties, including any duty to consummate an Alternative Transaction, or (ii) the Sale Order is not approved by the Bankruptcy Court.

Effect of Termination.

(a)      In the event of termination of this Agreement, this Agreement shall become void and there shall be no liability on the part of any Party or any of its stakeholders; provided however that no termination will relieve Buyer from any liability for direct damages, losses, costs, or expenses (including reasonable legal fees and expenses actually incurred) resulting from any willful breach of this Agreement prior to the date of such termination (which, for the avoidance of doubt, will be deemed to include any failure by Buyer to consummate the Closing by the Outside Date, provided that Seller is not also in default under this Agreement).

(b)      If this Agreement has been terminated by Seller due to Buyer's breach of this Agreement, then Seller shall be entitled to retain the Deposit. The Parties agree that Seller's right to retain the Deposit is not a penalty, but rather is liquidated damages in a reasonable amount that will compensate Seller for its efforts and resources expended and the opportunities foregone while negotiating this Agreement and in reliance on this Agreement and on the expectation of the

7

consummation of the transactions contemplated hereby, which amount would otherwise be impossible to calculate with precision.

(c)    In the event that Seller terminates this agreement in an exercise of its fiduciary duties in order to consummate an Alternative Transaction, Buyer shall be entitled to the return of its Deposit, and the Escrow Agent shall return the Deposit to Buyer within ten (10) business days of such termination.

## ARTICLE IX

## TAXES

Transfer Taxes. Any sales, use, purchase, transfer, franchise, deed, fixed asset, stamp, documentary stamp, use, registration, or other taxes and recording charges payable solely by reason of the sale of the Purchased Assets under this Agreement or the transactions contemplated hereby (the "**Transfer Taxes**") shall be borne and timely paid by Buyer only to the extent not exempt under the Bankruptcy Code, as applicable to the transfer of the Purchased Assets pursuant to this Agreement, and Buyer shall timely file all tax returns related to any Transfer Taxes. Seller and Buyer shall use commercially reasonable efforts and cooperate in good faith to exempt all such transactions from any Transfer Taxes, including pursuant to section 1146(a) of the Bankruptcy Code. Seller shall have no liability for any Transfer Taxes.

Cooperation. Buyer and Seller shall reasonably cooperate, as and to the extent reasonably requested by the other Party, in connection with the filing of tax returns and any action, audit, litigation, or other proceeding with respect to any Transfer Taxes.

9.3    Other Tax Matters. Except as specifically set forth in this Agreement, neither Party makes any representations regarding the implications of the transactions contemplated herein on any liability for any taxes to any governmental authority, and each Party shall be liable for any such taxes under applicable law.

## ARTICLE X

## MISCELLANEOUS

Expenses. Whether or not the Closing takes place, except as otherwise provided herein, all fees, costs, and expenses incurred in connection with the negotiation of this Agreement and the other agreements contemplated hereby, the performance of this Agreement and the consummation of the transactions contemplated hereby will be paid by the Party incurring such fees, costs. and expenses.

Notices. Except as otherwise expressly provided herein, all notices, demands and other communications to be given or delivered under or by reason of the provisions of this Agreement will be in writing and will be deemed to have been given (a) when personally delivered, (b) when transmitted by electronic mail, if transmitted prior to 5:00 p.m. Eastern time on a business day, otherwise on the next succeeding business day, (c) the day following the day on which the same has been delivered prepaid to a reputable national overnight air courier service or (d) the third (3rd) business day following the day on which the same is sent by certified or registered mail, postage

prepaid, in each case, to the respective Party at the number, electronic mail address or street address, as applicable, set forth below, or at such other number, electronic mail address or street address as such Party may specify by written notice to the other Party.

> Notices to Buyer:
>
> Kedar Gore
> 360 Creative Solutions Group
> Royal Drive NW, Ste 210
> Kennesaw, Georgia 30144
> Email: kedar@360csg.com
>
>
> Notices to Seller:
>
> SCV Graphic Productions, Inc.
> ATTN: Scott Niner
> 27520 Avenue Mentry
> Valencia, CA, 91355
> scott@danglingcarrotcreative.com
>
> with a copy to (which shall not constitute notice):
>
> Keck Legal, LLC
> Attn: Benjamin Keck
> 2801 Buford Hwy NE
> Suite 115
> Atlanta, GA  30329
> Email: bkeck@kecklegal.com

Binding Effect; Assignment. This Agreement shall be binding upon Buyer and, subject to the entry into and terms of the Sale Order, Seller, and shall inure to the benefit of and be so binding on the Parties and their respective successors and permitted assigns, including any trustee or estate representative appointed in the Bankruptcy Case or any successor chapter 7 case.

Amendment and Waiver. Any provision of this Agreement or exhibits hereto may be (a) amended only in a writing signed by Buyer and Seller or (b) waived only in a writing executed by the person against which enforcement of such waiver is sought. No waiver of any provision hereunder or any breach or default thereof will extend to or affect in any way any other provision or prior or subsequent breach or default.

