**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**NEWNAN DIVISION**

| | |
|---|---|
| **In re:** | **Case No. 25-10613-PMB** |
| **SCV GRAPHIC PRODUCTIONS, INC.,** | **Chapter 11** |
| **Debtor.** | |

**CHAPTER 11 PLAN OF REORGANIZATION**
**FOR SCV GRAPHIC PRODUCTIONS, INC.**

**February 23, 2026**

**KECK LEGAL, LLC**
Benjamin R. Keck, Ga. Bar No. 943504
Jonathan Clements, Ga. Bar No. 130051
2801 Buford Highway NE, Suite 115
Atlanta, GA 30329
Tel. (470) 826-6020
bkeck@kecklegal.com
Jclements@kecklegal.com
***Counsel for the Debtor***

**NO MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND RELATED**
**MATERIALS APPROVED BY THE BANKRUPTCY COURT HAVE BEEN**
**AUTHORIZED FOR USE IN SOLICITING ACCEPTANCES OR**
**REJECTIONS OF THIS PLAN.**

## ARTICLE I. INTRODUCTION

SCV GRAPHIC PRODUCTIONS, INC., the Debtor and Debtor-in-Possession (the "**Debtor**") in the above-captioned bankruptcy case, hereby proposes and files the following Plan of Reorganization providing for a reorganization of its debts. This Plan of Reorganization (the "**Plan**") should be considered in conjunction with the Disclosure Statement related thereto, which the Debtor has filed contemporaneously herewith.

## ARTICLE II. DEFINITIONS AND GENERAL PROVISIONS

For purposes of the Plan, all capitalized terms not otherwise defined herein shall have the meanings ascribed to them in this Article II of the Plan. Any term used in the Plan that is not defined herein but is otherwise defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. The rights and obligations arising under the Plan shall be interpreted, governed by, and construed and enforced in accordance with the laws of the State of Georgia (without regard to the conflict of law principles thereof), the Bankruptcy Code, and the Bankruptcy Rules, as appropriate.

2.1     *Definitions*. The following terms, when used in this Plan, shall have the following meaning:

2.1.1     *Administrative Claim* shall mean an Allowed Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and entitled to priority payment pursuant to Section 507(a) of the Bankruptcy Code, including (a) the actual, necessary costs and expenses incurred after the Petition Date of preserving any of the Estate and operating the Debtor's business, including wages, salaries, or commissions for services rendered after the Petition Date, (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses approved, awarded or allowed under Sections 330(a) or 331 of the Bankruptcy Code, (c) the post-Effective Date costs and expenses of administering the Estate, (d) claims held by landlords related to the assumption of unexpired leases, and (e) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

2.1.2     *Administrative Claims Bar Date* shall mean the first Business Day that is at least 30 days after the Effective Date.

2.1.3     *Allowed Claim* shall mean a Claim or any portion thereof that is enforceable against Debtor or enforceable against the property of the Debtor under sections 502 or 503 of the Bankruptcy Code.

2.1.4   ***Assets*** shall mean, collectively, all of the property, as defined by section 541 of the Bankruptcy Code, of the Estate of the Debtor (including without limitation, all of the assets, property, interests (including equity interests) and effects, real and personal, tangible and intangible, including all Avoidance Actions), wherever situated as such properties exist on the Effective Date or thereafter.

2.1.5   ***Avoidance Action*** shall mean any claim or cause of action of the Estate arising out of or maintainable pursuant to sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

2.1.6   ***Ballot*** shall mean each of the ballot forms that are distributed with the Plan to Holders of Claims included in the Classes that are Impaired under this Plan and are entitled to vote.

2.1.7   ***Bankruptcy Case*** shall mean the chapter 11 case initiated by Debtor's filing on the Petition Date of a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

2.1.8   ***Bankruptcy Code*** shall mean the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended and applicable to this Bankruptcy Case.

2.1.9   ***Bankruptcy Court*** shall mean the United States Bankruptcy Court for the Northern District of Georgia, Newnan Division.

2.1.10 ***Bankruptcy Rules*** shall mean: (a) the Federal Rules of Bankruptcy Procedure, (b) the Federal Rules of Civil Procedure, and (c) the Local Rules of the Bankruptcy Court, all as amended from time to time and as applicable to this Bankruptcy Case or proceedings therein.

2.1.11 ***Bar Date*** shall mean the last date set by the Bankruptcy Court to file proofs of claim asserting a pre-petition claim. The Bar Date has been set by the Bankruptcy Court in this Bankruptcy Case as September 2, 2025.

2.1.12 ***Business Day*** shall mean any day on which the commercial banks are required to be open for business in Newnan, Georgia and which is not a weekend or legal holiday recognized by the Bankruptcy Court or the Superior Courts of the State of Georgia.

2.1.13 *Cash* shall mean legal tender of the United States of America and equivalents thereof.

2.1.14 *Causes of Action* shall mean all Avoidance Actions and any and all of the Debtor's and the Estate's actions, suits, accounts, agreements, promises, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise.

2.1.15 *Chapter 11* shall mean chapter 11 of the Bankruptcy Code.

2.1.16 *Claim* shall mean a claim against the Debtor whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

2.1.17 *Claiming Period* shall mean a period of the later of one year following the first Distribution to a Class of Claims or 180 days after a Distribution is made to a claimant on account of which Unclaimed Property first results.

2.1.18 *Claims Objection Deadline* shall mean the first Business Day that is at least 30 days after the Effective Date.

2.1.19 *Class* shall mean a category of Claims described in this Plan.

2.1.20 *Confirmation Date* shall mean the date on which the Bankruptcy Court enters the Confirmation Order.

2.1.21 *Confirmation Hearing* shall mean the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under section 1129 of the Bankruptcy Code, as such hearing may be continued.

2.1.22 *Confirmation Order* shall mean the order confirming this Plan pursuant to section 1129 of the Bankruptcy Code that the Bankruptcy Court enters, which shall be in all respects reasonably acceptable to Debtor.

2.1.23 *Convenience Class Claims* shall mean Allowed Non-Priority Unsecured Claims in an amount that is less than or equal to $1,000.00.

2.1.24 *Debtor* shall mean SCV Graphic Productions, Inc., the debtor in this Bankruptcy Case.

2.1.25 *Deficiency Claim* shall mean the Allowed Claim of any secured creditor to the extent that such claim is not a Secured Claim, which shall be treated as a General Unsecured Claim.

2.1.26 *Disallowed Claim* shall mean a Claim or any portion thereof that: (i) has been disallowed by a Final Order, (ii) is listed in any of the Debtor's Schedules at zero, unknown, contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (iii) is not listed in the Debtor's Schedules and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

2.1.27 *Disbursing Agent* shall mean Keck Legal, LLC.

2.1.28 *Disclosure Statement* shall mean the Disclosure Statement being filed contemporaneously with this Plan, as the same may be amended or modified.

2.1.29 *Disputed Claim* shall mean a Claim or any portion thereof, that is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled, or overruled by a Final Order of the Bankruptcy Court.

2.1.30 *Distribution* shall mean any distribution by the Debtor or the Reorganized Debtor to a Holder of an Allowed Claim.

2.1.31 *District Court* shall mean the United States District Court for the Northern District of Georgia, Newnan Division.

2.1.32 *Effective Date* shall mean first Business Day that is at least 30 days after the Confirmation Date.