Third Party Beneficiaries. Except as otherwise expressly provided herein, nothing expressed or referred to in this Agreement will be construed to give any person other than the Parties any legal or equitable right, remedy, or claim under or with respect to this Agreement or any provision of this Agreement.

Non-Recourse. This Agreement may only be enforced against, and any action based upon, arising out of or related to this Agreement may only be brought against, the entities that are expressly named as parties to this Agreement. Except to the extent named as a party to this Agreement, and then only to the extent of the specific obligations of such parties set forth in this Agreement, no past, present or future shareholder, member, partner, manager, director, officer, incorporator, employee, affiliate, agent, or advisor of any Party or any subsidiary of either Seller or Buyer will have any liability (whether in contract, tort, equity or otherwise) for any of the representations, warranties, covenants, agreements or other obligations or liabilities of any of the parties to this Agreement or for any action based upon, arising out of or related to this Agreement.

Severability. Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law in any jurisdiction, such provision will be ineffective only to the extent of such prohibition or invalidity in such jurisdiction, without invalidating the remainder of such provision or the remaining provisions of this Agreement or in any other jurisdiction.

Construction. The language used in this Agreement will be deemed to be the language chosen by the Parties to express their mutual intent, and no rule of strict construction will be applied against any person. The headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and will in no way restrict or otherwise modify any of the terms or provisions hereof.

Complete Agreement. This Agreement contains the entire agreement of the Parties respecting the sale and purchase of the Purchased Assets and the transactions contemplated by this Agreement and supersedes all prior agreements among the Parties respecting the sale and purchase of the Purchased Assets and the transactions contemplated by this Agreement.

Jurisdiction and Exclusive Venue. Each of the Parties irrevocably agrees that any action that may be based upon, arising out of, or related to this Agreement brought by any other Party or its successors or assigns will be brought and determined only in (a) the Bankruptcy Court and any federal court to which an appeal from the Bankruptcy Court may be validly taken, (b) in the event the Bankruptcy Case is closed, or if the Bankruptcy Court is unwilling or unable to hear such action, in the United States District Court for the Northern District of Georgia, or (c) if the United States District Court for the Northern District of Georgia declines to accept jurisdiction over a particular matter, any state or federal court within the State of Georgia.  Each of the Parties hereby irrevocably submits to the exclusive jurisdiction of such with regard to any such action arising out of or relating to this Agreement. The Parties irrevocably agree that venue would be proper in any of the courts referenced above and hereby irrevocably waive any objection that any such court is an improper or inconvenient forum for the resolution of such action. Each of the Parties further irrevocably and unconditionally consents to service of process in the manner provided for notices herein.

<u>Governing Law</u>.  Except to the extent the mandatory provisions of the Bankruptcy Code apply, all matters related to this Agreement will be governed by and construed in accordance with the internal laws of the State of Georgia without regard to conflicts of law principles.

10.12   <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, including by means of facsimile or electronically transmitted portable document format (pdf) signature pages, each of which shall be an original but all of which together shall constitute one and the same instrument.

<u>Bulk Sales Laws</u>. The Parties intend that pursuant to section 363(f) of the Bankruptcy Code, the transfer of the Purchased Assets shall be free and clear of any security interests in the Purchased Assets, including any liens or claims arising out of the bulk transfer laws, and the Parties shall take such steps as may be necessary or appropriate to so provide in the Sale Order. In furtherance of the foregoing, each Party hereby waives compliance by the Parties with the "bulk sales," "bulk transfers" or similar laws and all other similar laws in all applicable jurisdictions in respect of the transactions contemplated by this Agreement.

<u>Fiduciary Obligations</u>. Nothing in this Agreement, or any document related to the transactions contemplated hereby, will require Seller or any of its directors or officers, in their capacity as such, to take any action, or to refrain from taking any action, to the extent inconsistent with their fiduciary obligations. For the avoidance of doubt, Seller retains the right to pursue any Alternative Transaction that, in Seller's business judgment, will maximize the value of its bankruptcy estate.

<u>Further Assurances</u>. The Parties agree (a) to furnish upon request to each other such further information, (b) to execute, acknowledge, and deliver to each other such other documents and (c) to do such other acts and things, all as the other Party may reasonably request for the purpose of carrying out the intent of this Agreement and the documents referred to in this Agreement.

<u>Severability</u>. If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement shall remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree shall remain in full force and effect to the extent not held invalid or unenforceable.

*[Signatures on following page]*

11

      **IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed by their respective duly authorized officers as of the date first above written.

**<u>SELLER</u>:**

SCV GRAPHIC PRODUCTIONS, INC.

By: _____

Name: Scott Allan Niner

Title:  President

**<u>BUYER</u>:**

360 CREATIVE SOLUTIONS GROUP, LLC,

By: _____

Name: Kedar Gore

Title:  President

*[Signature Page to Asset Purchase Agreement]*

## <u>Annex A</u>

**Excluded Assets**

1. All cash and cash equivalents.

2. All rights to bank accounts and deposit accounts of Seller.

3. All accounts receivable and all claims against third parties related to the collectability thereof.

4. All rights to security deposits, utility deposits, and other deposits held by third parties.

5. All rights to any insurance proceeds or refunds due from any insurance Seller.

6. All claims and causes of action against third parties, including claims arising under chapter 5 of the Bankruptcy Code.