2.1.33 *Estate* shall mean, with regard to the Debtor, the estate that was created by the commencement by the Debtor of the Bankruptcy Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of such Debtor and any and all interests in property, whether real, personal or mixed, rights, Causes of Action, avoidance powers or extensions of time that such Debtor or such estate shall have had as of the commencement of the Bankruptcy Case, or which such Estate acquired after the commencement of the Bankruptcy Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise.

2.1.34 ***Executory Contract or Unexpired Lease*** shall mean any executory contract and unexpired lease to which the Debtor is a party.

2.1.35 ***Final Distribution*** shall mean the Distribution by the Debtor or the Reorganized Debtor that satisfies all Allowed Claims to the extent provided in accordance with the Plan.

2.1.36 ***Final Distribution Date*** shall mean the Distribution Date on which the Final Distribution is made.

2.1.37 ***Final Order*** shall mean an order of the Bankruptcy Court, the District Court, or any other court as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely.  In the case of an order of the Bankruptcy Court, the time for appeal, for purposes of this definition, shall be the time permitted for an appeal to the District Court.

2.1.38 ***General Unsecured Claim*** shall mean an Allowed Claim that is not an Administrative Claim, a Priority Claim, a Secured Claim, a Priority Tax Claim, a Convenience Class Claim, or is not otherwise separately classified.

2.1.39 ***Holder*** shall mean a holder of a Claim or Interest, as applicable.

2.1.40 ***Impaired*** shall have the meaning ascribed thereto in section 1124 of the Bankruptcy Code.

2.1.41 ***Initial Distribution Date*** shall mean the first Business Day that is at least 30 days after the Effective Date.

2.1.42 ***Insider*** shall have the meaning set forth in Section 101(31) of the Bankruptcy Code.

2.1.43 ***Lien*** shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

2.1.44 ***Person*** shall mean an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

2.1.45 ***Petition Date*** shall mean April 28, 2025.

2.1.46 *Plan* shall mean this plan of reorganization as same may hereafter be corrected, amended, supplemented, restated, or modified.

2.1.47 *Priority Claim* shall mean a Claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Claim or a Priority Tax Claim.

2.1.48 *Priority Tax Claim* shall mean a Claim against the Debtor that is of a kind specified in sections 507(a)(8) of the Bankruptcy Code.

2.1.49 *Professional Compensation* shall mean (1) any amounts that the Bankruptcy Court allows pursuant to section 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professionals employed by the Debtor and the unsecured creditors' committee, if any, and (ii) any amounts the Bankruptcy Court allows pursuant to sections 503(b)(3) and (4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Case.

2.1.50 *Professional Claims* shall mean any Claim based on professional fees held by any party retained pursuant to Sections 327–330 of the Bankruptcy Code.

2.1.51 *Record Date* shall mean any date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of holders of Allowed Claims entitled to Distributions under this Plan. If no Record Date is established in the Confirmation Order or any other order of the Bankruptcy Court prior to the Confirmation Date, then the Record Date shall be the Confirmation Date.

2.1.52 *Record Holder* shall mean the Holder of a Claim as of the Record Date.

2.1.53 *Reorganized Debtor* shall mean SCV Graphic Productions, Inc. on and after the Effective Date of the Plan.

2.1.54 *Retained Action* shall mean all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which Debtor or the Debtor's Estate may hold against any Person, including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by the Debtor, (iii) claims and Causes of Action relating to strict enforcement of the Debtor's intellectual property rights, including patents, copyrights and trademarks, (iv) claims and Causes of Action seeking the recovery of the Debtor's accounts receivable or other receivables or rights to payment created or

arising in the ordinary course of the Debtor's business, including without limitation, claim overpayments and tax refunds, and (v) all Causes of Action that are Avoidance Actions.

2.1.55 *Scheduled* shall mean, with respect to any Claim or Equity Interest, the status and amount, if any, of such Claim or Equity Interest, as set forth in the Debtor's Schedules, as amended.

2.1.56 *Schedules* shall mean the Schedules of Assets and Liabilities the Debtor filed in the Bankruptcy Case, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

2.1.57 *Secured Claim* shall mean a Claim against the Debtor to the extent secured by a Lien on any property of the Debtor on the Petition Date to the extent of the value of said property as provided in section 506(a) of the Bankruptcy Code.

2.1.58 *Subordinated Claim* shall mean any Unsecured Claim that is subordinated in priority to all other Allowed Unsecured Claims pursuant to the provisions of section 510 of the Bankruptcy Code or other applicable law.

2.1.59 *Unimpaired* shall mean, with respect to a Class of Claims or Interests, any Class that is not Impaired.

2.1.60 *Unsecured Claim* shall mean any Claim against Debtor that is not a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Claim.

## ARTICLE III. GENERAL PROVISIONS

**3.1 Time.** Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Georgia, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Saturday, Sunday, or legal holiday.

**3.2 Events of Default.** Unless otherwise specifically provided in a class under the Plan, in the event of a default by Debtor in payments under the Plan or otherwise, the Holder must send written notice ("**Default Notice**") to the Debtor at the addresses of record for the Debtor as reflected on the docket for this Bankruptcy Case, unless the Debtor has provided the Holder with a written notice of a change of address. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that the Debtor has fifteen (15) days (in the case of a monetary default) and thirty (30) days (in the case of a non-monetary default) from receipt by the Debtor and the Debtor's counsel of the Default Notice (or the following business day if the 15th or 30th day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight

deliveries, in the event of a monetary default). The Holder must send such Default Notice to the Debtor via certified mail or recognized overnight carrier with a copy via email and certified mail to Benjamin R. Keck at the address reflected in the then-current directory of the State of Bar of Georgia. The Debtor shall have fifteen (15) days or thirty (30) days (as applicable) from the Debtor's and the Debtor's counsel's receipt of the Default Notice to cure such default.  Receipt by the Debtor's Attorney shall not be deemed receipt by the Debtor of the required Default Notice. Notwithstanding anything to the contrary in the Plan or otherwise, a default under one Class of Claims or sub-class of Claims shall not constitute a default under any other Class of Claims or sub-class of Claims. (For example, a default under Class 1 shall not constitute a default under Class 2).

**3.3** **Notices.** All notices under the Plan shall be in writing. Unless otherwise specifically provided here in, all notices shall be sent to the Debtor via U.S. Certified Mail Return Receipt or by recognized overnight carrier to the address of record for the Debtor in this Case, unless the Debtor has provided such Holder with written notice of change of address for Debtor, with a copy via email and certified mail to Benjamin R. Keck at the address reflected in the then current directory of the State Bar of Georgia. Receipt of notice by Benjamin R. Keck shall not be deemed receipt by the Debtor of the required notice. Notice to creditors may be provided (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to the Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and the Debtor has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records.  Notices shall be deemed received: (i) on the day transmitted if sent via email and (ii) on the day delivered if sent via nationally recognized overnight delivery service or Certified Mail Return Receipt.

## ARTICLE IV. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

4.1   **Summary**.  The categories of Claims and Interests set forth below classify all Claims against the Debtor for all purposes of this Plan.  A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  The treatment with respect to each Class of Claims and Interests provided for in Article 4 shall be in full and complete satisfaction, release, and discharge of such Claims and Interests.

4.2   Under the provisions of Section 1123(a)(1) of the Bankruptcy Code, Claims of a kind specified in Sections 507(a)(2), 507(a)(3), and 507(a)(8) of the Bankruptcy Code (administrative expenses, "gap" claims, and tax claims) may not be designated by the Debtor as being in particular classes. Notwithstanding this prohibition of classification, these Claims are nevertheless treated in Article V of this Plan.