7. All rights of Seller under any contract.

8. All intellectual property rights related to Seller's business, including without limitation all patents, trademarks, service marks, trade secrets, and copyrights, including without limitation all drawings, plans, and photographs.

9. All rights to the telephone and facsimile numbers and email addresses used by Seller.

10. All licenses and permits held by Seller.

11. All tax refunds or reimbursements due to Seller.

12. All shares of stock or other equity interests in Seller.

13. All rights of Seller arising under this Agreement.

## <u>Exhibit B</u>

**Offer Letter**

360 creative solutions group

January 16, 2026

To: Scott Niner

I, Kedar Gore, hereby submit this formal, non-binding offer to purchase the assets outlined in the attached document labeled **Appendix A** (DCC Inventory evaluated on January 6, 2026).

This offer includes all equipment, materials, and ancillary tools listed in Appendix A.

The proposed purchase price is **One Hundred Eighty Thousand Dollars ($180,000)**, representing fair market value as appraised by Chroma Express.

This offer is subject to customary due diligence, internal approval, and the negotiation and execution of a mutually acceptable definitive asset purchase agreement. Either party may withdraw from this transaction prior to execution of such an agreement without penalty.

This letter is intended solely as an expression of interest and does not constitute a binding agreement or obligation on either party.

Please let me know if you have any questions or would like to discuss next steps.

Sincerely,

Kedar Gore
Principal
360 Creative Solutions Group, LLC

**Exhibit C**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**NEWNAN DIVISION**

| | |
|---|---|
| **In re:** | **CASE NO. 25-10613-PMB** |
| **SCV GRAPHIC PRODUCTIONS, INC.** | **CHAPTER 11** |
| **Debtor.** | |

**ORDER GRANTING**
**MOTION FOR AUTHORITY TO SELL CERTAIN EQUIPMENT**
**PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE**

This matter is before the Court on the Motion of SCV Graphic Production, Inc. (the "**Debtor**") for Authority to Sell Certain Equipment Pursuant to Section 363 of the Bankruptcy Code [Doc. ____] (the "**Motion**"). Upon consideration of the Motion and all other matters of record, the Court finds (a) it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (c) venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; (d) the relief requested

in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and (e) notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances, and no other notice need be provided. Therefore, having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted therein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED THAT:**

1.        The Motion is GRANTED as set forth herein.[1]

2.        The Debtor is authorized, but not directed, to sell any and all of the equipment identified in **Exhibit A** to the Motion (collectively the "**Equipment**") for not less than the Proposed Purchase Price set forth therein.

3.        The Debtor is authorized, but not directed, to sell the Equipment to the purchaser identified in  **Exhibit A** of the Motion (the "**Purchaser**").

4.        The Debtor shall hold the proceeds of the sale of the Equipment in escrow in its counsel's trust account pending further order of the Court.

5.        With respect to any Equipment subject to a valid security interest or lien, such security interest or lien shall attach to the proceeds received from the sale of any such Equipment.

6.        Any distribution to a secured creditor from the proceeds of the sale shall be solely on account of such creditor's allowed secured claim, as determined under 11 U.S.C. § 506(a), and only to the extent of the value of such creditor's interest in the Equipment. Nothing herein shall constitute a determination of the total amount, validity, priority, or extent of any creditor's claim or lien, or a waiver of the Debtor's right to object thereto.

---

[1]   All capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

7.      Within fifteen business days of any such sale, the Debtor shall file a report of sale with the Court indicating (a) the asset sold, (b) the buyer of such asset, (c) the proceeds received in exchange for each asset sold.

8.      The Court finds that the Purchaser has acted in good faith within the meaning of 11 U.S.C. § 363(m), that the sale was negotiated and proposed in good faith and at arm's length, and that no collusion occurred between the Purchaser and the Debtor or any other party. Accordingly, the sale is entitled to the protections of § 363(m).

9.      The Court makes no determination at this time regarding any surcharge of collateral pursuant to section 506(c) of the Bankruptcy Code, and all parties' rights with respect thereto are preserved.

10.     The Debtor is authorized to take all actions and to execute and deliver all documents and instruments necessary to implement the relief granted in this Order.

11.     The provisions of Federal Rule of Bankruptcy Procedure 6004(h) are hereby waived, and this Order shall be effective immediately upon entry.

12.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

### ### END OF ORDER ###

**Prepared and presented by:**

**KECK LEGAL, LLC**

*/s/ Jonathan Clements*
Benjamin R. Keck, Ga. Bar No. 943504
Jonathan Clements, Ga. Bar No. 130051
2801 Buford Highway NE, Suite 115
Atlanta, GA 30329
Tel. (470) 826-6020
bkeck@kecklegal.com
jclements@kecklegal.com
***Counsel for the Debtor***

**<u>Distribution List</u>**

Benjamin R. Keck
Keck Legal, LLC
2801 Buford Highway NE, Suite 115
Atlanta, GA 30329

Office of the United States Trustee
Attn: David S. Weidenbaum
Suite 362, Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, Georgia 30303