4.3     *Classes*:

4.3.1   Class 1 shall consist of the Secured Claim of the U.S. Small Business Administration.

4.3.2   Class 2 shall consist of the Secured Claim of Mitsubishi HC Capital America, Inc.

4.3.3   Class 3 shall consist of the Secured Claim of Mitsubishi HC Capital America, Inc.

4.3.4   Class 4 shall consist of the Secured Claim of The Huntington National Bank.

4.3.5   Class 5 shall consist of the Secured Claim of Wells Fargo Bank, National Association.

4.3.6   Class 6 shall consist of the Secured Claim of the California Dept. of Tax and Fee Administration.

4.3.7   Class 7 shall consist of the Secured Claim of Flagstar Financial & Leasing, LLC.

4.3.8   Class 8 shall consist of the Secured Claim of Banc of America Leasing & Capital LLC.

4.3.9   Class 9 shall consist of the Secured Claim of The Huntington National Bank.

4.3.10  Class 10 shall consist of the Secured Claim of First Citizens Bank & Trust Company.

4.3.11  Class 11 shall consist of the Secured Claim of Mercedes-Benz Financial Services USA LLC.

4.3.12  Class 12 shall consist of the Secured Claim of Mercedes-Benz Financial Services USA LLC.

4.3.13  Class 13 shall consist of the Secured Claim of Los Angeles County Tax Collector.

-10-

4.3.14  Class 14 shall consist of the Secured Claim of Regions Bank d/b/a Ascentium Capital.

4.3.15  Class 15 shall consist of General Unsecured Claims.

4.3.16  Class 16 shall consist of all Convenience Class Claims.

4.3.17  Class 17 shall consist of equity interests in the Debtor.

## ARTICLE V. TREATMENT OF CLAIMS

The Classes, the treatment of each Class, and the voting rights of each Class are set forth below. The Debtor reserves the right to pay any claim in full at any time in accordance with the terms of the Plan (*i.e.* at the percentage distribution or amount creditor would receive over the life of the Plan as designated in the Plan and including any accrued and unpaid interest, if any) without prepayment penalty.

5.1  *Priority Tax Claims*. To the extent that any Priority Tax Claims have not been satisfied prior to the Effective Date, the Debtor will pay all remaining Priority Tax Claims in full over a five-year period in installments as provided in 11 U.S.C. § 1129. Priority Tax Claims are Unimpaired and are presumed to accept the Plan.

5.2  *Priority Claims*. Except as may otherwise be agreed between the Debtor and the Holder of a Priority Claim, the Debtor will pay all Priority Claims that are allowed as of the Effective Date in Cash in full on the Final Distribution Date or as soon thereafter as is reasonably practicable. To the extent that any Priority Claim is allowed after the Effective Date, it will be paid in full in Cash on the later of (i) the Final Distribution Date, or (ii) within thirty (30) days after the Claim is allowed, or as soon thereafter as is reasonably practicable.  Priority Claims are Unimpaired and are presumed to accept the Plan.

5.3  *Administrative Claims*. Subject to the provisions of sections 328, 330(a), and 331 of the Bankruptcy Code, each holder of an Allowed Administrative Claim will be paid the full unpaid amount of such Allowed Administrative Claim in Cash on the latest of (1) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Claim, (iii) upon such other terms as may be agreed upon by such holder and the Debtor, or (iv) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Claims representing obligations incurred by the Debtor in the ordinary course of business after the Petition Date, or otherwise assumed by the Reorganized Debtor on the Effective Date pursuant to this Plan, including any tax obligations arising after the Effective Date, will be

paid or performed by the Reorganized Debtor when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations. Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Claims against the Debtor are not classified for purposes of voting on or receiving Distributions under the Plan.  Holders of such Claims are not entitled to vote on the Plan.

5.4   *Professional Claims*.  Any Person seeking an award by the Bankruptcy Court of professional compensation shall file an application with the Bankruptcy Court for allowance of professional compensation for services rendered and reimbursement of expenses incurred through the Effective Date within sixty (60) days after the Effective Date or by such other deadline as may be fixed by the Court. Allowed Professional Claims shall constitute Administrative Claims and shall be paid in accordance with Section 5.3 of this Plan.

5.5   *United States Trustee Fees*.  To the extent that any fees owed to the United States Trustee have not been satisfied prior to the Effective Date, the Debtor will pay all outstanding fees on the Effective Date.

5.6   *Post-Confirmation Professional Fees.*   The Reorganized Debtor shall pay professional fees incurred after confirmation of the Plan without Court approval.

5.7   *Classes:*

5.7.1   *Class 1: Secured Claim of the U.S. Small Business Administration.* The U.S. Small Business Administration Secured Claim shall be settled and satisfied in full as follows:

(a)   **Allowed Amount.** The U.S. Small Business Administration Secured Claim shall be an Allowed Claim in the amount of $465,155.11, plus any accrued post-petition interest, minus any post-petition payments made, or such other amount specified in the Confirmation Order.

(b)   **Distributions.** The U.S. Small Business Administration Secured Claim will be settled and satisfied in full by payment of 100% of the allowed amount of such claim, plus interest at the rate of 3.75% interest per annum, in approximate monthly installments of $2,500.77 per month, beginning on the Initial Distribution Date. The amortization period of the U.S. Small Business Administration Secured Claim reflects the remaining contractual term of the original loan (specifically twenty-three (23) years, and three months) and is intended to provide the U.S. Small Business Administration with payments consistent with the maturity profile of its prepetition secured obligation. U.S. Small Business Administration will be paid in 279 installments, until the U.S. Small Business Administration Secured Claim is paid in full.

**(c)Liens.** The pre-petition liens held by the U.S. Small Business Administration against the U.S. Small Business Administration Assets existing on the Petition Date shall continue in full force and effect until such time as the U.S. Small Business Administration Secured Claim is paid in full.

**(d)      Impairment.** Class 1 is Impaired and entitled to vote on the Plan.

5.7.2   *Class 2: Secured Claim of Mitsubishi HC Capital America, Inc. (Claim No. 10).* The Mitsubishi HC Capital America, Inc. Secured Claim shall be settled and satisfied in full as follows:

**(a)      Allowed Amount.** The Mitsubishi HC Capital America, Inc. Secured Claim shall be an Allowed Claim in the amount of $125,000.00. This value represents the value of the Mitsubishi HC Capital America, Inc. Assets being retained by the Debtor, specifically, a 2019 EFI - Vutek 5R+ Super Wide Roll Led Printer, Serial No. 8820219.

**(b)      Distributions.** The Mitsubishi HC Capital America, Inc. Secured Claim will be settled and satisfied in full by payment of 100% of the allowed amount of such claim, plus interest at the rate of 5.89% interest per annum, in approximate monthly installments of $2,410.21 per month, beginning on the Initial Distribution Date, with such payments calculated based on a five-year amortization, until the Mitsubishi HC Capital America, Inc. Secured Claim is paid in full.

**(c)Liens.** The pre-petition liens held by Mitsubishi HC Capital America, Inc. against the Mitsubishi HC Capital America, Inc. Assets existing on the Petition Date shall continue in full force and effect until such time as the Mitsubishi HC Capital America, Inc. Secured Claim is paid in full.

**(d)      Deficiency Claim.** Any remaining Deficiency Claim (the amount of Mitsubishi HC Capital America, Inc.'s Allowed Claim in excess of the Mitsubishi HC Capital America, Inc. Secured Claim) shall be treated as a Class 15 General Unsecured Claim.

**(e)Impairment.** Class 2 is Impaired and entitled to vote on the Plan.

5.7.3   *Class 3: Secured Claim of Mitsubishi HC Capital America, Inc. (Claim No. 11).* The Mitsubishi HC Capital America, Inc. Secured Claim shall be settled and satisfied in full as follows:

**(a)      Allowed Amount.** The Mitsubishi HC Capital America, Inc.

Secured Claim shall be an Allowed Claim in the amount of $100,000.00. This value represents the value of the Mitsubishi HC Capital America, Inc. Assets being retained by the Debtor, specifically, a 2021 EFI - Vutek 5R+ Super Wide Roll Led Printer, Serial No. 8150621.

(b)     **Distributions.** The Mitsubishi HC Capital America, Inc. Secured Claim will be settled and satisfied in full by payment of 100% of the allowed amount of such claim, pursuant to the sale of the Atlanta location Assets (to the extent such payment has not already been received as of the Effective Date).

(c)     **Liens.** The pre-petition liens held by Mitsubishi HC Capital America, Inc. against the Mitsubishi HC Capital America, Inc. Assets existing on the Petition Date shall continue in full force and effect until such time as the Mitsubishi HC Capital America, Inc. Secured Claim is paid in full.

(d)     **Deficiency Claim.** Any remaining Deficiency Claim (the amount of the Allowed Claim set forth in this class in excess of the Mitsubishi HC Capital America, Inc. Secured Claim described in this class) shall be treated as a Class 15 General Unsecured Claim.

(e)     **Impairment.** Class 3 is Impaired and entitled to vote on the Plan.

5.7.4   ***Class 4: Secured Claim of The Huntington National Bank (Claim No. 8).*** The Huntington National Bank Secured Claim shall be settled and satisfied in full as follows:

(a)     **Allowed Amount.** The Huntington National Bank Secured Claim shall be an Allowed Claim in the amount of $100,000.00. This value represents the value of The Huntington National Bank Assets being retained by the Debtor, specifically, a DMS 5B6-5-10-36 CNC Router.

(b)     **Distributions.** The Huntington National Bank Secured Claim will be settled and satisfied in full by payment of 100% of the allowed amount of such claim, plus interest at the rate of 8.75% interest per annum, in approximate monthly installments of $2,063.72 per month, beginning on the Initial Distribution Date, with such payments calculated based on a five-year amortization, until The Huntington National Bank Secured Claim is paid in full.

(c)     **Liens.** The pre-petition liens held by The Huntington National Bank against The Huntington National Bank Assets existing on the Petition Date shall continue in full force and effect until such time as The

Huntington National Bank Secured Claim is paid in full.

**(d)** **Deficiency Claim.** Any remaining Deficiency Claim (the amount of The Huntington National Bank's Allowed Claim in excess of The Huntington National Bank Secured Claim) shall be treated as a Class 15 General Unsecured Claim.

**(e)** **Impairment.** Class 4 is Impaired and entitled to vote on the Plan.

5.7.5 *Class 5: Secured Claim of Wells Fargo Bank, National Association.* The Wells Fargo Bank, National Association Secured Claim shall be settled and satisfied in full as follows:

**(a)** **Allowed Amount.** The Wells Fargo Bank, National Association Secured Claim shall be an Allowed Claim in the amount of $120,000.00. This value represents the value of the Wells Fargo Bank, National Association Assets being retained by the Debtor, specifically, two AGFA Jeti Titan S/HS Base Engines and one Zund G3 3200 L CV.

**(b)** **Distributions.** Wells Fargo Bank, National Association Secured Claim will be settled and satisfied in full by payment of 100% of the allowed amount of such claim, by a distribution of $30,000 pursuant to the sale of the Atlanta location Assets (to the extent such payment has not already been received as of the Effective Date), plus the remaining balance of $90,000 and interest at the rate of 8.75% interest per annum, in approximate monthly installments of $1,500.00 per month, beginning on the Initial Distribution Date, with such payments calculated based on a five-year amortization, or such amount as agreed between the Debtor and Wells Fargo Bank, until the remaining balance of the Wells Fargo Bank, National Association Secured Claim is paid in full.

**(c)Liens.** The pre-petition liens held by Wells Fargo Bank, National Association against the Wells Fargo Bank, National Association Assets existing on the Petition Date shall continue in full force and effect until such time as Wells Fargo Bank, National Association Secured Claim is paid in full.

**(d)** **Deficiency Claim.** Any remaining Deficiency Claim (the amount of Wells Fargo Bank, National Association's Allowed Claim in excess of the Wells Fargo Bank, National Association Secured Claim) shall be treated as a Class 15 General Unsecured Claim.

**(e)** **Impairment.** Class 5 is Impaired and entitled to vote on the

Plan.

5.7.6   *Class 6: Secured Claim of the California Dept. of Tax and Fee Administration.* The California Dept. of Tax and Fee Administration Secured Claim shall be settled and satisfied in full as follows:

(a)      **Allowed Amount.** The California Dept. of Tax and Fee Administration Secured Claim shall be an Allowed Claim in the amount of $91,730.97, plus any accrued post-petition interest, minus any post-petition payments made, or such other amount specified in the Confirmation Order.

(b)      **Distributions.** The California Dept. of Tax and Fee Administration Secured Claim will be settled and satisfied in full by payment of 100% of the allowed amount of such claim, plus interest at the rate of 8.75% interest per annum, in approximate monthly installments of $1,893.07 per month, beginning on the Initial Distribution Date, with such payments calculated based on a five-year amortization, until the California Dept. of Tax and Fee Administration Secured Claim is paid in full.

(c)      **Liens.** The pre-petition liens held by the California Dept. of Tax and Fee Administration against the California Dept. of Tax and Fee Administration Assets existing on the Petition Date shall continue in full force and effect until such time as the California Dept. of Tax and Fee Administration Secured Claim is paid in full.

(d)      **Impairment.** Class 6 is Impaired and entitled to vote on the Plan.

5.7.7   *Class 7: Secured Claim of Flagstar Financial & Leasing, LLC.* The Flagstar Financial & Leasing, LLC Secured Claim shall be settled and satisfied in full as follows:

(a)      **Allowed Amount.** The Flagstar Financial & Leasing, LLC Secured Claim shall be an Allowed Claim in the amount of $113,000.00. This value represents the value of the Flagstar Financial & Leasing, LLC Assets being retained by the Debtor, specifically, Helios P800 SLA 3D Printer, Serial No. 95874 and an Eagle EV-30 Fiber Laser Cutting Machine, Serial No. DE10062133131.

(b)      **Distributions.** The Flagstar Financial & Leasing, LLC Secured Claim will be settled and satisfied in full by payment of 100% of the allowed amount of such claim, plus interest at the rate of 8.75% interest per annum, in approximate monthly installments of $2,332.01 per month,

-16-

beginning on the Initial Distribution Date, with such payments calculated based on a five-year amortization, until the Flagstar Financial & Leasing, LLC Secured Claim is paid in full.

(c)        **Liens.** The pre-petition liens held by Flagstar Financial & Leasing, LLC against the Flagstar Financial & Leasing, LLC Assets existing on the Petition Date shall continue in full force and effect until such time as the Flagstar Financial & Leasing, LLC Secured Claim is paid in full.

(d)        **Deficiency Claim.** Any remaining Deficiency Claim (the amount of Flagstar Financial & Leasing, LLC's Allowed Claim in excess of the Flagstar Financial & Leasing, LLC Secured Claim) shall be treated as a Class 15 General Unsecured Claim.

(e)        **Impairment.** Class 7 is Impaired and entitled to vote on the Plan.

5.7.8    *Class 8: Secured Claim of Banc of America Leasing & Capital LLC.* The Banc of America Leasing & Capital LLC Secured Claim shall be settled and satisfied in full as follows:

(a)        **Allowed Amount.** The Banc of America Leasing & Capital LLC Secured Claim shall be an Allowed Claim in the amount of $51,876.86. This value represents the value of the Banc of America Leasing & Capital LLC Assets being retained by the Debtor, specifically, a Esko Kongsberg C64 SC Digital Cutter, Serial No. 859642.

(b)        **Distributions.** The Banc of America Leasing & Capital LLC Secured Claim will be settled and satisfied in full by payment of 100% of the allowed amount of such claim, pursuant to the sale of the Atlanta location Assets.

(c)        **Liens.** The pre-petition liens held by Banc of America Leasing & Capital LLC against the Banc of America Leasing & Capital LLC Assets existing on the Petition Date shall continue in full force and effect until such time as the Banc of America Leasing & Capital LLC Secured Claim is paid in full.

(d)        **Impairment.** Class 8 is Impaired and entitled to vote on the Plan..

5.7.9    *Class 9: Secured Claim of The Huntington National Bank (Claim No. 9).* The Huntington National Bank Secured Claim shall be settled and satisfied in full as

-17-

follows:

> **(a)** **Allowed Amount.** The Huntington National Bank Secured Claim shall be an Allowed Claim in the amount of $50,000.00. This value represents the value of The Huntington National Bank Assets being retained by the Debtor, specifically, a DMS 3B6-5-10-12 Industrial CNC Machine.

> **(b)** **Distributions.** The Huntington National Bank Secured Claim will be settled and satisfied in full by payment of 100% of the allowed amount of such claim, plus interest at the rate of 8.75% interest per annum, in approximate monthly installments of $1,031.86 per month, beginning on the Initial Distribution Date, with such payments calculated based on a five-year amortization, until The Huntington National Bank Secured Claim is paid in full.

> **(c)** **Liens.** The pre-petition liens held by The Huntington National Bank against The Huntington National Bank Assets existing on the Petition Date shall continue in full force and effect until such time as The Huntington National Bank Secured Claim is paid in full.

> **(d)** **Deficiency Claim.** Any remaining Deficiency Claim (the amount of The Huntington National Bank's Allowed Claim in excess of The Huntington National Bank Secured Claim) shall be treated as a Class 15 General Unsecured Claim.

> **(e)** **Impairment.** Class 9 is Impaired and entitled to vote on the Plan.

5.7.10 ***Class 10: Secured Claim of First Citizens Bank & Trust Company.*** The First Citizens Bank & Trust Company Secured Claim shall be settled and satisfied in full as follows:

> **(a)** **Allowed Amount.** The First Citizens Bank & Trust Company Secured Claim shall be an Allowed Claim in the amount of $39,241.12. This value represents the value of the First Citizens Bank & Trust Company Assets being retained by the Debtor, specifically, a RMC60 Base System Package.

> **(b)** **Distributions.** The First Citizens Bank & Trust Company Secured Claim will be settled and satisfied in full by payment of 100% of the allowed amount of such claim, plus interest at the rate of 8.75% interest per annum, in approximate monthly installments of $809.85 per month, beginning on the Initial Distribution Date, with such payments calculated

based on a five-year amortization, until the First Citizens Bank & Trust Company Secured Claim is paid in full.

**(c)** **Liens.** The pre-petition liens held by First Citizens Bank & Trust Company against the First Citizens Bank & Trust Company Assets existing on the Petition Date shall continue in full force and effect until such time as the First Citizens Bank & Trust Company Secured Claim is paid in full.

**(d)** **Impairment.** Class 10 is Impaired and entitled to vote on the Plan.

5.7.11 ***Class 11: Secured Claim of Mercedes-Benz Financial Services USA LLC.*** The Mercedes-Benz Financial Services USA LLC Secured Claim shall be settled and satisfied in full as follows:

**(a)** **Allowed Amount.** The Mercedes-Benz Financial Services USA LLC Secured Claim shall be an Allowed Claim in the amount of $25,000.00. This value represents the value of the Mercedes-Benz Financial Services USA LLC Assets being retained by the Debtor, specifically, 2021 Mercedes Sprinter.

**(b)** **Distributions.** The Mercedes-Benz Financial Services USA LLC Secured Claim will be settled and satisfied in full by payment of 100% of the allowed amount of such claim, plus interest at the rate of 8.75% interest per annum, in approximate monthly installments of $515.93 per month, beginning on the Initial Distribution Date, with such payments calculated based on a five-year amortization, until the Mercedes-Benz Financial Services USA LLC Secured Claim is paid in full.

**(c)** **Liens.** The pre-petition liens held by Mercedes-Benz Financial Services USA LLC against the Mercedes-Benz Financial Services USA LLC Assets existing on the Petition Date shall continue in full force and effect until such time as the Mercedes-Benz Financial Services USA LLC Secured Claim is paid in full.

**(d)** **Deficiency Claim.** Any remaining Deficiency Claim (the amount of the Mercedes-Benz Financial Services USA LLC's Allowed Claim in excess of the Mercedes-Benz Financial Services USA LLC Secured Claim) shall be treated as a Class 15 General Unsecured Claim.

**(e)** **Impairment.** Class 11 is Impaired and entitled to vote on the Plan.

5.7.12  ***Class 12: Secured Claim of Mercedes-Benz Financial Services USA LLC.*** The Mercedes-Benz Financial Services USA LLC Secured Claim shall be settled and satisfied in full as follows:

(a)      **Allowed Amount.** The Mercedes-Benz Financial Services USA LLC Secured Claim shall be an Allowed Claim in the amount of $13,002.43.

(b)      **Distributions.** The Mercedes-Benz Financial Services USA LLC Secured Claim will be settled and satisfied in full by payment of 100% of the allowed amount of such claim, plus interest at the rate of 8.75% interest per annum, in approximate monthly installments of $268.33 per month, beginning on the Initial Distribution Date, with such payments calculated based on a five-year amortization, until the Mercedes-Benz Financial Services USA LLC Secured Claim is paid in full.

(c)      **Liens.** The pre-petition liens held by Mercedes-Benz Financial Services USA LLC against the Mercedes-Benz Financial Services USA LLC Assets existing on the Petition Date shall continue in full force and effect until such time as the Mercedes-Benz Financial Services USA LLC Secured Claim is paid in full.

(d)      **Impairment.** Class 12 is Impaired and entitled to vote on the Plan.

5.7.13  ***Class 13: Secured Claim of Los Angeles County Tax Collector.*** The Los Angeles County Tax Collector Secured Claim shall be settled and satisfied in full as follows:

(a)      **Allowed Amount.** The Los Angeles County Tax Collector Secured Claim shall be an Allowed Claim in the amount of $12,678.77.

(b)      **Distributions.** The Los Angeles County Tax Collector Secured Claim will be settled and satisfied in full by payment of 100% of the allowed amount of such claim, plus interest at the rate of 8.75% interest per annum, in approximate monthly installments of $261.55 per month, beginning on the Initial Distribution Date, with such payments calculated based on a five-year amortization, until the Los Angeles County Tax Collector Secured Claim is paid in full.

(c)      **Liens.** The pre-petition liens held by Los Angeles County Tax Collector against the Los Angeles County Tax Collector Assets existing on the Petition Date shall continue in full force and effect until such time as

the Los Angeles County Tax Collector Secured Claim is paid in full.

**(d)** **Impairment.** Class 13 is Impaired and entitled to vote on the Plan.

5.7.14 *Class 14: Secured Claim of Regions Bank d/b/a Ascentium Capital.* The Regions Bank d/b/a Ascentium Capital Secured Claim shall be settled and satisfied in full as follows:

**(a)** **Allowed Amount.** The Regions Bank d/b/a Ascentium Capital Secured Claim shall be an Allowed Claim in the amount of $590.92.

**(b)** **Distributions.** The Regions Bank d/b/a Ascentium Capital Secured Claim will be settled and satisfied in full by payment of 100% of the allowed amount of such claim.

**(c)** **Liens.** The pre-petition liens held by Regions Bank d/b/a Ascentium Capital against the Regions Bank d/b/a Ascentium Capital Assets existing on the Petition Date shall continue in full force and effect until such time as the Regions Bank d/b/a Ascentium Capital Secured Claim is paid in full.

**(d)** **Impairment.** Class 14 is Impaired and entitled to vote on the Plan.

5.7.15 *Class 15: General Unsecured Claims*. Class 15 shall consist of General Unsecured Claims including any potential deficiency claims pursuant to 11 U.S.C. §§ 506.

**(a)** Beginning on the Initial Distribution Date, the Disbursing Agent shall make quarterly payments to Holders of Class 15 General Unsecured Claims and continuing payments the first business day of each third month following the Initial Distribution Date for a total of 20 quarterly payments.

**(b)** The Disbursing Agent shall pay Holders of Class 15 General Unsecured Claims, on a pro rata basis, the Debtor's Projected Disposable Income, after all Convenience Class Claims and all Administrative and Professional Fee Claims have been paid in full. Once all Administrative and Professional Fee Claims have been paid in full, the Disbursing Agent will pay Holders of General Unsecured Claims an amount equal to 100% of the Debtor's Projected Disposable Income, less any payment of Priority Tax Claims, on a pro rata basis. General unsecured creditors are projected to

-21-

receive approximately 10% of allowed General Unsecured Claims, subject to variance based on actual disposable income.

(c)     Notwithstanding anything else in this Plan to the contrary, any Claim listed above shall be reduced by any payment received by the creditor holding such Claim from any third party or other obligor and the Debtor's obligations hereunder shall be reduced accordingly.

(d)     **Impairment**. Class 15 is Impaired and entitled to vote on the Plan.

5.7.16  *Class 16*: *Convenience Claims.* Holders of Convenience Class Claims shall be satisfied in full by payment of 100% of the allowed amount of such Claim on the Initial Distribution Date.  Class 16 is Impaired and entitled to vote on the Plan.

5.7.17  *Class 17: Equity Interests.* All equity interests in the Debtor shall be retained by the existing shareholder solely for the purpose of effectuating the reorganization of the Debtor and continuing the Debtor's business operations. Holders of Equity Interests shall not receive any distributions under this Plan on account of their Equity Interests unless and until all Allowed Claims entitled to payment under this Plan have been satisfied in full. The retention of Equity Interests is not on account of any prior ownership interest but is necessary to preserve the going-concern value of the Debtor and to allow the Reorganized Debtor to perform its obligations under this Plan. Any compensation paid to the principal of the Debtor following the Effective Date shall be solely for services rendered in the ordinary course of business and shall constitute an ordinary and necessary operating expense of the Reorganized Debtor, and not a distribution on account of an Equity Interest.

5.8     *Payment in Full.*  The Debtor reserves the right to pay any Claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution or amount creditor would receive over the life of the Plan as designated in the Plan and including any accrued and unpaid interest, if any) without prepayment penalty.

**ARTICLE VI. MEANS FOR THE IMPLEMENTATION OF THE PLAN**

6.1     *Parties Responsible for Implementation of the Plan*.  Upon confirmation of the Plan, the Debtor and the Disbursing Agent will be charged with administration of the Plan.  The Debtor will be authorized and empowered to take such actions as are required to effectuate the Plan. The Debtor will file all post-confirmation reports required by the United States Trustee's office.  The Debtor will also file the necessary final reports and may apply for a final decree as soon as practicable after substantial consummation and the completion of the claims analysis and objection process.  The Debtor shall be authorized to reopen this case after the entry of a Final

Decree to enforce the terms of the Plan including for the purpose of seeking to hold a party in contempt or to enforce the confirmation or discharge injunction, to seek an order discharging the Debtor, or otherwise afford relief to the Debtor.

6.2     ***Sources of Cash for Quarterly Distribution.***

6.2.1   The source of funds for the payments pursuant to the Plan is the income generated by the Debtor from the ordinary course of business and the net proceeds of the sale(s) of the Assets located at the Seller's current facility in Fayetteville, Georgia at 500 Sandy Creek Road, Building 2005, Fayetteville, GA 30214. The Debtor shall make monthly payments of the Projected Disposable Income to the Disbursing Agent beginning on the Initial Distribution Date and by the first business day of each subsequent month.

6.2.2   After the Effective Date, the Debtor may maintain bank accounts in the ordinary course of business. The Debtor may also pay ordinary and necessary expenses of administration of the Plan in due course and shall not be required to use a "debtor-in-possession" account following the Effective Date.

6.3     ***Preservation of Causes of Action.***  In accordance with section 1123(b)(3) of the Bankruptcy Code, the Debtor will retain and may (but is not required to) enforce all Retained Actions. After the Effective Date, the Debtor, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. The Debtor (or any successors, in the exercise of their sole discretion), may pursue such Retained Actions so long as it is the best interests of the Debtor (or any successors holding such rights of action). The failure of the Debtor to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by the Debtor of such claim, right of action, suit, proceeding or other Retained Action, and the Debtor will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan. The Debtor reserves all causes of actions for breach of any former or now existing agreement or otherwise. The Debtor specifically reserves any cause of action against any of the Debtor's accounts related to underpayment or non-payment of any fees, or other monies or receivables due. The Plan shall not be deemed a waiver of any right of the Debtor to collect any receivable or right to payment under any applicable laws. The Debtor expressly reserves the right to exercise any and all remedies available to the Debtor regarding its accounts receivable or rights to payment at law or in equity, at such time or times as the Debtor from time to time may elect. This Plan is filed with a full reservation of rights. Any failure by the Debtor to assert or set forth the occurrence of any other default or events of default which

-23-

may have occurred shall not be deemed to be a waiver, release or estoppel of such other default or event of default.  The Debtor hereby expressly reserves the right to declare any such other default or event of default and to take such other action as the Debtor may be entitled to applicable law. No delay on the part of the Debtor in exercising any right or remedy shall operate as a waiver in whole or in part of any right or remedy. This Plan is filed with a full reservation of rights.

6.4     ***Effectuating Documents, Further Transactions***. The Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

6.5     ***Exemption from Certain Transfer Taxes and Recording Fees.***  Pursuant to 11 U.S.C. § 1146(a), O.C.G.A. §48-6-65(a)(2), Ga. Comp. R. & Regs. R. 560-11-8.14 and any other applicable laws, codes or regulations, any transfers from the Debtor to any other Person or entity pursuant to or in contemplation of this Plan, or any agreement regarding the transfer of title to or ownership of any of Debtor's personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, stamp act, Commercial Code filing or recording fee, or other similar tax or governmental assessment. Without limitation of the foregoing, the Confirmation Order may direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.6     ***Further Authorization***. The Debtor shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

6.7     ***Liabilities of the Debtor***.  The Debtor will not have any liabilities except those expressly stated or assumed under the Plan. The Debtor will be responsible for all expenses incurred by the Debtor in the ordinary course of business after the Petition Date, and those expenses will be paid in the ordinary course of business as they become due or as agreed upon by holders of post-confirmation the expense claims.

## Article 7
## Distributions

7.1     ***Disbursing Agent***.  Unless otherwise provided for herein, all Distributions under this Plan shall be made by the Disbursing Agent.

7.2 **_Distributions of Cash_**. Any Distribution of Cash made by the Disbursing Agent pursuant to this Plan shall, at the Disbursing Agent's option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank or in any other form of cash or cash equivalent.

7.3 **_No Interest on Claims_**. Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a post-petition agreement in writing between the Debtor and a Holder, post-petition interest shall not accrue or be paid on Claims, and no Holder shall be entitled to interest accruing on or after the Petition Date on any Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final determination is made when and if such Disputed Claim becomes an Allowed Claim.

7.4 **_Delivery of Distributions_**. The Distribution to a Holder of an Allowed Claim shall be made by the Disbursing Agent (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to the Debtor or Disbursing Agent after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and the Debtor or the Disbursing Agent has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor books and records. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Debtor or the Disbursing Agent is notified by such Holder in writing of such Holder's then-current address, at which time the Disbursing Agent shall recommence Distributions to such Holder without interest but further provided that (i) any distributions not claimed within six (6) months of return shall be irrevocably retained by the Disbursing Agent and (ii) such Holder shall waive its right to such Distributions. All Distributions returned to the Disbursing Agent and not claimed within six (6) months of return shall be irrevocably retained by the Disbursing Agent and distributed to the Debtor notwithstanding any federal or state escheat laws to the contrary.

If any Distribution on an Unsecured Claim ("**Unsecured Distribution**") is tendered by the Disbursing Agent to a Holder of an Unsecured Claim and returned, refused or otherwise improperly returned ("**Unsecured Distribution Refusal**"), the Disbursing Agent shall not be responsible for making any further Unsecured Distribution on account of such Unsecured Claim. Accordingly, in the event of an Unsecured Distribution Refusal, the Disbursing Agent shall be relieved of any obligation to make said payment or Distribution and the Disbursing Agent is relieved of any obligation to make further payments or Distributions on such Unsecured Claim under the Plan.

If any Distribution on a Secured Claim or Priority Claim ("**Secured or Priority Distribution**") is tendered by the Disbursing Agent to a Holder of a Secured Claim or Priority Claim and returned, refused or otherwise improperly returned ("**Secured or Priority Distribution Refusal**"), the Holder of such Secured Claim or Priority Claim, as applicable, shall be deemed to have waived its right to such tendered payment or Distribution and such tendered payment or Distribution shall be deemed satisfied.  In the event of a Secured or Priority Distribution Refusal, any obligation of the Disbursing Agent to make any additional or further payment on such Secured Claim or Priority Claim shall be tolled until such time as: (i) notice is provided to the Debtor or the Disbursing Agent that the Holder of such Secured Claim or Priority Claim seeks to receive payments from the Disbursing Agent on the Secured Claim or Priority Claim or otherwise seeks to enforce the Debtor's or the Disbursing Agent's obligations under the Plan or otherwise enforce the Secured Claim or Priority Claim and (ii) any dispute regarding the Secured or Priority Distribution Refusal and its implications is resolved by agreement of the parties or the Bankruptcy Court (the "**Tolling Period**").  Only in the event of such notice to the Debtor or the Disbursing Agent shall the Disbursing Agent's obligations to perform as to the applicable Secured Claim or Priority Claim resume.  The Tolling Period shall: (i) extend the term of the payments on such Secured Claim or Priority Claim and (ii) bar any interest from accruing on the Secured Claim or Priority Claim until such time as any dispute regarding the Secured or Priority Distribution Refusal shall be resolved by a Final Order of the court.  Notwithstanding anything in the Plan or otherwise to the contrary, no provision allowing the imposition of late fees, default interest, late charges, damages, or costs and fees against the Debtor, the Debtor's property, or the Disbursing Agent shall be applicable during the Tolling Period or any period during which a dispute regarding a Tolling Period is being resolved.  For purposes of clarification, the Disbursing Agent shall not be required to make any lump sum cure of payments or Distributions which would have otherwise come due during the Tolling Period or any period during which a dispute regarding a Tolling Period is unresolved, and the Disbursing Agent shall recommence Distributions upon the resolution of such on the terms in the Plan as tolled.

7.5   ***Distributions to Holders as of the Record Date***.  All Distributions on Allowed Claims shall be made to the Record Holders of such Claims.  As of the close of business on the Record Date, the Claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Record Holder of any Claim.  The Disbursing Agent shall have no obligation to recognize any transfer of any Claim occurring after the Record Date.  The Disbursing Agent shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

7.6   ***Fractional Dollars***.  Any other provision of this Plan notwithstanding, the Disbursing Agent shall not be required to make Distributions or payments of fractions of dollars.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be called

for, at the Disbursing Agent's option the actual payment may reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

7.7 ***De Minimis Payments***.  The Disbursing Agent will not issue distributions under this Plan if such distribution would be for less than $10.00.  In such case, the otherwise payable amount will be rolled forward to the next payment date, unless the Debtor is making his final distributions under this Plan, in which case the payment will be made regardless of amount.

## Article 8
## Procedures for Treating and Resolving Disputed Claims

*8.1* ***Objections to Claims.***  The Debtor shall be entitled to object to Claims, provided, however, that the Debtor shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date, or (ii) that are Allowed by the express terms of this Plan. The Claims Objection Deadline is 30 days after the Effective Date, which may be extended by further order of the Court.

*8.2* ***No Distributions Pending Allowance***.  Except as otherwise provided herein, no Distributions will be made with respect to any portion of a Claim unless and until (i) no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn, or overruled pursuant to a Final Order of the Bankruptcy Court.

*8.3* ***Resolution of Claims Objections***.  On and after the Effective Date, the Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

## Article 9
## Provision for Assumption of Unexpired
## Leases and Executory Contracts

9.1 ***Provisions Regarding Executory Contracts***.  Any unexpired leases or executory contracts which are not assumed under the Plan or are the subject of a pending motion to assume as of the Effective Date shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date.

## Article 10
## Effect of Plan on Claims and Interests

10.1 ***Vesting of Debtor's Assets.*** Except as otherwise explicitly provided in the Plan,

upon the Court's entry of the Confirmation Order, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in the Debtor free and clear of all Claims, Liens, charges, encumbrances, rights and interests of creditors and equity security holders, except as specifically provided in the Plan.  As of the earlier of the Effective Date and the entry of a Final Decree, the Debtor may manage its financial affairs and use, acquire, and dispose of property and settle and compromise Claims without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

10.2  ***Discharge of Debtor***. Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims against the Debtor, whether known or unknown, including any and all liabilities of the Debtor, Liens on the Debtor's assets, obligations of the Debtor, rights against the Debtor, and Equity Interests in the Debtor or its Estate that arose prior to the Effective Date regardless of whether a claimant accepted or rejected the Plan.

10.3  ***Setoffs***. The Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor may have now or in the future against such Holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim that the Debtor may have against such Holder.

10.4  ***Injunction***. Upon confirmation of this Plan, the Court may grant a discharge to the Debtor.  Such order discharging the Debtor shall act as a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action except as provided for under this Plan against: (1) the Debtor, or (2) against any property of the Debtor. Such injunction shall survive the closure of the Bankruptcy Case and this Court shall retain jurisdiction to enforce such injunction.

10.5  ***Confirmation Under Section 1129(b).*** The Debtor hereby requests confirmation pursuant to the "cramdown" provisions of Section 1129(b) of the Bankruptcy Code with respect to any impaired Class that votes to reject the Plan.  Accordingly, upon confirmation by the Bankruptcy Court, this Plan will be binding on all creditors and Classes, even if they voted to reject the Plan.

10.6  ***Effect of Confirmation.***

10.6.1 <u>Binding Effect</u>. On the Confirmation Date, the provisions of this Plan shall be binding on the Debtor, the Estate, all Holders of Claims against the Debtor, and all other parties-in-interest whether or not such Holders are Impaired and whether or not such Holders have accepted this Plan. Creditors shall have no right to enforce a Claim against the Debtor, even following a default under the Plan, except to the extent and amount that any Claim of such creditor is provided for and then due under the Plan.

10.6.2 <u>Effect of Confirmation on Automatic Stay</u>. Except as provided otherwise in this Plan, from and after the Effective Date, the automatic stay of § 362(a) of the Bankruptcy Code shall terminate.

10.6.3 <u>Filing of Reports</u>. The Debtor shall file all reports required by the Bankruptcy Code, Bankruptcy Rules, U.S. Trustee guidelines, and the rules and orders of the Bankruptcy Court.

10.6.4 <u>Post-Effective Date Retention of Professionals</u>. Upon the Effective Date, any requirement that professionals comply with §§ 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Debtor may employ and pay professionals in the ordinary course of business.

**Article 11**
**Conditions Precedent**

11.1 ***Conditions to the Effective Date.*** The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 11.2 of this Plan.

11.1.1 The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not have been stayed;

11.1.2 All documents and agreements to be executed on the Effective Date or otherwise necessary to implement this Plan shall be in form and substance that is acceptable to the Debtor in its reasonable discretion; and

11.1.3 The Debtor shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement this Plan and that is required by law, regulation, or order.

11.2 *Waiver of Conditions to Confirmation or Consummation*.  The conditions set forth in Article 11.1 of this Plan may be waived, in whole or in part, by the Debtor without any notice to any other parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Debtor in its sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor). The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

**Article 12**
**Retention and Scope of Jurisdiction of the Bankruptcy Court**

12.1 ***Retention of Jurisdiction***.  Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

12.1.1  To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

12.1.2  To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated Claim;

12.1.3  To resolve all matters related to the rejection, and assumption and/or assignment of any Executory Contract or Unexpired Lease of the Debtor;

12.1.4  To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by the Debtor;

12.1.5  To hear and rule upon all applications for professional compensation;

12.1.6  To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

12.1.7  To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

12.1.8  To adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

12.1.9  To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and the payment of claims;

12.1.10 To determine any suit or proceeding brought by the Debtor to recover property under any provisions of the Bankruptcy Code;

12.1.11 To hear and determine any tax disputes concerning the Debtor and to determine and declare any tax effects under this Plan;

12.1.12 To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

12.1.13 To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

12.1.14 To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which the Debtor sold any of its assets during the Bankruptcy Case; and

12.1.15 To enter a final decree;

12.1.16 To enter an order of discharge; and

12.1.17 To enforce and interpret any order or injunctions entered in this Bankruptcy Case.

12.2 ***Alternative Jurisdiction***. In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter. If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto. Notwithstanding anything to the contrary herein, the Debtor shall be authorized to bring any action related to a lease, contract or account (including any account receivable due to the Debtor) to which the Debtor is a party in any state or local court having jurisdiction over such action.

12.3  **Final Decree**.  The Bankruptcy Court may, upon application of the Debtor, at any time after "substantial consummation" of the Plan as defined in section 1101(2) of the Bankruptcy Code, enter a final decree in the case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest. In such event, the Bankruptcy Court may enter an Order closing this Bankruptcy Case pursuant to section 350 of the Bankruptcy Code, provided, however, that: (a) the Reorganized Debtor shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may from time to time reopen the Bankruptcy Case if appropriate for any of the following purposes: (1) administering Assets; (2) entertaining any adversary proceedings, contested matters or applications Debtor has brought or brings with regard to the liquidation of Assets and the prosecution of Causes of Action or otherwise administering the Plan; (3) enforcing or interpreting this Plan or supervising its implementation; or (4) for other cause.

## Article 13
## Miscellaneous Provisions

13.1 **Amendments and Modifications**.  This Plan may be altered, amended, or modified by the Debtor at any time, subject, however, to Section 1127 of the Bankruptcy Code. This Plan may not be altered, amended, or modified without the written consent of the Debtor. The Debtor may withdraw this Plan at any time.

13.2 **Allocation of Plan Distributions Between Principal and Interest**.  To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

13.3 **Applicable Law**.  Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

13.4 **Preparation of Estate Returns and Resolution of Tax Claims**.  The Debtor shall file all tax returns and other filings with governmental authorities and may file determination requests under section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

13.5 **Headings**.  The headings of the Articles and the sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

13.6 ***Revocation of Plan.*** The Debtor reserves the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal this Plan shall be deemed null and void and of no force and effect.

13.7 ***No Admissions; Objection to Claims***. Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity or person as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan. The failure of the Debtor to object to or examine any Claim for purposes of voting shall not be deemed a waiver of Debtor's rights to object to or reexamine such Claim in whole or in part.

13.8 ***No Bar to Suits.*** Except as otherwise provided in Article 10 of this Plan, neither this Plan or confirmation hereof shall operate to bar or estop the Debtor from commencing any Cause of Action, or any other legal action against any Holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such Cause of Action, or any other legal action was disclosed in any document filed by the Debtor in connection with this Bankruptcy Case or whether or not any payment was made or is made on account of any Claim. Without limitation, the Debtor retains and reserves the right to prosecute Retained Actions.

## Article 14
## Tax Consequences

Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors, or within each Class. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes. Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, this discussion is intended to be general in nature only. No specific tax consequences to any Creditor are represented, implied, or warranted. Each Holder of a Claim should seek professional tax advice, including the evaluation of recently enacted or pending legislation, because recent changes in taxation may be complex and lack authoritative interpretation. The Debtor assumes no responsibility for the tax effect that consummation of the Plan will have on any given Holder of a Claim. Holders of Claims are

strongly urged to consult their own tax advisors covering the federal, state, local and foreign tax consequences of the Plan to their individual situation.

Dated: February 4, 2026                    Respectfully submitted,

                                           **KECK LEGAL, LLC**

                                           */s/ Benjamin R. Keck*
                                           Benjamin R. Keck, Ga. Bar No. 943504
                                           Jonathan Clements, Ga. Bar No. 130051
                                           2801 Bufford Highway NE, Suite 115
                                           Atlanta, GA 30329
                                           Tel. (470) 826-6020
                                           bkeck@kecklegal.com
                                           Jclements@kecklegal.com
                                           ***Counsel for the Debtor***